# EXHIBIT A

**BRAUNHAGEY & BORDEN** LLP

San Francisco & New York

Jeffrey M. Theodore
theodore@braunhagey.com

September 8, 2021

<u>VIA EMAIL</u>

David K. Mroz
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Email: david.mroz@finnegan.com

  Re: The Better Meat Co. v. Emergy

Dear Mr. Mroz,

  I have reviewed your letter of August 25, 2021, sent in response to my request that Emergy identify the supposed trade secrets and evidence of misappropriation that it claims underlie its false accusations against The Better Meat Co. and Gus Pattillo. Neither your letter nor the attached exhibits comes close to showing that Emergy had any meat-related inventions at the time Mr. Pattillo was at the Department of Energy, much less that it had any of the inventions disclosed in The Better Meat Co.'s patents or that it shared any such ideas with Mr. Pattillo. The supposed "evidence" you adduce consists of random pictures of mycelial discs, some apparently being prepared for carbonization as part of Emergy's energy research. They do not show that Emergy had any of the ideas contained in The Better Meat Co.'s patents – and, indeed, there is no evidence attached to your letter to suggest that Emergy was attempting to develop meat substitutes *at all* during Mr. Pattillo's time at the DOE. As a result, your letter only confirms that Emergy's claims are made in bad faith and could not be brought consistent with counsel's obligations under F.R.C.P. 11 and 28 U.S.C. § 1927.

  *First*, Emergy's claims fail at the threshold because it cannot even show that it was conducting experiments related to meat substitutes during the period when Mr. Pattillo was interning at the DOE (to say nothing of doing so with the participation of Mr. Pattillo). As I noted in my previous letter, during December 2017 to May 2018, Emergy was focused on carbonization of mycelium for use in batteries. Apparently, Emergy may have switched its focus sometime later – first to mycelial snacking chips called BTRFY, then to carbonized toothpaste, and then to meat. But research into meat replacements after Mr. Pattillo left Argonne National Laboratory cannot support a claim of misappropriation or co-inventorship because Emergy must show that Mr. Pattillo participated in that research and stole from it, which the evidence contradicts.

  If this timeline were incorrect and Emergy had been working on meat substitutes in early 2018 with Mr. Pattillo's participation, you would be able to produce copious evidence to the contrary – including, according to your theory, extensive correspondence with Mr. Pattillo regarding meat uses of mycelium as well as the official records of Argonne National Laboratory. But your letter is devoid of any actual evidence on this point. And the contemporaneous correspondence as reflected in your own Exhibit A demonstrates that Mr. Pattillo sought to work with Emergy on the "merging of fungus and energy."

**San Francisco**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square, 27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

   Grasping at straws, you cite four documents that do not evidence any research into meat substitutes:

1. You claim Exhibit N is a "business roadmap" that "showed food as a potential business application for [Emergy's] mycelium technology." But you do not attach the document, and the banal observation that food is a potential application for mycelium is not novel and does not show that Emergy was engaged in food or meat replacement research at the time.

2. Similarly, a stray reference to "edible protein" in a high-level slide deck (Exhibit P) does not show that Emergy (or Mr. Pattillo) was engaged in food, let alone meat replacement, research.

3. You assert (without evidence) that one of the fungal discs that Emergy was growing for purposes of carbonization (Exhibit BB) can be said to have been "food grade." But this has no bearing on whether Emergy was conducting actual research into food/meat replacements at the time and, in any event, does not show any involvement by Mr. Pattillo.

4. DOE approved and paid for Mr. Pattillo to visit Quorn Foods, one the world's largest producers of mycelial biomass, to study their "biomass production process" during his educational fellowship. This does not show that Emergy was working on food as opposed to other uses of fungal biomass. Just the opposite, Mr. Pattillo's request for authorization (Exhibit Q) is clear that the purpose of his trip was to see how Quorn grew large volumes of mycelium – to see their "scaled up version of our biomass production process," not to investigate food uses of mycelium. (His trip to Quorn also confirms that Mr. Pattillo was investigating and learning existing techniques in the field.)

   Emergy's inability to present meaningful evidence that it was working on meat replacement uses of mycelium between December 2017 and May 2018, much less that Mr. Pattillo was involved in any such work, demonstrates that it cannot possibly have claim to the technology in The Better Meat Co.'s patents.

   *Second*, your letter and supporting exhibits once again fail to identify or provide evidence of the supposed Emergy trade secrets that are alleged to have been incorporated into The Better Meat Co.'s patents. As I noted in my previous letter, there should be no issue providing evidence of trade secrets that are now disclosed in published applications and issued patents. But Emergy continues to decline to identify and substantiate its alleged trade secrets, omitting from its exhibits the very documents that it purports embody the trade secrets at issue. For example, your letter refers to a "OneNote document where Emergy maintained confidential and trade secret information, including data collected from experiments." But you do not identify any relevant trade secret information from that document or produce any excerpts that contain the innovations found in The Better Meat Co.'s patents. And in each of the emails you attach to your letter, you omit the attachments in which the alleged trade secrets are supposedly found.

   The remaining "evidence" fares no better. The many images of unidentified and undated mycelium discs attached to your letter (Exhibits U-GG) do not show that Emergy had the specifications (such as particle size ranges, water content, etc.) disclosed in The Better Meat Co.'s patents or, more importantly, that Emergy recognized those parameters as significant. Generic images of discs intended for carbonization cannot possibly show that Emergy anticipated Mr. Pattillo's subsequent independent research and insights regarding the ideal properties of mycelium-based meat replacement ingredients. Similarly, the handful of notes

September 8, 2021
Page 3

attached as Exhibits HH-MM appear to describe practice runs growing mycelium and record the widely varying properties of the biomass generated as a result. Nothing in those notes suggests that Emergy, Mr. Pattillo, or anyone else had identified the importance of the parameters disclosed in The Better Meat Co.'s patents.

*Third*, there is no evidence that Emergy shared any of the concepts at issue with Mr. Pattillo or that Mr. Pattillo took them from Emergy's files. Even actual research related to the use of mycelium as a substitute for meat would be irrelevant unless Mr. Patillo stole it, which he did not. If Emergy's story were true, one would expect these concepts – or at least the subject matter – to be reflected in email correspondence. Instead, the very emails attached to your August 25, 2021, letter confirm that Mr. Pattillo was attempting to grow biomass using techniques extensively established in the literature (e.g., Exhibit L, referring to "Vogels", a widely used substrate). None refers to attempting to identify the proper specifications for meat substitutes. As a result, there is no evidence of misappropriation, of collaboration regarding the subject matter of the patents at issue, or any other transmission of information that could possibly satisfy the tests for misappropriation or joint inventorship.

It may be that Messrs. Huggins and Whiteley have given their investors and counsel the misimpression that they own anything related to use of Neurospora for food – which would explain your letter's reliance on evidence of mere cultivation to purport to substantiate Emergy's trade secret claims. If so, we would like to take this opportunity to set the record straight. There is extensive public domain material on cultivation of Neurospora for food and a host of papers published on the subject matter long before any of the parties to this matter became involved in the field. A small sampling is attached as Exhibit A.

It is for this reason that The Better Meat Co.'s patents do not claim the simple preparation of mycelium discs, as depicted in the exhibits to your most recent letter, but rather specific particle sizes and other innovations that allow for a better meat substitute. And it was on that basis that The Better Meat Co.'s claims were allowed by the PTO. By contrast, Emergy's patent applications appear simply to recite prior art and obvious iterations regarding the use of Neurospora and, for that reason, have not been allowed.

Indeed, it is telling that your clients did not previously claim the inventions embodied in The Better Meat Co.'s patents and applications when they were before the PTO. Your initial letter was at pains to claim priority on the ground that Messrs. Huggins and Whiteley filed their initial provisional application before Mr. Pattillo. But this only raises the question of why they did not incorporate into that application the allowed claims of the '137 Patent if, indeed, they had invented them and knew of them before their publication in Mr. Pattillo's application. The obvious inference is that Messrs. Huggins and Whiteley did not invent the claims found in the '137 Patent or any of The Better Meat Co.'s pending applications – and, therefore, that there is no good faith basis for the accusations made in your letters.

While your letters make sweeping allegations of misappropriation, Emergy's inability to substantiate its claim to have identified the matter disclosed in The Better Meat Co.'s patents and patent applications places the shoe on the other foot. Emergy's demand that The Better Meat Co. assign its patents is nothing more than an effort to misappropriate a competitor's technology through misuse of the legal system.

I would be happy to speak with you to discuss this matter. You should know, however, that based on what we have seen to date, we have full confidence The Better Meat Co. will prevail in any dispute over the technology in question and are fully prepared to defend our intellectual property.

September 8, 2021
Page 4

Very truly yours,

Jeffrey M. Theodore

Encl.

# Appendix A

Bátori, et al., "Ethanol and Protein from Ethanol Plant By-Products Using Edible Fungi *Neurospora intermedia* and *Aspergillus oryzae*", BioMed Research International, vol. 2015, Article ID 176371, 10 pages, 2015. https://doi.org/10.1155/2015/176371

Bell-Pedersen, D. Dr. (2007, September 9). *Neurospora Methods Manual: List of Topics*. Detailed Set of Protocols. http://www.fgsc.net/neurospora/neurosporaprotocolguide.htm.

*Cumulative subject index to articles in Neurospora Newsletter*. Neurospora newsletter subject index. (n.d.). http://www.fgsc.net/fgn37/subject.html.

Dschida, William, J., A. (1999). Fungal cell wall production and utilization as a raw resource for textiles. *International Patent Publication No. WO 99/24555 A2.* Geneva, Switzerland: World Intellectual Property Organization (PCT).

Ferreira, J. (2015). *Integration of filamentous fungi in ethanol dry-mill biorefinery* (PhD dissertation). Retrieved from http://urn.kb.se/resolve?urn=urn:nbn:se:hb:diva-674

Fungal Genetics Stock Center. (n.d.). *Fungal Genetics Reports*. Fungal Genetics Report. http://www.fgsc.net/fungalgeneticsreports.htm.

Fungal Genetics Stock Center. (n.d.). *How to obtain Neurospora*. Overview of Neurospora Techniques. http://www.fgsc.net/neurospora/SECTION%20D1.htm.

Lennartsson et al. (2016). Integration of first and second generation bioethanol processes. *U.S. Patent Publication No. 20160312247(A1)*. Washington, DC: U.S. Patent and Trademark Office.

Lennartsson et al. (2018). Integration of first and second generation bioethanol processes. *U.S. Patent No. 9,994,872 B2*. Washington, DC: U.S. Patent and Trademark Office.

Liu P, Li J, Deng Z. Bio-transformation of agri-food wastes by newly isolated Neurospora crassa and Lactobacillus plantarum for egg production. Poult Sci. 2016 Mar;95(3):684-93. doi: 10.3382/ps/pev357. Epub 2016 Jan 6. PMID: 26740129.

Mahboubi et al., *Value-added products from dairy waste using edible fungi*, Waste Management, Volume 59, 2017, Pages 518-525, ISSN 0956-053X, https://doi.org/10.1016/j.wasman.2016.11.017. (https://www.sciencedirect.com/science/article/pii/S0956053X16306766).

Moo-Young et al. (1990). Process for upgrading cereal milling by-products into protein-rich food products. *U.S. Patent No. 4,938,972*. Washington, DC: U.S. Patent and Trademark Office.

Moo-Young, M., Chisti, Y., & Vlach, D. (1992). Fermentative conversion of cellulosic substrates to microbial protein by *Neurospora sitophila*. *Biotechnology Letters*, *14*(9), 863–868. https://doi.org/10.1007/bf01029154

Moo-Young M, Chisti Y, Vlach D. Fermentation of cellulosic materials to mycoprotein foods. Biotechnol Adv. 1993;11(3):469-79. doi: 10.1016/0734-9750(93)90015-f. PMID: 14545669.

Nair, R. B. (2017). *Integration of first and second generation bioethanol processes using edible filamentous fungus Neurospora intermedia* (PhD dissertation). Retrieved from http://urn.kb.se/resolve?urn=urn:nbn:se:hb:diva-12436.

Perkins, D. D., & Davis, R. H. (2000). *Evidence for safety of neurospora species for academic and commercial uses*. Applied and Environmental Microbiology, *66*(12), 5107–5109. https://doi.org/10.1128/aem.66.12.5107-5109.2000

Souza Filho, P.F., Nair, R.B., Andersson, D. *et al.* Vegan-mycoprotein concentrate from pea-processing industry byproduct using edible filamentous fungi. *Fungal Biol Biotechnol* **5,** 5 (2018). https://doi.org/10.1186/s40694-018-0050-9