David R. Callaway (SBN 121782)
  dcallaway@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall St.
Redwood City, CA 94063
Tel.: (650) 752-3100
Fax.: (650) 853-1038

Michael T. Jones (SBN 290660)
  mjones@goodwinlaw.com
Katherine G. McKenney (*pro hac vice*)
  kmckenney@goodwinlaw.com
Christopher J.C. Herbert (*pro hac vice*)
  cherbert@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax.: (617) 523-1231

*Attorneys for Defendants Paul Vronsky and Bond Capital Management LP*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| THE BETTER MEAT CO., | Case NO. 2:21-cv-02338-KJM-CKD |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION OF DEFENDANTS PAUL VRONSKY AND BOND CAPITAL MANAGEMENT LP TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| EMERGY, Inc. d/b/a MEATI FOODS, PAUL VRONSKY, AND BOND CAPITAL MANAGEMENT LP, | |
| Defendants. | Date:       May 6, 2022 |
| | Time:       10:00 AM |
| | Courtroom:  Courtroom 3, 15th Floor |
| | Judge:      Hon. Kimberly J. Mueller |

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2      PLEASE TAKE NOTICE that, on May 6, 2022 at 10:00 a.m. or as soon thereafter as this

3  matter may be heard in Courtroom 3 of the above-referenced Court, located at the United States

4  Courthouse, 501 I Street, Sacramento, California 95814, defendants Paul Vronsky and Bond

5  Capital Management LP will, and hereby do, move to dismiss the claims against them asserted in

6  the Complaint of plaintiff, The Better Meat Co., pursuant to Fed. R. Civ. P. 12(b)(6).

7      Pursuant to this Court's Standing Order, counsel for plaintiff and defendants met and

8  conferred telephonically on February 7, 2022, but were not able to reach an agreement resolving

9  the issues that are the subject of this Motion.

10     This Motion is based upon this Notice of Motion and the accompanying Memorandum of

11 Points and Authorities, the pleadings and papers on file, and upon such oral argument as may be

12 made at the hearing on this Motion.

13                                                    Respectfully submitted,

14 Dated:   February 7, 2022            By:   */s/ David R. Callaway*

15                                                    David R. Callaway (SBN 121782)
                                                        dcallaway@goodwinlaw.com
16                                                  **GOODWIN PROCTER LLP**
                                                      601 Marshall St.
17                                                    Redwood City, CA 94063
                                                      Tel.: (650) 752-3100
18                                                    Fax.: (650) 853-1038

19                                                    Michael T. Jones (SBN 290660)
                                                        mjones@goodwinlaw.com
20                                                    Katherine G. McKenney (*pro hac vice*)
                                                        kmckenney@goodwinlaw.com
21                                                    Christopher J.C. Herbert (*pro hac vice*)
                                                        cherbert@goodwinlaw.com
22                                                  **GOODWIN PROCTER LLP**
                                                      100 Northern Avenue
23                                                    Boston, MA 02210
                                                      Tel.: (617) 570-1000
24                                                    Fax.: (617) 523-1231

25                                                    *Attorneys for Defendants Paul Vronsky and*
                                                      *Bond Capital Management LP*

26

27

28

1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

COMPLAINT ALLEGATIONS .................................................................................2

    A.    Factual Allegations. ...............................................................................2

    B.    The Claims Against Mr. Vronsky and Bond Capital.............................3

ARGUMENT .............................................................................................................4

II.    LEGAL STANDARD ....................................................................................4

III.    PLAINTIFF FAILS TO STATE A COGNIZABLE TORTIOUS
    INTERFERENCE CLAIM. ...........................................................................5

    A.    Plaintiff Does Not Sufficiently Allege an Actual Disruption. ...............5

    B.    Plaintiff Fails to Allege Economic Harm Proximately Caused by Mr.
    Vronsky or Bond Capital. ......................................................................6

    C.    Plaintiff Has Failed to Allege Facts Supporting that Bond Capital's and
    Mr. Vronsky's Actions Were Independently Wrongful. .......................8

        1.    Plaintiff fails to allege an independent wrong based on
        misrepresentation. ......................................................................9

        2.    Plaintiff has not identified any independently wrongful conduct
        premised upon Defendants' allegedly anticompetitive behavior.............11

IV.    PLAINTIFF FAILS TO STATE A COGNIZABLE UCL CLAIM. ................11

    A.    Plaintiff Has Not Satisfied the UCL's Standing Requirements. ...........11

    B.    The UCL Claim Also Fails Because Plaintiff Does Not Plead Any
    Unlawful, Unfair, or Fraudulent Conduct...........................................12

        1.    Plaintiff fails to identify any unlawful conduct. ........................12

        2.    Plaintiff fails to allege that Bond Capital and Mr. Vronsky engaged
        in fraudulent conduct under the UCL. .......................................13

        3.    Plaintiff also fails to state a UCL claim premised upon any "unfair
        conduct." ...................................................................................14

V.    PLAINTIFF'S CLAIMS ARE BARRED BY CAL. CIV. CODE § 47. ...........15

    A.    Plaintiff's Claims Are Subject to the Litigation Privilege. ..................16

    B.    The Privilege of Cal. Civ. Code § 47(c) Is A Separate Bar to Plaintiff's
    Claims. .................................................................................................16

CONCLUSION..........................................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

*Aftermaster, Inc. v. Infintiy Power & Controls, Inc.*,
　　No. CV1905771CJCFFMX, 2019 WL 13063229 (C.D. Cal. Nov. 5, 2019) .........................14

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)................................................................................................................4

*Avedisian v. Mercedes-Benz USA, LLC*,
　　43 F. Supp. 3d 1071 (C.D. Cal. 2014) ..................................................................................12

*Becerra v. Dr Pepper/Seven Up, Inc.*,
　　945 F.3d 1225 (9th Cir. 2019) ................................................................................................5

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)................................................................................................................4

*BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*,
　　No. C10-1053, 2010 WL 3853025 (N.D. Cal. Sept. 29, 2010) .............................................10

*Brown v. Starbucks Corp.*,
　　No. 18CV2286 JM (WVG), 2019 WL 996399 (S.D. Cal. Mar. 1, 2019)................................13

*Bus. Integration Tech. v. MuleSoft Inc.*,
　　No. C 11-04782 EDL, 2011 WL 5914012 (N.D. Cal. Nov. 28, 2011)...............................10, 11

*Carreno v. 360 Painting, LLC*,
　　No. 19CV2239-LAB-BGS, 2021 WL 1087106 (S.D. Cal. Mar. 19, 2021) ...........................10

*CBS Outdoor LLC v. California Mini Storage, LLC*,
　　No. C 14-01598 SI, 2014 WL 5282088 (N.D. Cal. Oct. 15, 2014) .........................................7

*Dan's Deals LLC v. Sunspotweb, Inc.*,
　　No. SACV1901248CJCPLAX, 2019 WL 8621439 (C.D. Cal. Dec. 10, 2019) .....................13

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
　　345 F. Supp. 3d 1207 (E.D. Cal. 2018)...............................................................................5, 13

*Doe v. SuccessfulMatch.com*,
　　70 F. Supp. 3d 1066 (N.D. Cal. 2014) ..................................................................................12

*Duenas v. Ocwen Loan Servicing, LLC*,
　　No. 1:14-CV-00406-JLT, 2014 WL 4627203 (E.D. Cal. Sept. 16, 2014)................................18

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
　　751 F.3d 990 (9th Cir. 2014) ..................................................................................................4

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Ghuman v. Wells Fargo Bank, N.A.*,
   989 F. Supp. 2d 994 (E.D. Cal. 2013) ................................................................................13

*Glob. Plastic Sheeting v. Raven Indus.*,
   No. 17-CV-1670 DMS (KSC), 2018 WL 3078724 (S.D. Cal. Mar. 14, 2018) ...............14, 15

*Golden v. Sound Inpatient Physicians Med. Grp., Inc.*,
   93 F. Supp. 3d 1171 (E.D. Cal. 2015) ..................................................................................8

*Hellenic Petroleum, LLC v. Sacramento Energy Res., LLC*,
   No. 1:19-CV-0491 AWI SAB, 2019 WL 4747794 (E.D. Cal. Sept. 30, 2019) ....................13

*Inn S.F. Enter., Inc. v. Ninth St. Lodging, LLC*,
   No. 3:16-CV-00599-JD, 2016 WL 8469189 (N.D. Cal. Dec. 19, 2016) ...............................13

*Ixchel Pharma, LLC v. Biogen Inc.*,
   No. CV21700715WBSEFB, 2017 WL 4012337 (E.D. Cal. Sept. 12, 2017) .........................11

*Kemart Corp. v. Printing Arts Rsch. Lab., Inc.*,
   269 F.2d 375 (9th Cir. 1959) .............................................................................................17

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ...........................................................................................15

*Magdaleno v. Indymac Bancorp, Inc.*,
   853 F. Supp. 2d 983 (E.D. Cal. 2011) ................................................................................13

*Michaluk v. Vohra Health Servs., P.A.*,
   No. CIV S- 12-1162 KJM, 2012 WL 3993940 (E.D. Cal. Sept. 11, 2012) ...........................9

*Mireskandari v. Mayne*,
   No. CV123861JGBMRWX, 2016 WL 1165896 (C.D. Cal. Mar. 23, 2016) ........................16

*Narayan v. Compass Grp. USA, Inc.*,
   284 F. Supp. 3d 1076 (E.D. Cal. 2018) ..............................................................................17

*Pestmaster Franchise Network, Inc. v. Duncan*,
   No. EDCV08505VAPJCRX, 2008 WL 11336179 (C.D. Cal. July 8, 2008) .........................10

*Rankins v. Bio-Nutritional Rsch. Grp., Inc.*,
   No. 820CV01489JWHDFMX, 2020 WL 10786536 (C.D. Cal. Nov. 30, 2020) ......................5

*Robinson v. Hunger Free Am., Inc.*,
   No. 118CV00042LJOBAM, 2018 WL 2563809 (E.D. Cal. June 4, 2018) ............................14

*Saterbak v. Nat'l Default Servicing Corp.*,
   No. 15CV956-WQH-BGS, 2016 WL 4430922 (S.D. Cal. Aug. 22, 2016) .............................7

*Schrenk v. Carvana, LLC*,
   No. 219CV01302TLNCKD, 2020 WL 4339969 (E.D. Cal. July 28, 2020) ..........................14

iii

*Singman v. NBA Props., Inc.*,
   No. CV 13-05675 ABC SHX, 2014 WL 7892049 (C.D. Cal. Jan. 17, 2014) ...................9, 10

*Sky Billiards, Inc. v. WolVol, Inc.*,
   No. CV1502182RGKKKX, 2016 WL 7479426 (C.D. Cal. Feb. 22, 2016) .....................9, 10

*Snapkeys, Ltd. v. Google LLC*,
   No. 19-CV-02658-LHK, 2020 WL 6381354 (N.D. Cal. Oct. 30, 2020)................................15

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021)....................................................................................7

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir.) ...........................................................................................................5

*Sybersound Recs., Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ................................................................................................6

*In re Turner*,
   859 F.3d 1145 (9th Cir. 2017) ..............................................................................................12

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*,
   178 F. Supp. 2d 1099 (C.D. Cal. 2001) ................................................................................14

*Yellowcake, Inc. v. Morena Music, Inc.*,
   No. 1:20-CV-0787 AWI BAM, 2021 WL 3287719 (E.D. Cal. Aug. 2, 2021)......................12

**State Cases**

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*,
   28 Cal. App. 5th 923 (2018) .................................................................................................13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ..........................................................................................................14

*Gantry Constr. Co. v. Am. Pipe & Constr. Co.*,
   49 Cal. App. 3d 186 (1975) ..................................................................................................17

*Kashian v. Harriman*,
   98 Cal. App. 4th 892 (2002) ...........................................................................................17, 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ..........................................................................................................5

*Lundquist v. Reusser*,
   7 Cal. 4th 1193 (1994) ..........................................................................................................17

*Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*,
   138 Cal. App. 4th 1215 ..........................................................................................................11

iv

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................................1, 3, 4, 12

Cal. Civ. Code § 47.......................................................................................................2, 15, 16, 17

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1, 2, 18

Fed. R. of Civ. P. 9(b)................................................................................................................5, 9, 10, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

A single email forms the basis of Plaintiff, The Better Meat Co.'s ("Plaintiff" or "BMC"), claims for tortious interference and violation of Cal. Bus. & Prof. Code § 17200, known as the Unfair Competition Law ("UCL"), against Defendants Bond Capital Management LP ("Bond Capital") and its General Partner, Paul Vronsky.  That email, coming from Mr. Vronsky to the so-called Lead Investor in Plaintiff's Series A financing, apprised Lead Investor of an ongoing "trade secret and patent dispute" that had been the subject of letters exchanged by counsel for Plaintiff and Emergy, Inc. ("Emergy") over the course of the previous six months.  According to Plaintiff, in the two-day span between Mr. Vronsky's email and the date Plaintiff filed the instant Complaint, the email somehow caused unspecified disruption to Plaintiff's relationship with Lead Investor—the only investor to whom Mr. Vronsky sent his email—and other unnamed investors in BMC.  The implausible and unsubstantiated claims of tortious interference and unfair competition in the Complaint are merely the product of Plaintiff's desire to win the race to the courthouse and mischaracterize the ongoing intellectual property dispute between Plaintiff and Emergy.

Aside from failing to support these conclusory allegations of harm with any sufficient level of factual detail, Plaintiff's own allegations demonstrate that neither Mr. Vronsky nor Bond Capital could have caused Plaintiff's insufficiently pleaded harms.  The reason is simple: according to Plaintiff, when Emergy sent a letter to Plaintiff on December 15, 2021 advising Plaintiff that Emergy would "fil[e] a complaint … in the immediate future" concerning the parties' trade secret and patent dispute, Plaintiff was "required to disclose the letter … to potential investors in California, including Lead Investor[.]"  But as Plaintiff alleges, that letter—and the prior correspondence from Emergy's counsel—came before Mr. Vronsky sent his email to Lead Investor.  Accordingly, the harm Plaintiff attempts to plead (*i.e.*, disruption to the relationships with its investors resulting from their knowledge of the dispute between Plaintiff and Emergy), could not have been caused by Mr. Vronsky or Bond Capital.  Plaintiff concedes that it was required to disclose the ongoing dispute with Emergy to its investors, regardless of whether Mr. Vronsky had ever emailed Lead Investor.

1

MOTION TO DISMISS                                                    Case No. 2:21-CV-02338-KJM-CKD

For this reason, and others, Plaintiff's allegations affirmatively show that its tortious interference and UCL claims must fail.  As to tortious interference, Plaintiff has failed to plead an actual disruption in the relationship between it and any third party, and has not alleged the existence of economic harm proximately caused by Mr. Vronsky or Bond Capital.  And even if Plaintiff had sufficiently pleaded these necessary elements of a tortious interference claim, it has failed to plead that anything Mr. Vronsky or Bond Capital did was independently wrongful, separate and apart from the purported interference itself.  Plaintiff's tortious interference claim should therefore be dismissed for failure to state a claim.  Plaintiff's UCL claim is also deficient and subject to dismissal given Plaintiff's failure to adequately allege that Bond Capital or Mr. Vronksy could have caused the unspecified harm it seeks to redress.  Nor has Plaintiff adequately pleaded that these Defendants engaged in the type of unlawful, fraudulent, or unfair conduct that the UCL prohibits.  Finally, these dismissals should be with prejudice:  Plaintiff cannot under any set of facts state a claim against Bond Capital and Mr. Vronsky, because Plaintiff's tortious interference and UCL claims are barred by the privileges set forth in Cal. Civ. Code § 47.

## COMPLAINT ALLEGATIONS[1]

A.   **FACTUAL ALLEGATIONS.**

The allegations in the Complaint establish that during the six months leading up to the filing of this lawsuit, Plaintiff and Defendant Emergy, through their respective lawyers, have been engaged in an intellectual property dispute concerning certain of Plaintiff's patents and patent applications—which Plaintiff's Complaint refers to as the '150 Application and '137 Patent— since July of 2021.  Compl. ¶¶ 18-19, 30.  On July 16, 2021, after Emergy learned that Plaintiff had been awarded the '137 Patent, counsel for Emergy sent a letter to Plaintiff and its former employee, accusing the pair of trade secret misappropriation and unfair competition on the basis that the "inventions disclosed in the '150 Application and '137 Patent" had been stolen from Emergy.  *Id.* ¶ 31.  Plaintiff responded on August 5, 2021, disputing Emergy's claims, but "offer[ing] to consider any evidence that Emergy had developed the inventions disclosed in the

---

[1] Defendants assume the truth of Plaintiff's factual allegations for purposes of their Rule 12(b)(6) motion to dismiss only, and reserve all rights to challenge the veracity of any allegation.

'150 Application and '137 Patent[.]" *Id.* ¶ 34. Emergy provided that requested evidence on August 25, 2021. *Id.* ¶ 35. Plaintiff replied on September 8, 2021, attempting to dispute Emergy's proffered evidence. *Id.* ¶ 36. On December 15, 2021, Emergy sent another letter to Plaintiff, reiterating its position that Plaintiff had "misappropriate[ed] … [Emergy]'s trade secrets and [engaged in] unfair competition," and informing Plaintiff that Emergy would "move forward with legal action" and "fil[e] a complaint ... in the immediate future" if necessary. *Id.* ¶ 42.

Meanwhile, between Plaintiff's September 8th letter and Emergy's December 15th letter, Plaintiff began to "engage formally with potential investors in a Series A financing round" sometime in "late November 2021," and Plaintiff alleges that it signed a term sheet with an unnamed "Lead Investor" on some unspecified date. *Id.* ¶¶ 38-39. Plaintiff acknowledges that, when Emergy sent its December 15th letter, Plaintiff was "required to disclose the letter and its attachments to potential investors in California, including the Lead Investor[.]" *Id.* ¶ 45.

Plaintiff makes only one allegation against Defendants Mr. Vronsky and Bond Capital, of which Mr. Vronsky is a partner and its General Counsel. *Id.* ¶¶ 9, 46. Plaintiff alleges that, after Emergy sent its December 15th letter—which Plaintiff was "required to disclose" to its investors, "including the Lead Investor"—Mr. Vronsky, emailed Lead Investor "as a matter of friendship and courtesy" to apprise Lead Investor of the ongoing dispute between Plaintiff and Emergy. *Id.* ¶¶ 45-47. Plaintiff alleges that the "pertinent part" of this email reads as follows:

> I wanted to give you a heads up that one of our portfolio companies, Meati [*i.e.*, Emergy], is in a pretty significant trade secret and patent dispute with a company you might be evaluating, The Better Meat Co. I don't know really more than that but as a matter of friendship and courtesy, I thought I would reach out and let you know. I'm happy to connect with your counsel if that is helpful.

*Id.* ¶ 47. Plaintiff filed the instant Complaint two days later.

### B.   THE CLAIMS AGAINST MR. VRONSKY AND BOND CAPITAL.

Based on this single email from Mr. Vronsky, Plaintiff asserts claims against him and Bond Capital for tortious interference and violation of Cal. Bus. & Prof. Code § 17200. *Id.* ¶¶ 52-62; 63-66.

As relevant to Plaintiff's tortious interference claim against Mr. Vronsky and Bond

Capital, Plaintiff alleges, without factual allegations in support, that the two "intended to discourage the Lead Investor from continuing his business relationship with Plaintiff, and intentionally targeted Lead Investor in order to disrupt the Series A financing process." *Id.* ¶ 57. It claims that the email "materially misrepresented the nature and significance of the dispute between Plaintiff and Defendant Emergy," and amounted to "unfair and anti-competitive conduct." *Id.* ¶ 58. Plaintiff makes the conclusory allegations that the combined conduct of all Defendants "actually disrupted Plaintiff's relationship with its investors" by making "Plaintiff's performance of its agreements with its investors more difficult," without actually explaining how, or who those investors are. *Id.* ¶ 60. It claims that this combined conduct resulted in unidentified "economic harm" to Plaintiff because "Plaintiff's current and prospective investors learned of" the dispute between Plaintiff and Emergy, "which negatively impacted Plaintiff's ability to obtain investments on favorable terms[.]" *Id.* ¶ 61.

Plaintiff then offers the circular allegation that Mr. Vronsky and Bond Capital violated Cal. Bus. & Prof. Code § 17200, in that the single email from Mr. Vronsky was an "unlawful, unfair, and fraudulent business practice[] as defined by California Bus. & Prof. Code §§ 17200," because it amounted to "tortious interference, fraudulent misrepresentation, and unfair, anti-competitive conduct, and other" unspecified "illegal acts and practices[.]" *Id.* ¶ 64. Plaintiff alleges that combined "unfair business practices" of all Defendants have "minimized Plaintiff's competitive advantage and have caused and are causing Plaintiff to suffer economic injuries[,]" without alleging facts as to what those economic injuries are. *Id.* ¶ 65.

## ARGUMENT

## II.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, the allegations "must plausibly suggest an entitlement to relief[.]" *Eclectic Props. E., LLC v. Marcus*

*& Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  The Court need not accept as true

"allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on

denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).  Moreover, where, as here, a plaintiff asserts

claims sounding in fraud or misrepresentation, they are "subject to the heightened pleading

standard of Federal Rule of Civil Procedure 9(b)," which requires a plaintiff to "state with

particularity the circumstances constituting fraud[,]" including "what is false or misleading about a

statement, and why it is false."  *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th

Cir. 2019).

### III.    PLAINTIFF FAILS TO STATE A COGNIZABLE TORTIOUS INTERFERENCE CLAIM.

To state a claim for tortious interference, Plaintiff must plead "(1) an economic

relationship between [it] and some third party, with the probability of future economic benefit to

the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts

designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

harm proximately caused by the defendant's actions."  *Deerpoint Grp., Inc. v. Agrigenix, LLC*,

345 F. Supp. 3d 1207, 1237 (E.D. Cal. 2018).  Moreover, the defendant's actions must be

"independently wrongful" "apart from the interference" itself, in that it is "proscribed by some

constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Korea

Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158-59 (2003).  Plaintiff's tortious

interference claim must be dismissed, as Plaintiff has failed to plead: (1) an actual disruption in the

relationship between it and a third party; (2) that it suffered economic harm proximately caused by

Bond Capital or Mr. Vronsky; or (3) that Bond Capital's and Mr. Vronsky's actions were

independently wrongful.

### A.    PLAINTIFF DOES NOT SUFFICIENTLY ALLEGE AN ACTUAL DISRUPTION.

Plaintiff's tortious inference claim fails because it does not plead a *specific* actual

disruption to a *specific* relationship.  *See, e.g.*, *Rankins v. Bio-Nutritional Rsch. Grp., Inc.*, No.

820CV01489JWHDFMX, 2020 WL 10786536, at *2 (C.D. Cal. Nov. 30, 2020) ("general

allegations" of disruption "do not meet the ...  pleading standard nor do they satisfy the elements

of" tortious interference).  In *Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, for example, the court dismissed a plaintiff's tortious interference claim, where, although it alleged that the defendant solicited plaintiff's customers, plaintiff did not allege any resultant "specific disruption."  No. 16CV2594-JAH (KSC), 2018 WL 1524499, at *8 (S.D. Cal. Mar. 28, 2018).  Similarly, in *Infectolab Americas LLC v. ArminLabs GmbH*, the court dismissed tortious interference claims premised only on the "conclusory" allegation that defendant "caused … disruption" to a relationship, without alleging "sufficient facts demonstrating how [that] relationship" "ha[d] been affected."  No. 20-CV-03318-VKD, 2021 WL 292182, at *5 (N.D. Cal. Jan. 28, 2021).  Thus, where a plaintiff fails to plead a specific disruption to a relationship by, *e.g.*, alleging it "lost a contract []or that a negotiation with a [c]ustomer failed," the tortious interference claim is subject to dismissal.  *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008).

Here, as in *Julian Bakery* and *Infectolab*, Plaintiff fails to plead any specific disruption to any relationship with a third party.  Instead, Plaintiff merely asserts that "Defendants' wrongful conduct disrupted Plaintiff's relationship with its" unidentified "investors and made Plaintiff's performance of its agreements with its investors more difficult," Compl. ¶ 60, without providing any factual allegations as to which of its relationships were actually disrupted or how they became "more difficult."  This is the exact type of "conclusory" allegation the *Infectolab* court held was insufficient.  Plaintiff does not, for example, allege that any investors withdrew their investments or declined to invest as a result of Mr. Vronsky's or Bond Capital's conduct, let alone that Lead Investor (*i.e.*, the only investor Mr. Vronsky allegedly contracted) withdrew or declined to invest.  Plaintiff has therefore failed to "allege sufficient facts demonstrating ***how*** its relationship[s]" with its investors "ha[ve] been affected, if at all," meaning its tortious interference claim must fail.  *See Infectolab*, 2021 WL 292182, at *5 (emphasis added).

### B.   PLAINTIFF FAILS TO ALLEGE ECONOMIC HARM PROXIMATELY CAUSED BY MR. VRONSKY OR BOND CAPITAL.

Even if Plaintiff had pleaded any facts to support its conclusory allegation of disruption, the Complaint is still deficient because Plaintiff fails to sufficiently allege it suffered economic harm proximately caused by Bond Capital or Mr. Vronsky.

6

First, Plaintiff has not plausibly alleged the existence of a specific economic harm, as it must to state a claim for tortious interference.  *See, e.g.*, *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 964 (S.D. Cal. 2021) (dismissing claim where "[p]laintiff … failed to allege with specificity what economic benefit it would have realized"); *CBS Outdoor LLC v. California Mini Storage, LLC*, No. C 14-01598 SI, 2014 WL 5282088, at *6 (N.D. Cal. Oct. 15, 2014) (dismissing counterclaim where defendants did not "specify any economic harm" and did not "allege facts suggesting [its] relationships [were] actually … disputed").  Plaintiff alleges only that Bond Capital's and Mr. Vronsky's allegedly "wrongful conduct" resulted in "economic harm" by "negatively impact[ing] Plaintiff's ability to obtain investments on favorable terms."  Compl. ¶ 61.  Beyond this conclusory allegation, Plaintiff does not explain what economic benefit it was denied or how the terms of the investments were "negatively impacted" by, *e.g.*, alleging how the terms of these unspecified investments changed, if at all, to Plaintiff's detriment.  Plaintiff's failure to support its conclusory allegation that it suffered "economic harm" with such factual allegations is fatal to its claim.

Second, even if Plaintiff had sufficiently alleged economic harm, the Complaint's allegations make clear that neither Bond Capital nor Mr. Vronsky could have been the cause of such economic harm.  *Cf. Saterbak v. Nat'l Default Servicing Corp.*, No. 15CV956-WQH-BGS, 2016 WL 4430922, at *11 (S.D. Cal. Aug. 22, 2016) (dismissing claim where "[t]he facts alleged d[id] not support an inference that Plaintiff's economic injury ... was caused by tortious conduct of the [d]efendants").  *Tensor L. P.C. v. Rubin*, is instructive.  *See* No. 2:18-CV-01490-SVW-SK, 2019 WL 3249595, at *12 (C.D. Cal. Apr. 10, 2019).  There, the court explained that, to state a tortious interference claim, a plaintiff must "allege[] sufficient facts demonstrating that [d]efendant was a substantial factor" in bringing about the alleged harm.  *See id.*  Because plaintiff's allegations "reveal[ed] the opposite," in that the complained-of harm would have resulted regardless of defendant's conduct, the court dismissed plaintiff's claim as "lacking the requisite causal connection."  *Id.*

Here, as in *Tensor*, Plaintiff's own allegations demonstrate that its tortious interference claim lacks the requisite causal connection.  Even assuming that Plaintiff had sufficiently alleged

economic harm in the form of unspecified "negative[] impact[s] to Plaintiff's ability to obtain investments on favorable terms," Compl. ¶ 61, Plaintiff's allegations confirm that Mr. Vronsky and Bond Capital could not have been a "substantial factor" in bringing that harm about, because that alleged harm would have resulted regardless of Mr. Vronsky's email.  Specifically, Plaintiff pleads that Emergy sent Plaintiff a letter on December 15, 2021, that Plaintiff was "required to disclose [it]… to … the Lead Investor," and that this disclosure "would impair [Plaintiff]'s ability to raise money."  *Id.* ¶ 45.  Plaintiff then alleges that Mr. Vronsky sent his email to Lead Investor *after* Plaintiff's receipt of Emergy's letter.  *Id.* ¶ 46.  Plaintiff's acknowledgement that it was required to disclose Emergy's December 15th letter—like the prior correspondence between Plaintiff and Emergy concerning the intellectual property dispute—to potential investors, including Lead Investor undermines its claim that Mr. Vronsky's subsequent email in any way caused any harm to Plaintiff.  Even if Mr. Vronsky had not sent his email, the same alleged harm—*i.e.*, disclosure of the dispute with Emergy to Plaintiff's investors—still would have occurred.  For this reason, Mr. Vronsky's email cannot constitute a "substantial factor" in bringing about Plaintiff's (insufficiently) alleged harm.

## C. PLAINTIFF HAS FAILED TO ALLEGE FACTS SUPPORTING THAT BOND CAPITAL'S AND MR. VRONSKY'S ACTIONS WERE INDEPENDENTLY WRONGFUL.

Plaintiff has failed to sufficiently plead that Bond Capital's and Mr. Vronsky's actions were "independently wrongful" by some measure "other than the act of interference itself," as is required to state a claim for tortious interference.  *See Golden v. Sound Inpatient Physicians Med. Grp., Inc.*, 93 F. Supp. 3d 1171, 1178 (E.D. Cal. 2015).  Plaintiff attempts to plead such independent wrongs by alleging that Mr. Vronsky and Bond Capital made misrepresentations and committed UCL violations by "misrepresent[ing] the nature and significance of the dispute between Plaintiff and … Emergy" and "engag[ing] in unfair and anti-competitive conduct[.]" Compl. ¶ 58.  Plaintiff, however, fails to plausibly plead any facts supporting that Mr. Vronsky or Bond Capital engaged in misrepresentations or violations of the UCL.

### 1.   Plaintiff fails to allege an independent wrong based on misrepresentation.

Plaintiff fails to plead that Mr. Vronsky or Bond Capital engaged in misrepresentation, and has therefore failed to plead Defendants' actions were independently wrongful.  "[A] claim of fraudulent misrepresentation has five elements: (1) misrepresentation, which encompasses false representation … ; [2] knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damage."  *Michaluk v. Vohra Health Servs., P.A.*, No. CIV S- 12-1162 KJM, 2012 WL 3993940, at *3 (E.D. Cal. Sept. 11, 2012).  "Although misrepresentation can constitute independently wrongful conduct to support a claim for intentional interference," such allegations "must meet the heightened particularity standard of Rule 9(b)."  *Sky Billiards, Inc. v. WolVol, Inc.*, No. CV1502182RGKKKX, 2016 WL 7479426, at *4 (C.D. Cal. Feb. 22, 2016).  Plaintiff fails to sufficiently allege each element of misrepresentation,[2] but most importantly, fails to identify anything false in Mr. Vronsky's December 15th email.

Plaintiff has not adequately pleaded its claim under Rule 9(b) because it has failed to "set forth what is false or misleading about" the only statement that Mr. Vronsky or Bond Capital made.  *See Sky Billiards*, 2016 WL 7479426, at *4.  Courts routinely dismiss tortious interference claims premised on alleged misrepresentations that do not adhere to Rule 9(b)'s requirement to plead "why [a statement] is false" and "the reasons for [its] falsity."  *See id.*  In *Sky Billiards*, for example, the court dismissed a tortious interference claim stemming from defendant's communications to a third party, which claimed that several of plaintiff's products violated defendant's intellectual property rights.  *Id.*  In so doing, the court reasoned that plaintiff did not allege that anything defendant communicated to the third party was false, such that plaintiff failed to meet the independently wrongful prong of its tortious interference claim.  *See id.*  Courts routinely dismiss tortious interference claims premised on purported misrepresentations where plaintiffs do not sufficiently allege falsity.[3]

---

[2] As explained *supra*, pp. 6-8, Plaintiff has not identified any damages it suffered as a result of Mr. Vronsky's purported misrepresentation; nor has Plaintiff pleaded that Mr. Vronsky intended to defraud either Plaintiff or Lead Investor.

[3] *See, e.g.*, *Singman v. NBA Props., Inc.*, No. CV 13-05675 ABC SHX, 2014 WL 7892049, at *4 (C.D. Cal. Jan. 17, 2014) (dismissing claim as "insufficiently pled" where "[p]laintiff d[id] not

9

1    Here, as in *Sky Billiards* and the cases cited *supra*, n.3, Plaintiff has failed to allege what is

2    false or misleading about Mr. Vronsky's statement, or why it was false, and has therefore not met

3    Rule 9(b)'s standards.  Plaintiff makes only the conclusory allegation that "Defendants ...

4    misrepresented the nature and significance of the dispute between Plaintiff and Defendant

5    Emergy[,]" Compl. ¶ 58, without explaining how or why anything in Mr. Vronsky's only pleaded

6    statement (at *id.* ¶47) was false.  Nor could it.  Given that attorneys for Plaintiff and Emergy had

7    been exchanging letters regarding the intellectual property dispute for over six months (*see* Compl.

8    ¶¶ 30-37, 42), Mr. Vronsky only stated what was true—*i.e.*, Emergy was "in a pretty significant

9    trade secret and patent dispute with [BMC]."  *See* Compl. ¶ 47.[4]  And where, as here, a plaintiff

10   fails to identify a false statement with the specificity required under Rule 9(b), misrepresentation

11   cannot serve as the independently wrongful conduct required to state a claim for tortious

12   interreference.  *See, e.g., Singman*, 2014 WL 7892049, at *4.

13   Even if Plaintiff had sufficiently alleged falsity, Plaintiff's tortious interference claim

14   premised on Mr. Vronsky's purported misrepresentation still would fail, as Plaintiff does not

15   allege that it, Lead Investor, or anyone else reasonably relied on Mr. Vronsky's email.  A plaintiff

16   attempting to use fraud as the independent wrong required to state a claim for tortious interference

17   must plead that it reasonably relied on the allegedly fraudulent statement.  *See, e.g.*, *Bus.*

18   *Integration Tech. v. MuleSoft Inc.*, No. C 11-04782 EDL, 2011 WL 5914012, at *6-7, *8 (N.D.

19   Cal. Nov. 28, 2011).  In *MuleSoft*, for example, the court first held that plaintiff failed to state a

20   cause of action for fraud, because it did not plead that it reasonably relied on defendant's

---

state how [defendants'] statements were false, let alone plead fraud with the specificity required
by Fed. R. Civ. P. 9(b)"), *aff'd*, 656 F. App'x 371 (9th Cir. 2016); *BioResource, Inc. v. U.S.
PharmaCo Distribution, Ltd.*, No. C10-1053, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010)
(dismissing tortious interference claim where plaintiff did "not allege the specific content of the
false representations, when the representations were made, or why they [we]re false"); *Pestmaster
Franchise Network, Inc. v. Duncan*, No. EDCV08505VAPJCRX, 2008 WL 11336179, at *4 (C.D.
Cal. July 8, 2008) (dismissing tortious interference counterclaim where claimant "failed to allege
… what was false and misleading about [a] statement, or why it was false").

[4] Although Mr. Vronsky allegedly described the dispute as "pretty significant," such statements of
opinion are "not statements of fact" and are therefore not actionable.  *See Carreno v. 360 Painting,
LLC*, No. 19CV2239-LAB-BGS, 2021 WL 1087106, at *4 (S.D. Cal. Mar. 19, 2021) (defendants'
alleged misrepresentations were opinions of law, not statements of fact, and thus not "proscribed
by ... common law" such that they could not form the independent wrong required for tortious
interference).

MOTION TO DISMISS                                           Case No. 2:21-CV-02338-KJM-CKD

statements.  *Id.* at *6.  In later addressing plaintiff's tortious inference claim, the court reasoned that this claim failed, too, "[b]ecause [plaintiff] [had] not adequately pled a separate cause of action [for] fraud ... as the basis of independently wrongful conduct[.]"  *Id.* at *8.  Here, Plaintiff has failed to allege any reliance upon Mr. Vronsky's email whatsoever—indeed, the word "rely" does not appear once in Plaintiff's Complaint.  Plaintiff has thus failed to plead that Mr. Vronsky's email was wrongful separate and apart from the purported interference, and has therefore failed to state a claim for tortious interference.

### 2.   Plaintiff has not identified any independently wrongful conduct premised upon Defendants' allegedly anticompetitive behavior.

Plaintiff also fails to adequately plead an independent wrong premised on Defendants' alleged anticompetitive conduct in purportedly "attempting to drive Plaintiff … out of the market, and prevent Plaintiff from raising money from investors."  Compl. ¶ 58.  In essence, Plaintiff claims that Mr. Vronsky's email was sent in violation of the UCL, meaning the email was independently wrongful as required to state a claim for tortious interference.  But where Plaintiff's UCL claim fails as to Mr. Vronsky and Bond Capital for the reasons articulated *infra*, Section IV, the dependent tortious interference claim cannot survive.  *See, e.g.*, *Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*, 138 Cal. App. 4th 1215, 1225(2006) ("allegation that respondents' conduct [violated the UCL] [wa]s insufficient to support its … interference … claim" because the "complaint d[id] not adequately allege [a UCL violation]"); *see Ixchel Pharma, LLC v. Biogen Inc.*, No. CV21700715WBSEFB, 2017 WL 4012337, at *5 (E.D. Cal. Sept. 12, 2017) (because UCL claims were subject to dismissal, they were not "sufficient bases for independently wrongful conduct" to state a tortious interference claim).

## IV.   PLAINTIFF FAILS TO STATE A COGNIZABLE UCL CLAIM.

Plaintiff's UCL claim fails because it has not established standing to assert such a claim against Mr. Vronsky and Bond Capital, and has otherwise failed to allege that Mr. Vronsky or Bond Capital engaged in any conduct prohibited by the statute.

### A.   PLAINTIFF HAS NOT SATISFIED THE UCL'S STANDING REQUIREMENTS.

To have standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of

money or property sufficient to qualify as injury in fact, *i.e.*, economic injury, and (2) show that that economic injury was the result of, *i.e.*, caused by, the unfair business practice[.]" *In re Turner*, 859 F.3d 1145, 1151 (9th Cir. 2017) (emphasis omitted). "A plaintiff fails to satisfy this causation requirement if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'" *Id.* Moreover, "where the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, to have standing to sue." *See, e.g., Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075-76 (N.D. Cal. 2014). As explained *supra*, pp. 6-8, Plaintiff does not and cannot allege economic harm resulting from Mr. Vronsky's email. Instead, where Plaintiff's allegations evidence that it "would have suffered 'the same harm whether or not [Bond Capital and Mr. Vronsky] complied with the law,'" Plaintiff has "fail[ed] to satisfy th[e] causation standard." *See In re Turner*, 859 F.3d at 1151.

### B.   THE UCL CLAIM ALSO FAILS BECAUSE PLAINTIFF DOES NOT PLEAD ANY UNLAWFUL, UNFAIR, OR FRAUDULENT CONDUCT.

The UCL targets the use of any "unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code. § 17200. Plaintiff attempts to plead violations of all three prongs, alleging that "Defendants have engaged in unlawful, unfair, and fraudulent business practices … by committing acts including tortious interference, fraudulent misrepresentation, and unfair, anti-competitive conduct[.]" *See* Compl. ¶ 64. However, Plaintiff does not plausibly plead a violation of any of the UCL's prongs. Accordingly, its UCL claim must be dismissed.

### 1.   Plaintiff fails to identify any unlawful conduct.

The UCL's "unlawful" prong "borrows violations of other laws ... and makes those unlawful practices actionable under the UCL[.]" *Yellowcake, Inc. v. Morena Music, Inc.*, No. 1:20-CV-0787 AWI BAM, 2021 WL 3287719, at *7 (E.D. Cal. Aug. 2, 2021). In other words, to state a claim under this prong, a plaintiff must identify a separate law that the defendant violated. *Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071 (C.D. Cal. 2014) ("A cause of action under [the UCL] law must be based on a predicate act involving a violation of some other statute."). Although "virtually any law or regulation … can serve as a predicate[,]" *Yellowcake*,

1   2021 WL 3287719, at *7, when the predicate legal claim fails, "so too will the derivative UCL

2   claim." *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th 923, 950 (2018);

3   *see, e.g.*, *Magdaleno v. Indymac Bancorp, Inc.*, 853 F. Supp. 2d 983, 996 (E.D. Cal. 2011)

4   (dismissing UCL claim because it was "predicated on facts supporting [plaintiff's] other claims,

5   all of which the court ha[d] dismissed"); *see also Hellenic Petroleum, LLC v. Sacramento Energy*

6   *Res., LLC*, No. 1:19-CV-0491 AWI SAB, 2019 WL 4747794, at *7 (E.D. Cal. Sept. 30, 2019)

7   ("Because the[] [predicate] causes of action fail[ed], so too fail[ed] the UCL claim.").

8      As to unlawful conduct, the only predicate legal claim Plaintiff asserts is tortious

9   interference. *See* Compl. ¶ 64.[5]  But where Plaintiff's tortious interference claim fails for the

10  reasons explained *supra*, Section III, so, too, must the derivative UCL claim.  *See Deerpoint Grp.,*

11  *Inc.*, *LLC*, 345 F. Supp. at 1238 ("The Court has found that no plausible [tortious interference]

12  claim is stated.  To the extent that [plaintiff] relies on an actionable [tortious interference] claim to

13  support a UCL claim, the UCL claim fails and dismissal is appropriate.").[6]

14     **2.**   **Plaintiff fails to allege that Bond Capital and Mr. Vronsky engaged in**
15        **fraudulent conduct under the UCL.**

16     To state a claim under the UCL's "fraudulent" prong, a plaintiff must allege "deception to

17  some members of the public, [] harm to the public interest," or that "members of the public are

18  likely to be deceived."  *Ghuman v. Wells Fargo Bank, N.A.*, 989 F. Supp. 2d 994, 1008 (E.D. Cal.

19  2013).  For this reason, this prong does not apply to private communications, and courts routinely

20  dismiss UCL claims premised on fraudulent conduct where a plaintiff's allegations concern only

21  private statements.  *See, e.g.*, *Dan's Deals LLC v. Sunspotweb*, *Inc.*, No.

22  SACV1901248CJCPLAX, 2019 WL 8621439, at *7 (C.D. Cal. Dec. 10, 2019) (dismissing UCL

---

23  [5] Although Plaintiff alleges that Defendants engaged in "other illegal acts" (Compl. ¶ 64), it does
24  not identify what other law or regulation Defendants purportedly violated.  This is insufficient.
    *See Brown v. Starbucks Corp.*, No. 18CV2286 JM (WVG), 2019 WL 996399, at *3 n.4 (S.D. Cal.
25  Mar. 1, 2019) (dismissing UCL claim to the extent it was predicated upon unidentified statutes or
    regulations); *Inn S.F. Enter., Inc. v. Ninth St. Lodging, LLC*, No. 3:16-CV-00599-JD, 2016 WL
26  8469189, at *1 (N.D. Cal. Dec. 19, 2016) (dismissing UCL counterclaim that did "not identify any
    predicate law that [was] allegedly violated").

27  [6] The same is true with respect to Plaintiff's threadbare allegations of "fraudulent
    misrepresentation."  Compl. ¶ 64.  As neither Mr. Vronsky nor Bond Capital made any
28  misrepresentations, *see supra*, pp. 9-10, that cannot serve as the predicate violation, either.

claim where allegations of fraud concerned "private communications," which did "not involve public deception or public harm"); *see also Aftermaster, Inc. v. Infintiy Power & Controls, Inc.*, No. CV1905771CJCFFMX, 2019 WL 13063229, at *5 (C.D. Cal. Nov. 5, 2019) (similar). Plaintiff nowhere alleges that Mr. Vronsky's email either did or was likely to mislead members of the public.  Nor could it, where Plaintiff's allegations evidence Mr. Vronsky's email was a "private communication" not disseminated to the public, but only to Lead Investor.  *See* Compl. ¶¶ 46-47.  Plaintiff has therefore failed to allege a violation of the UCL's "fraudulent conduct" prong.  *See Aftermaster, Inc.*, 2019 WL 13063229, at *5 (UCL claim based on fraudulent prong failed where communication was directed to plaintiff, "not the public").[7]

### 3. Plaintiff also fails to state a UCL claim premised upon any "unfair conduct."

Plaintiff's allegations also fail to establish a plausible violation of the UCL's "unfair" prong.  Where, as here, a UCL claim is asserted as between competitors, "unfair competition" is measured by whether the conduct complained of "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Schrenk v. Carvana, LLC*, No. 219CV01302TLNCKD, 2020 WL 4339969, at *5 (E.D. Cal. July 28, 2020) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999)); *see also* Compl. ¶ 41 (alleging Plaintiff is a "competitor" with "Emergy and its investors").  "Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 186.  Thus, a plaintiff alleging unspecified "harm to its commercial interests, rather than harm to competition," does not meet this test, and does not state a claim under the UCL.  *See Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1119 (C.D. Cal. 2001); *see also Glob. Plastic Sheeting v. Raven Indus.*, No. 17-CV-1670 DMS (KSC), 2018 WL 3078724, at *6 (S.D. Cal. Mar. 14,

---

[7] Moreover, "UCL claims grounded in fraud require *heightened* specificity in pleading under Federal Rule of Civil Procedure 9(b)."  *Robinson v. Hunger Free Am., Inc.*, No. 118CV00042LJOBAM, 2018 WL 2563809, at *5 (E.D. Cal. June 4, 2018).  For the reasons previously explained, *supra*, pp. 9-11, Plaintiff's averments of fraud are "entirely lacking" under this standard.  *See id.*

2018) (dismissing UCL claim where allegations "merely indicate[d] … harm to … commercial interests rather than harm to competition").

Plaintiff's allegations fall directly into this category of non-cognizable UCL claims.  It alleges that Bond Capital's and Mr. Vronsky's "unfair business practices"—whatever those may be—"have caused and are causing Plaintiff to suffer economic injuries."  Compl. ¶ 65.  This is precisely the type of singular commercial harm courts have found to be nonactionable.  For example, in *Glob. Plastic Sheeting*, the court dismissed plaintiff's UCL claim where the allegations, taken as a whole, indicated only that the challenged conduct harmed plaintiff's "commercial interests" and not "competition."  2018 WL 3078724, at *6.  The same is true with respect to Plaintiff's allegations.  Although Plaintiff also alleges that Defendants have "unjustly minimized Plaintiff's competitive advantage" (Compl. ¶ 65), this allegation, too, focuses only on harm to Plaintiff itself, and not the type of "harm to the market as a whole" that is required to state a claim under the UCL's unfairness prong.  *See Snapkeys, Ltd. v. Google LLC*, No. 19-CV-02658-LHK, 2020 WL 6381354, at *3-4 (N.D. Cal. Oct. 30, 2020).  Moreover, even if this allegation could be read to plead the type of harm to the market as a whole required to state a UCL claim, Plaintiff "never offers specific facts that support th[is] allegation[,]" which requires its dismissal. *See id.* (discussing cases dismissing claims where "the plaintiff pled conclusory allegations of significant harm to competition without providing specific facts that supported them"); *see also Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014) ("very general allegation" of harm to competition was insufficient).  For these reasons, Plaintiff's UCL claim cannot survive as premised on the unfair conduct prong of the statute.

## V.   PLAINTIFF'S CLAIMS ARE BARRED BY CAL. CIV. CODE § 47.

Even if Plaintiff could plead plausible claims for tortious interference and violations of the UCL, these claims would be barred by the litigation privilege set forth in Cal. Civ. Code § 47(b), as explained (at 5, 9-12) in Emergy's Motion to Dismiss Under Rule 12(b)(6), Dkt. No. 27 ("Motion to Dismiss" or "Mot.").  Moreover, Plaintiff's claims are separately barred by California's common interest privilege, Cal. Civ. Code § 47(c).  Accordingly, Plaintiff's claims should be dismissed, with prejudice.

**A.    PLAINTIFF'S CLAIMS ARE SUBJECT TO THE LITIGATION PRIVILEGE.**

As explained in Emergy's Motion to Dismiss (at 9-12), Mr. Vronsky's communication to Lead Investor falls squarely within Section 47(b)'s litigation privilege, meaning Plaintiff's tortious interference and UCL claims premised on that communication are barred.  On its face, Mr. Vronsky's communication is encompassed by the litigation privilege, because: (1) it was clearly related to Emergy's then-anticipated lawsuit against Plaintiff—explicitly referencing the "trade secret and patent dispute" between the two (Compl. ¶ 47), and (2) there is no allegation that Emergy was not seriously and in good faith considering litigation against Plaintiff at the time of Mr. Vronsky's email.  *See* Mot. 9-11.  That Mr. Vronsky was a third-party to the dispute between Emergy and Plaintiff, and that the communication was made to Lead Investor, another third party, does not remove his email from the protections of the litigation privilege, because both had a substantial financial interest in the litigation.  *See* Mot. 9-10 (discussing third-party communications).  Bond Capital (and, as a result, Mr. Vronsky), are sufficiently interested in the dispute to afford them the protections of the privilege, because Bond Capital is a "substantial investor in Emergy[,]" Compl. ¶ 8, therefore having a substantial interest in ensuring this "substantial invest[ment]" is protected (by, *e.g.*, helping Emergy protect its intellectual property and trade secrets).[8]  And Lead Investor, too, possesses a sufficient business interest in the dispute, such that Mr. Vronsky's communication to this third-party is protected.  *See* Mot. 10 (explaining Lead Investor's business interest).  Thus, where all prongs of the privilege are met, it operates to bar Plaintiff's tortious interference and UCL claims.  *See* Mot. 11-12.

**B.    THE PRIVILEGE OF CAL. CIV. CODE § 47(C) IS A SEPARATE BAR TO PLAINTIFF'S CLAIMS.**

Mr. Vronsky's communication is also protected by the common-interest privilege, which "protect[s] communications made in good faith on a subject in which the speaker and hearer

---

[8] *Cf. Mireskandari v. Mayne*, No. CV123861JGBMRWX, 2016 WL 1165896, at *11 (C.D. Cal. Mar. 23, 2016) (litigation privilege applied to bar attorney-plaintiff's defamation claim, where defendant-client made statements to a third party in connection with disbarment proceedings against plaintiff, because defendant had such a substantial interest in seeking to avoid paying the legal fees he owed to plaintiff, despite not being a party to or a witness in the proceedings), *judgment entered*, No. CV123861JGBMRWX, 2016 WL 1170871 (C.D. Cal. Mar. 23, 2016), *and aff'd*, 800 F. App'x 519 (9th Cir. 2020).

1    share[] an interest or duty." *Narayan v. Compass Grp. USA, Inc.*, 284 F. Supp. 3d 1076, 1087

2    (E.D. Cal. 2018) ("A common business or professional interest will suffice.").  Cal. Civ. Code

3    § 47(c) involves a two-step inquiry:  "The defendant has the initial burden of showing the …

4    statement was made on a privileged occasion, whereupon the burden shifts to the plaintiff to show

5    the defendant made the statement with malice."  *See Kashian v. Harriman*, 98 Cal. App. 4th 892,

6    915 (2002); *see also Narayan*, 284 F. Supp. 3d at 1087.

7         Bond Capital, and Mr. Vronsky by extension, shared a financial interest with Lead Investor

8    in the subject matter of Mr. Vronsky's communication, such that the privilege presumptively

9    applies.  Courts have found such common financial interests sufficient to show that the

10   communication was made on a privileged occasion.  For example, in *Gantry Constr. Co. v. Am.*

11   *Pipe & Constr. Co.*, 49 Cal. App. 3d 186, 197 (1975), the court found that statements made by a

12   contracting party to its counterpart's bondsperson about the counterpart's defaults were covered by

13   the privilege, where each was "equally interested" in those defaults such that "[w]arning as to

14   defaults ... was, on its face, a communication that [the bondsperson] was interested in receiving,"

15   as the bondsperson was required to pay the contract price if the counterparty did not.  Similarly, in

16   *Kemart Corp. v. Printing Arts Rsch. Lab., Inc.*, 269 F.2d 375, 393 (9th Cir. 1959), the Ninth

17   Circuit concluded that the communications "clearly c[a]me within the terms of the … privilege,"

18   where the publisher and recipients were "[b]oth … financially interested in the subject matter"

19   because "the publisher … [wa]s the holder of a competing patient [sic]," and "[t]the recipients …

20   were the present and the prospective licensees of the … competing patent owners."  Here, as in

21   *Gantry* and *Kemart*, Bond Capital and Lead Investor had a shared financial interest as to the

22   subject matter of Mr. Vronsky's email informing Lead Investor of the dispute, as both had either

23   invested, or were about to invest, in the quarreling companies.  *See supra*, p. 16.  Where courts

24   have recognized far less robust shared interests sufficient to establish application of the privilege,

25   this Court should find that Bond Capital and Lead Investor's common financial interest is, too.

26   *See Lundquist v. Reusser*, 7 Cal. 4th 1193, 1204 (1994) ("a common interest in horse breeding"

27   was sufficient).

28        Having established Mr. Vronsky's communication was made upon a privileged occasion,

1   the burden shifts to Plaintiff to show it was made with malice.  *See Kashian*, 98 Cal. App. 4th at

2   915.  In this context, malice means "actual malice"—*i.e.*, that "the publication was motivated by

3   hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable

4   grounds for belief in the truth of the publication[.]"  *Duenas v. Ocwen Loan Servicing, LLC*, No.

5   1:14-CV-00406-JLT, 2014 WL 4627203, at *5 (E.D. Cal. Sept. 16, 2014).  Plaintiff has not even

6   attempted to plead that Mr. Vronsky's acted with malice:  nowhere does it plead that Mr. Vronsky

7   was motived by hatred or ill will, and Plaintiff has not pleaded that Mr. Vronsky lacked reasonable

8   grounds for believing the statements in his email to be true.  Nor could it, where nothing in Mr.

9   Vronsky's email was actually false.  *See supra*, pp. 9-10.   Thus, where Plaintiff has not plead

10  malice, the privilege operates to bar Plaintiff's claims.  *See Duenas*, 2014 WL 4627203, at *5

11  ("Plaintiff d[id] not allege ... hatred or ill will" and "d[id] not allege facts supporting a

12  determination that [a third-party] acted maliciously," such that "Plaintiff d[id] not allege facts that

13  support[ed] a finding that [the third party] engaged in conduct not subject to the privilege").

14                                            **<u>CONCLUSION</u>**

15          For the foregoing reasons, Defendants Mr. Vronsky and Bond Capital respectfully request

16  that the Court dismiss the claims against them in their entirety, with prejudice, for failure to state a

17  claim under Rule 12(b)(6).

18

19                                          Respectfully submitted,

20
    Dated:  February 7, 2022              By:   */s/   David R. Callaway*
21                                               David R. Callaway (SBN 121782)
                                                 dcallaway@goodwinlaw.com
22                                          **GOODWIN PROCTER LLP**
                                            601 Marshall St.
23                                          Redwood City, CA 94063
                                            Tel.: (650) 752-3100
24                                          Fax.: (650) 853-1038

25                                          Michael T. Jones (SBN 290660)
                                             mjones@goodwinlaw.com
26                                          Katherine G. McKenney (*pro hac vice*)
                                             kmckenney@goodwinlaw.com
27                                          Christopher J.C. Herbert (*pro hac vice*)
                                             cherbert@goodwinlaw.com
28                                          **GOODWIN PROCTER LLP**

                                                18

100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax.: (617) 523-1231

*Attorneys for Defendants Paul Vronsky and*
*Bond Capital Management LP*

MOTION TO DISMISS                                Case No. 2:21-CV-02338-KJM-CKD

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

3   United States District Court for the Eastern District of California by using the CM/ECF system

4   on **February 7, 2022**.  I further certify that all participants in the case are registered CM/ECF

5   users and that service will be accomplished by the CM/ECF system.

6          I certify under penalty of perjury that the foregoing is true and correct.  Executed on

7   February 7, 2022.

8                                                                */s/   David R. Callaway*
                                                          DAVID R. CALLAWAY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS                                    Case No. 2:21-CV-02338-KJM-CKD