Jeffrey D. Smyth (SBN 280665)
jeffrey.smyth@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California  94304
Telephone:    (650) 849-6600
Facsimile:    (650) 849-6666

David K. Mroz (*pro hac vice pending*)
David.Mroz@finnegan.com
Luke J. McCammon (*pro hac vice pending*)
Luke.McCammon@finnegan.com
John M. Williamson (*pro hac vice pending*)
John.Williamson@finnegan.com
Sonja W. Sahlsten (*pro hac vice pending*)
Sonja.Sahlsten@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:    (202) 408-4000
Facsimile:    (202) 408-4400

*Attorneys for Defendant Emergy Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE BETTER MEAT CO., | CASE NO. 2:21−CV−02338−KJM−CKD |
| Plaintiff, | **DEFENDANT EMERGY, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE UNDER CALIFORNIA'S ANTI-SLAPP STATUTE, CAL. CIV. PROC. CODE § 425.16** |
| v. | |
| EMERGY, Inc. d/b/a MEATI FOODS, PAUL VRONSKY, and BOND CAPITAL MANAGEMENT LP, | |
| Defendants. | Date:        May 6, 2022<br>Time:        10:00 AM<br>Location:    Courtroom 3, 15th Floor<br>Judge:       Hon. Kimberly J. Mueller |

1

## <u>NOTICE OF MOTION AND MOTION TO STRIKE</u>

2

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE THAT on May 6, 2022 at 10:00 a.m.[1] in Courtroom 3, located on

4 the 15th Floor of the above-entitled court at 501 I Street, Sacramento, CA 95814, or as soon thereafter

5 as the matter may be heard before Honorable Kimberly J. Mueller, Emergy, Inc. will and hereby does

6 move to strike The Better Meat Co.'s claims of tortious interference and unfair competition.

7

The parties have met and conferred and discussed the substance and potential resolution of this

8 motion but were unable to resolve the issue.

9

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points

10 and Authorities, the Declaration of Dr. Tyler Huggins, the Declaration of Sonja W. Sahlsten and the

11 exhibits thereto, all other papers or pleadings in this action, evidence and argument that the parties

12 may present before or at the hearing on this matter, and any other matters of which this Court may

13 take judicial notice.

14

15 Dated: February 7, 2022                    FINNEGAN, HENDERSON, FARABOW,
                                              GARRETT & DUNNER, LLP
16

17                                            By:   */s/ Jeffrey D. Smyth*
                                                   Jeffrey D. Smyth
18                                                 *Attorney for Defendant Emergy Inc.*

19

20

21

22

23

24

---

25

[1] The anti-SLAPP statute states the "[t]he motion shall be scheduled by the clerk of the court
26 for a hearing not more than 30 days after the service of the motion unless the docket conditions of the
court require a later hearing." Cal. Civ. Proc. Code § 425.16(f). Emergy is available for a hearing on
27 the motion on any of the Court's available civil and motion dates in the next 30 days. However, the
parties have conferred, and in an effort to accommodate the schedule of counsel for The Better Meat
28 Co., the parties propose holding the hearing on this anti-SLAPP motion on the same date as the hearing
on the motion to dismiss, which raises related issues and is filed on the same date as this motion.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ................................................................................2

III.  LEGAL STANDARD...........................................................................................7

    A.  California's Anti-SLAPP Statute................................................................7

    B.  California's Litigation Privilege .................................................................8

IV.  ARGUMENT .......................................................................................................9

    A.  The First Anti-SLAPP Element Is Satisfied Because The Better Meat Co.'s Tortious Interference and Unfair Competition Claims Arise from Statements Made in Anticipation of Imminent Litigation.............................................9

        1.  The Notice Letter Is a Protected Anti-SLAPP Communication ...............11

        2.  The Vronsky Email Is a Protected Anti-SLAPP Communication ............12

    B.  The Second Anti-SLAPP Element Is Met Because The Better Meat Co.'s Tortious Interference and Unfair Competition Claims Are Barred by California's Litigation Privilege, So There Is No Probability of Success .............14

        1.  The Notice Letter Falls Squarely Within the Litigation Privilege.............15

        2.  The Vronsky Email Falls Squarely Within the Litigation Privilege..........17

        3.  The Better Meat Co.'s Tortious Interference and Unfair Competition Claims Are Barred by the Litigation Privilege .........................................19

V.  CONCLUSION....................................................................................................20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Butkus v. Downtown Athletic Club of Orlando, Inc.*,
No. CV 07-2507 PA (JWJx), 2008 WL 11338099 (C.D. Cal. Mar. 10, 2008) ................16, 19

*Cargill Inc. v. Progressive Dairy Sols., Inc.*,
No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354 (E.D. Cal. May 29, 2008) ........................8

*Cox v. Mariposa Cnty.*,
445 F. Supp. 3d 804 (E.D. Cal. 2020)...............................................................................7, 8

*eCash Techs., Inc. v. Guagliardo*,
210 F. Supp. 2d 1138 (C.D. Cal. 2001) .................................................................................10

*Gaydays, Inc. v. Master Ent., Inc.*,
No. CV 07-6179 ABC (JWJx), 2008 WL 11336813 (C.D. Cal. Apr. 14, 2008)...........7, 16, 17

*Graham-Sult v. Clainos*,
756 F.3d 724 (9th Cir. 2014) ....................................................................................................7

*GWS Techs., Inc. v. Furth*,
No. SACV 08-00586-CJC(PLAx), 2010 WL 11520562 (C.D. Cal. Mar. 25, 2010)..............13

*I & U, Inc. v. Publishers Sols. Int'l*,
No. CV 13-00018 GAF (AJWx), 2014 WL 12665121 (C.D. Cal. Aug. 7, 2014),
*aff'd*, 652 F. App'x 558 (9th Cir. 2016).....................................................................10, 15, 16

*Litrinium, Inc. v. MACOM Tech. Sols. Inc.*,
SACV 19-1674 JVS(JDEx), 2020 WL 4580506 (C.D. Cal. Apr. 27, 2020) ...................13, 18

*Maloney v. T3Media, Inc.*,
94 F. Supp. 3d 1128 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017)..........................8

*Netlist, Inc v. Diablo Techs., Inc.*,
No. 13-cv-05962-YGR, 2015 WL 153618 (N.D. Cal. Jan. 12, 2015)....................7, 10, 13, 18

*Sharper Image Corp. v. Target Corp.*,
425 F. Supp. 2d 1056 (N.D. Cal. 2006) ........................................................................ *passim*

*Sliding Door Co. v. KLS Doors, LLC*,
No. EDCV 13-00196 JGB (DTBx), 2013 WL 2090298 (C.D. Cal. May 1, 2013) ................18

*Sparrow LLC v. Lora*,
No. CV-14-1188-MWF (JCx), 2014 WL 12573525 (C.D. Cal. Dec. 4, 2014) .............. *passim*

*TradeMotion, LLC v. MarketCliq, Inc.*,
    No. CV 11-3236 PSG (VBKx), 2011 WL 13220413 (C.D. Cal. Oct. 25, 2011)....................13

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) .................................................................................................8

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
    814 F. Supp. 2d 1033 (S.D. Cal. 2011)...........................................................................17, 18

*Wolf v. Travolta*,
    No. 2:14-CV-938-CAS (VBKx), 2014 WL 6685560 (C.D. Cal. Nov. 24, 2014) ...8, 17, 18, 19

**State Cases**

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
    54 Cal. Rptr. 2d 830 (Cal. Ct. App. 1996) ................................................................10, 16, 17

*Flatley v. Mauro*,
    139 P.3d 2 (Cal. 2006) ....................................................................................9, 14, 15, 20

*Neville v. Chudacoff*,
    73 Cal. Rptr. 3d 383 (Cal. Ct. App. 2008) ................................................................... *passim*

*Rohde v. Wolf*,
    64 Cal. Rptr. 3d 348 (Cal. Ct. App. 2007) ..........................................................................15

*Silberg v. Anderson*,
    786 P.2d 365 (Cal. 1990), *as modified* (Mar. 12, 1990) ................................................ *passim*

**State Statutes**

Cal. Civ. Code § 47.......................................................................................................... *passim*

Cal. Civ. Proc. Code § 425.16 ......................................................................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Better Meat Co.'s tortious interference and unfair competition claims against Emergy, Inc. ("Emergy") do not survive California's anti-SLAPP statute and therefore must be struck. Emergy and The Better Meat Co. have been involved in a trade secret and patent dispute beginning in June 2021 when Emergy first suspected that Mr. Pattillo, a former intern who conducted research for Emergy, breached his nondisclosure agreement with Emergy and misappropriated trade secret and confidential information by, among other things, joining The Better Meat Co. and using Emergy trade secret and confidential information to develop and manufacture a competing product for The Better Meat Co. Emergy's suspicions grew when it saw that The Better Meat Co. obtained a patent with Mr. Pattillo listed as the sole inventor, and certain information in that patent was virtually identical to information in a confidential lab notebook that Mr. Pattillo had access to when he worked as an intern for Emergy.

Emergy and The Better Meat Co. have exchanged several letters about Emergy's allegations since June 2021, but The Better Meat Co. has refused to admit any wrongdoing. After five months of endeavoring to resolve this dispute out of court, Emergy decided its only viable option was to file a complaint against The Better Meat Co. and Mr. Pattillo. At that point, counsel for Emergy sent a final notice letter to counsel for The Better Meat Co. informing them that Emergy would be filing a complaint against The Better Meat Co. and Mr. Pattillo "in the immediate future." That same day, an Emergy investor sent The Better Meat Co.'s alleged "Lead Investor" an email informing him of a "pretty significant trade secret and patent dispute" between Emergy and The Better Meat Co. The Better Meat Co. responded by filing a retaliatory lawsuit asserting tortious interference and unfair competition claims against Emergy based on the letter and email described above. But these claims fail because the allegedly improper correspondence is squarely protected by—and permitted under—California's anti-SLAPP statute.

Anti-SLAPP statutes promote free speech for those embroiled in legal disputes by barring retaliatory lawsuits premised on communications relating to the dispute. Here, both elements of the California anti-SLAPP statute are met. First, the challenged communications (i.e., Emergy letter and the investor email) qualify as protected anti-SLAPP communications because they were made in

anticipation of an imminent litigation. The sole purpose of the Emergy letter and investor email was to address the lawsuit that Emergy filed 12 days later. The second anti-SLAPP element is also satisfied because The Better Meat Co. cannot show a probability of succeeding on the merits of its tortious interference and unfair competition claims—they are barred under California's litigation privilege doctrine. Accordingly, this Court should strike the tortious interference claim (Count 1) and the unfair competition claim (Count 2) of The Better Meat Co.'s Complaint.

## II.        FACTUAL BACKGROUND

Emergy (d/b/a Meati Foods) is an innovative company in Boulder, Colorado that makes alternative meat products from mycelium (a fungal, fibrous root structure consisting of a mass of branching filaments called hyphae). Declaration of Dr. Tyler Huggins ISO Emergy's Motion to Strike ("Huggins Decl.") ¶ 1; Ex. 1 (Complaint, *Emergy, Inc. v. The Better Meat Co. et al.*, 2:21-cv-02417-KJM-CKD (E.D. Cal. Dec. 27, 2021)) ¶ 10. The co-founders of Emergy are Dr. Tyler Huggins and Dr. Justin Whiteley. Huggins Decl. ¶ 1; Ex. 1 ¶ 12. As PhD students at the University of Colorado Boulder, Drs. Huggins and Whiteley researched the chemical and physical properties of mycelium and analyzed whether mycelium could be used as templates for carbon-based materials (i.e., battery electrodes and filters). *See* Huggins Decl. ¶ 1; Ex. 1 ¶ 12. Drs. Huggins and Whiteley subsequently applied for and earned a prestigious grant to perform additional mycelium research at the U.S. Department of Energy's UChicago Argonne National Laboratory ("Argonne") in Illinois. *See* Huggins Decl. ¶ 2; Ex. 1 ¶ 12. Drs. Huggins and Whiteley began conducting research at Argonne in January 2017. Huggins Decl. ¶ 2; Ex. 1 ¶ 12.

While working together at Argonne, Drs. Huggins and Whiteley discovered and developed innovative, confidential, and proprietary mycelium treatment processes that allowed them to preserve the mycelium mass's textural properties. Ex. 1 ¶ 14. Drs. Huggins and Whiteley realized their innovative mycelia could have significant commercial applications in the alternative meat space because the textural structure of their fibrous mycelium filaments resembled the strings of muscle found in animal meat. *Id.* ¶ 16. At Argonne, Drs. Huggins and Whiteley conducted experiments using their proprietary process to make an alternative meat from their textured mycelium. *Id.* Unlike other alternative meats on the market, which can be unstructured and mushy, the alternative meats Drs.

1   Huggins and Whiteley were creating had texture that resembled the *whole cuts and grounds of animal*

2   *meat*. *Id.* ¶¶ 16, 83.

3       While at Argonne, Drs. Huggins and Whiteley decided to bring on Augustus Pattillo as a lab

4   technician intern to help them carry out their experiments under their supervision and instruction.

5   Huggins Decl. ¶ 2; Ex. 1 ¶¶ 18-36. For months, Augustus Pattillo had been seeking employment and

6   research opportunities with Emergy, even offering his services for free and offering to relocate for the

7   opportunity. *See* Ex. 2 (Email from A. Pattillo to T. Huggins); Ex. 3 (Email from A. Pattillo to T.

8   Huggins) ("I am willing to relocate."); Ex. 4 (Email from A. Pattillo to T. Huggins) ("I would like to

9   offer my services free of charge to you and Emergy."). In May 2017, Dr. Huggins emailed Augustus

10  Pattillo a nondisclosure agreement ("NDA") to sign before they discussed the details of Emergy's

11  research and development. Huggins Decl. ¶ 2; Ex. 1 ¶ 24. Mr. Pattillo completed and returned what

12  he called the "signed non-disclosure agreement." Huggins Decl. ¶ 2; Ex. 1 ¶ 25. In July 2017, Mr.

13  Pattillo contacted Dr. Huggins to express interest in applying for Emergy's fellowship at Argonne

14  through the Applied Research Experience Fellowship Program. Ex. 5 (Email from A. Pattillo to T.

15  Huggins) at 1; Ex. 1 ¶ 32. In August 2017, Emergy formally recommended Mr. Pattillo for the position.

16  Ex. 5 at 2; Ex. 1 ¶ 33. Mr. Pattillo started as an Applied Research Experience Fellow around October

17  2017 and began conducting research on behalf of and under the direction and instruction of Emergy.

18  Huggins Decl. ¶ 2; Ex. 1 ¶ 36. During his time conducting research for Emergy at Argonne, Mr. Pattillo

19  had access to Emergy's highly confidential and trade secret information of both technical and business

20  nature. Huggins Decl. ¶ 2; Ex. 1 ¶¶ 41-48.

21       As Emergy began to explore food and meat alternative applications for its textured mycelium

22  platform, Mr. Pattillo became more interested in becoming a part owner of Emergy. Huggins Decl.

23  ¶ 3; Ex. 1 ¶ 55. In May 2018, Mr. Pattillo asked Drs. Huggins and Whiteley to make him a co-founder

24  and one-third shareholder of Emergy. Huggins Decl. ¶ 3; Ex. 1 ¶ 56. Drs. Huggins and Whiteley told

25  Mr. Pattillo that they were not interested in him becoming a co-founder or one-third shareholder but

26  did offer Mr. Pattillo a full-time position and a competitive equity package. Huggins Decl. ¶ 3; Ex. 1

27  ¶ 56. Mr. Pattillo declined, quit his research fellowship, and left Argonne that same day. Huggins Decl.

28  ¶ 3; Ex. 1 ¶ 56.

1    Unbeknownst to Emergy at the time, Mr. Pattillo joined The Better Meat Co. as CTO and co-

2    founder in May 2018—the same month he abruptly stopped conducting research for Emergy. Ex. 6

3    (A. Pattillo LinkedIn Profile) at 1; Ex. 1 ¶ 57. On June 8, 2021, The Better Meat Co. announced the

4    completion of a mycoprotein fermentation facility in Sacramento and unveiled a new product called

5    "Rhiza," touting its whole-cut meat applications. Ex. 7 (FoodNavigator-USA Article) at 1; Ex. 1 ¶ 65.

6    Around the time of the launch, Mr. Pattillo and CEO Paul Shapiro revealed that The Better Meat Co.

7    had been operating "in stealth mode" for three years on this mycoprotein fermentation facility and

8    their "Rhiza" product. *See* Ex. 7 at 1, 3; Ex. 8 (A. Pattillo LinkedIn Post) at 1; *see also* Ex. 1 ¶ 65.

9    Based on the Emergy trade secrets and proprietary and confidential information known to Mr.

10   Pattillo, the timing of Mr. Pattillo's tenure as a researcher for Emergy and his start date as the CTO of

11   The Better Meat Co., and the timing of The Better Meat Co.'s announcement of its mycoprotein

12   fermentation facility in Sacramento and "Rhiza" product, Emergy first suspected around June 2021

13   that Mr. Pattillo breached his NDA and that The Better Meat Co. and Mr. Pattillo used Emergy trade

14   secrets and proprietary and confidential information without authorization in connection with the

15   development and manufacture of the "Rhiza" product at The Better Meat Co.'s Sacramento facility.

16   Huggins Decl. ¶ 5; *see also* Ex. 1 ¶ 66.

17   Shortly after, in July 2021, U.S. Patent No. 11,058,137 ("the '137 patent") issued to The Better

18   Meat Co. with Mr. Pattillo listed as the sole inventor. *See* Huggins Decl. ¶ 6; Ex. 1 ¶ 67. As Emergy

19   alleged in its offensive Complaint against The Better Meat Co. and Mr. Pattillo, the '137 patent covers

20   the same mycelium harvesting methods and mycelium-based food products that Mr. Pattillo learned

21   from Drs. Huggins and Whiteley during his time conducting research for Emergy. *See* Ex. 1 ¶¶ 68-69.

22   Indeed, the specification and claims of the '137 patent describe specific trade secret and confidential

23   information from Drs. Huggins and Whiteley's confidential electronic lab notebook documenting their

24   research at Argonne. *See* Ex. 1 ¶¶ 68-69. The similarities between the confidential lab notebook and

25   the '137 patent are alarming. Many of the materials, property ranges, and mycelium treatment

26   processes defined in the lab notebook are virtually identical to materials, property ranges, and

27   mycelium treatment processes described in the '137 patent. Ex. 1 ¶¶ 68-69. As these facts described

28

1  above unfolded, Drs. Huggins and Whitely grew more suspicious that Mr. Pattillo and The Better Meat

2  Co. stole Emergy's crown jewel innovations. Huggins Decl. ¶ 6.

3        Accordingly, on July 16, 2021, Counsel for Emergy sent cease and desist letters to Mr. Pattillo

4  and Mr. Shapiro of The Better Meat Co. raising its concerns about The Better Meat Co.'s and Mr.

5  Pattillo's conduct and enumerating Emergy's demands. Ex. 9 (July 16, 2021 Letter from D. Mroz to

6  P. Shapiro); Ex. 10 (July 16, 2021 Letter from D. Mroz to A. Pattillo). Mr. Pattillo never replied to the

7  correspondence. *See* Huggins Decl. ¶ 7. Counsel for The Better Meat Co. responded on August 5,

8  2021, and denied all allegations. Ex. 11 (August 5, 2021 Letter from J. Theodore to D. Mroz). On

9  August 25, 2021, counsel for Emergy sent a reply letter to counsel for The Better Meat Co. that

10  disclosed numerous emails, photographs, lab notebooks, and other documents showing that Emergy's

11  allegations were supported by overwhelming factual evidence. Ex. 12 (August 25, 2021 Letter from

12  D. Mroz to J. Theodore). Counsel for The Better Meat Co. responded on September 8, 2021, but did

13  not meaningfully address Emergy's factual allegations, opting instead to promote false and irrelevant

14  narratives. Ex. 13 (September 8, 2021 Letter from J. Theodore to D. Mroz). In the meantime, The

15  Better Meat Co. continued making, selling, and offering for sale its "Rhiza" product, which is the

16  product created using the trade secrets and confidential information that Mr. Pattillo and The Better

17  Meat Co. stole from Emergy.

18        Emergy realized that The Better Meat Co. was unwilling to work with Emergy to resolve this

19  dispute out of court and ultimately decided that litigation was necessary. Huggins Decl. ¶ 8. In mid-

20  December 2021, Emergy began moving forward with a complaint that it planned to file by the end of

21  2021. *Id.* On December 15, 2021, Emergy's counsel sent a courtesy letter to Mr. Pattillo and counsel

22  for The Better Meat Co. informing them of Emergy's intent to file a lawsuit. Ex. 14 (December 15,

23  2021 Letter from D. Mroz to J. Theodore and A. Pattillo) (the "Notice Letter"). The Notice Letter

24  stated, in relevant part:

25          We write on behalf of our client, Meati (f/k/a Emergy, LLC) regarding
        The Better Meat Co.'s and Mr. Pattillo's misappropriation of Meati's

26          trade secrets and unfair competition, Mr. Pattillo's breach of his
        nondisclosure agreement with Emergy, LLC, and the incorrect

27          inventorship of U.S. Patent No. 11,058,137 and U.S. Patent Application
        No. 16/586150.

28          . . .

> Meati has tried for months to resolve this matter without formal legal action. The Better Meat Co. has not meaningfully addressed the issues raised in our letters and has not complied with the demands in those letters. Mr. Pattillo has been non-responsive. The Better Meat Co. continues to make, sell, and offer for sale its Rhiza product, which is the product of Mr. Pattillo's and The Better Meat Co.'s misappropriation and improper use of Meati's confidential information.
>
> *Given the above, Meati has decided to move forward with legal action and will be filing a complaint against The Better Meat Co. and Mr. Pattillo in the immediate future.*

Ex. 14 at 1-2 (emphasis added).

That afternoon, Paul Vronsky of Bond Capital (an Emergy investor) emailed The Better Meat Co.'s self-described "Lead Investor." Ex. 15 (Email from P. Vronsky to Alleged "Lead Investor") (the "Vronsky Email"); *see* D.I. 1, ¶¶ 39, 46. The Vronsky Email stated, in relevant part:

> I wanted to give you a heads up that one of our portfolio companies, Meati, is in a pretty significant trade secret and patent dispute with a company you might be evaluating, the Better Meat Co. I don't know really more than that but as a matter of friendship and courtesy, I thought I would reach out and let you know. I'm happy to connect with your counsel if that is helpful.

Ex. 15.

The Better Meat Co. sued Emergy, Mr. Vronsky, and Bond Capital two days later, on December 17, 2021. D.I. 1. In its complaint, The Better Meat Co. alleged that Emergy, Mr. Vronsky, and Bond Capital tortiously interfered with The Better Meat Co.'s relationships with its investors and prospective investors by sending the Notice Letter and Vronsky Email. *See id.* ¶¶ 52-62. The Better Meat Co. also accused Emergy, Mr. Vronsky, and Bond Capital of unfair competition. *Id.* ¶¶ 63-66. Less relevant to this motion, The Better Meat Co.'s complaint had a third count seeking declaratory judgment of inventorship of the '137 patent. *Id.* ¶¶ 67-73.

On December 27, 2021—12 days after sending the Notice Letter—Emergy filed a complaint against The Better Meat Co. and Mr. Pattillo, asserting counts of trade secret misappropriation under the Defend Trade Secrets Act, trade secret misappropriation under the California Uniform Trade Secrets Act, unfair competition, unjust enrichment, and conversion against The Better Meat Co. and Mr. Pattillo; counts of breach of contract and breach of implied contract against Mr. Pattillo; and counts of inducement to breach of contract and tortious interference against The Better Meat Co. Ex. 1 ¶¶ 85-128, 136-69. The complaint additionally sought correction of inventorship of the '137 Patent

1   to rectify the improper omission of Drs. Huggins and Whiteley as inventors and the improper inclusion

2   of Mr. Pattillo as an inventor. *Id.* ¶¶ 129-35.

3   **III.   LEGAL STANDARD**

4      **A.   California's Anti-SLAPP Statute**

5      A Strategic Lawsuit Against Public Participation ("SLAPP") is "a meritless suit filed primarily

6   to chill the defendant's exercise of First Amendment rights." *Gaydays, Inc. v. Master Ent., Inc.*, No.

7   CV 07-6179 ABC (JWJx), 2008 WL 11336813, at *2 (C.D. Cal. Apr. 14, 2008) (citation omitted). In

8   response to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the

9   constitutional rights of freedom of speech and petition for the redress of grievances," California passed

10  the anti-SLAPP statute to curtail these lawsuits and "to encourage continued participation in matters

11  of public significance." Cal. Civ. Proc. Code § 425.16(a). The anti-SLAPP statute authorizes a special

12  motion to strike any "cause of action against a person arising from any act of that person in furtherance

13  of the person's right of petition or free speech under the United States Constitution or the California

14  Constitution in connection with a public issue." *Id.* § 425.16(b)(1).

15     Anti-SLAPP motions require a two-step analysis. *Neville v. Chudacoff*, 73 Cal. Rptr. 3d 383,

16  387-88 (Cal. Ct. App. 2008); *Netlist, Inc v. Diablo Techs., Inc.*, No. 13-cv-05962-YGR, 2015 WL

17  153618, at *3 (N.D. Cal. Jan. 12, 2015); *Cox v. Mariposa Cnty.*, 445 F. Supp. 3d 804, 815 (E.D. Cal.

18  2020). First, the moving party must establish that the challenged claims arise from speech or conduct

19  that is protected under the anti-SLAPP statute. *See Neville*, 73 Cal. Rptr. 3d at 387-88; *Cox*, 445 F.

20  Supp. 3d at 815; *Sparrow LLC v. Lora*, No. CV-14-1188-MWF (JCx), 2014 WL 12573525, at *2

21  (C.D. Cal. Dec. 4, 2014). Second, if the moving party meets its burden, the non-moving party must

22  show a probability of prevailing on the challenged claims. *Cox*, 445 F. Supp. 3d 804 at 815; *Sparrow*,

23  2014 WL 12573525, at *2; *Netlist*, 2015 WL 153618, at *3. In evaluating an anti-SLAPP motion to

24  strike, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts

25  upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2). The anti-SLAPP

26  statute itself specifies that the statute should be "construed broadly." *Id.* § 425.16(a).

27     Although the anti-SLAPP statute is a state statute, the Ninth Circuit and U.S. District Courts

28  in California allow anti-SLAPP motions in federal court. *See Graham-Sult v. Clainos*, 756 F.3d 724,

735 (9th Cir. 2014); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999); *Cox*, 445 F. Supp. 3d at 815 ("The special motion to strike under the anti-SLAPP statute is available to litigants proceeding in federal court."); *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1132 (C.D. Cal. 2015) ("California's anti-SLAPP statute protects substantive rights and thus applies in federal court."), *aff'd*, 853 F.3d 1004 (9th Cir. 2017).

### B.    California's Litigation Privilege

Under California's litigation privilege, codified at California's Civil Code Section 47(b), "communications made in or related to judicial proceedings are absolutely immune from tort liability." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006); *see also Wolf v. Travolta*, No. 2:14-CV-938-CAS (VBKx), 2014 WL 6685560, at *14 (C.D. Cal. Nov. 24, 2014) ("Section 47(b) protects participants in judicial proceedings from derivative tort actions based on communications in or regarding the judicial proceeding." (citation omitted)). While originally enacted as a bar to defamation claims, the privilege "has been given broad application" and now applies "to any communication" and "all torts except malicious prosecution." *Silberg v. Anderson*, 786 P.2d 365, 368 (Cal. 1990), *as modified* (Mar. 12, 1990); *see also Sharper Image*, 425 F. Supp. 2d at 1077. "Any doubt about whether the privilege applies is resolved in favor of applying it." *Wolf*, 2014 WL 6685560, at *14 (citation omitted).

The litigation privilege applies to bar claims based on "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg*, 786 P.2d at 369. The "principal purpose" of the privilege is to offer litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Id.*; *see also id.* at 369-70 (discussing additional purposes of "promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation"). To effectuate these vital purposes, the litigation privilege has been held to be "absolute in nature." *Id.* at 370; *see also Sharper Image*, 425 F. Supp. 2d at 1077 ("§ 47(b) operates as an absolute privilege."); *Cargill Inc. v. Progressive Dairy Sols., Inc.*, No. CV-F-07-0349-LJO-SMS,

2008 WL 2235354, at *6 (E.D. Cal. May 29, 2008) ("[T]he litigation privilege is absolute, regardless of malice.").

Regarding the application of the litigation privilege doctrine to the anti-SLAPP analysis, if a statement "is privileged under section 47, then a plaintiff could not show a likelihood of success on the merits, the second step in the anti-SLAPP inquiry." *Neville*, 73 Cal. Rptr. 3d at 389 n.7; *see also Flatley v. Mauro*, 139 P.3d 2, 17 (Cal. 2006) ("The litigation privilege is also relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.").

## IV.   ARGUMENT

### A.   The First Anti-SLAPP Element Is Satisfied Because The Better Meat Co.'s Tortious Interference and Unfair Competition Claims Arise from Statements Made in Anticipation of Imminent Litigation

The Better Meat Co.'s tortious interference and unfair competition claims against Emergy arise from two separate pieces of correspondence—1) the Notice Letter counsel for Emergy sent to counsel for The Better Meat Co. warning that Emergy would be "filing a complaint against The Better Meat Co. and Mr. Pattillo in the immediate future" and 2) the Vronsky Email from an Emergy investor, Mr. Vronsky, to The Better Meat Co.'s alleged "Lead Investor" warning of a "pretty significant trade secret and patent dispute" between Emergy and The Better Meat Co. Ex. 14 at 2; Ex. 15; *see* D.I. 1 ¶¶ 55-56 (addressing Notice Letter and Vronsky Email as the bases for its tortious interference claim); *id.* ¶¶ 63-66 (referring to prior paragraphs addressing the Notice Letter and Vronsky Email as the bases for its unfair competition claim). Both actions are protected statements under the anti-SLAPP statute.

The anti-SLAPP statute recognizes the following as protected activities:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

1  Cal. Civ. Proc. Code § 425.16(e)(1)-(4). The Notice Letter and Vronsky Email are both protected

2  under the anti-SLAPP statute because they were statements "made in connection with an issue under

3  consideration or review by a legislative, executive, or judicial body." *See id.* § 425.16(e)(2).

4      As an initial matter, protection under section 425.16(e)(2) of the anti-SLAPP statute is not

5  limited to statements made in relation to litigation that already exists. Rather, courts have repeatedly

6  held that "[c]ommunications *preparatory to or in anticipation of litigation* fall within the Anti-SLAPP

7  statute." *Sparrow*, 2014 WL 12573525, at *3 (emphasis added); *see also Netlist*, 2015 WL 153618, at

8  *3 ("[C]ommunications related to, *preparatory to, or in anticipation of litigation*[] are protected

9  speech for purposes of section 425.16." (emphasis added)); *eCash Techs., Inc. v. Guagliardo*, 210 F.

10 Supp. 2d 1138, 1154 (C.D. Cal. 2001) ("[S]tatements in relation to pending *or upcoming litigation* . .

11 . are covered by Section 425.16." (emphasis added)); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,

12 54 Cal. Rptr. 2d 830, 835 (Cal. Ct. App. 1996) ("[C]ommunications *preparatory to or in anticipation*

13 *of* the bringing of an action" are "entitled to the benefits of section 425.16." (emphasis added)). Thus,

14 that the Notice Letter and Vronsky Email were sent *before* Emergy sued The Better Meat Co. does not

15 make them unprotected communications. *See Neville*, 73 Cal. Rptr. 3d at 393 ("That [Maxsecurity's

16 lawyer] sent the Letter before Maxsecurity sued Neville does not mean it is not protected activity.").

17 Indeed, prelitigation demand letters are routinely found to be protected communications under the

18 anti-SLAPP statute. *See, e.g.*, *I & U, Inc. v. Publishers Sols. Int'l*, No. CV 13-00018 GAF (AJWx),

19 2014 WL 12665121, at *5 (C.D. Cal. Aug. 7, 2014) (holding that demand letter "must clearly be

20 deemed a protected statement" under the anti-SLAPP statute), *aff'd,* 652 F. App'x 558 (9th Cir. 2016);

21 *Sparrow*, 2014 WL 12573525, at *3 (agreeing that "cease and desist letters can be protected speech

22 under the Anti-SLAPP statute").

23      In sum, a prelitigation statement is protected under the anti-SLAPP statute if it "concerns the

24 subject of the dispute" and "is made in anticipation of litigation contemplated in good faith and under

25 serious consideration." *Neville*, 73 Cal. Rptr. 3d at 393 (cleaned up). Both the Notice Letter and

26 Vronsky Email meet this requirement.

27

28

### 1.      The Notice Letter Is a Protected Anti-SLAPP Communication

The Notice Letter expressly "concerns the subject of the dispute," and it was sent "in anticipation of litigation contemplated in good faith and under serious consideration." *See id.* (cleaned up). The subject of the Notice Letter is "*Impending Litigation* against The Better Meat Co. and Augustus Pattillo." Ex. 14 at 1 (emphasis added). It is written on the official letterhead of Finnegan, the law firm representing Emergy, and states that Finnegan is representing Emergy in the dispute involving "The Better Meat Co.'s and Mr. Pattillo's misappropriation of Meati's trade secrets and unfair competition, Mr. Pattillo's breach of his nondisclosure agreement with Emergy, LLC, and the incorrect inventorship of U.S. Patent No. 11,058,137 and U.S. Patent Application No. 16/586150." *Id.* The letter expressly states that Emergy had "decided to move forward with legal action and w[ould] be filing a complaint against The Better Meat Co. and Mr. Pattillo *in the immediate future*." *Id.* at 2 (emphasis added).

The court in *Neville* addressed a pre-litigation letter involving similar facts and deemed it protected under the anti-SLAPP statute. Like the Notice Letter here, the pre-litigation letter in *Neville* came from the law firm representing Maxsecurity, was sent on the firm's letterhead, and referred to the parties to the anticipated litigation in the reference line. *See Neville*, 73 Cal. Rptr. 3d at 394. The letter stated that Maxsecurity would "aggressively pursue" all available remedies. *Id.* On those facts, the court in *Neville* found that the "only reasonable inference" from the evidence was that "Maxsecurity and [its lawyer] were contemplating litigation against Neville seriously and in good faith when the Letter was written." *Id.* The Court should reach the same result for the Notice Letter in this case.

In addition to the nature and content of the Notice Letter, the short time between when Emergy sent the Notice Letter and when it filed its complaint against The Better Meat Co. and Mr. Pattillo further shows the Notice Letter was sent in anticipation of a litigation that was being contemplated in good faith and was under serious consideration. Indeed, delivering on its promise in the Notice Letter, Emergy filed its lawsuit a mere 12 days after the letter was sent (with Finnegan as counsel of record on the complaint). *See* Ex. 14 at 2; Ex. 1. In *Neville*, the court held that a letter was sent in contemplation of litigation even though *four months* had passed between the sending of the letter and

the filing of the complaint. 73 Cal. Rptr. 3d at 388, 393-94 (rejecting argument that passage of four months meant the litigation was not contemplated seriously and in good faith).

While not required, Emergy has also provided the declaration of Dr. Huggins to further confirm the seriousness and good faith with which Emergy contemplated litigation at the time it sent the Notice Letter. *See id.* at 394 (rejecting argument that "direct evidence of . . . client's state of mind" was required to prove the seriousness and good faith with which the client was contemplating litigation). As Dr. Huggins explained, Emergy originally intended and hoped to reach a resolution of this dispute out of court. Huggins Decl. ¶ 7. This is why Emergy first sent several letters with extensive details and evidentiary support for its claims before filing its lawsuit. *See* Ex. 9; Ex. 10; Ex. 12. But after a series of disappointing and unproductive responses from The Better Meat Co. (*see* Ex. 11; Ex. 13) and no response from Mr. Pattillo, Emergy concluded that litigation was its only viable option. Huggins Decl. ¶¶ 7-8. In mid-December 2021, Emergy decided to move forward with a lawsuit and began preparing a complaint that it intended to file by the end of 2021. *Id.* ¶ 8. On December 15, 2021, Emergy sent the Notice Letter to The Better Meat Co. and Mr. Pattillo to reiterate the gravity of the dispute and notify them of Emergy's intent to file a complaint in the immediate future. *Id.* ¶ 9; *see* Ex. 14. Dr. Huggins's testimony further corroborates what was already clear from the nature and content of the Notice Letter itself and the short time between sending the Notice Letter and filing its complaint— that Emergy was seriously contemplating litigation in good faith at the time it sent the Notice Letter. For these reasons, the Notice Letter is protected under the anti-SLAPP statute, and the first element is met. *See Neville*, 73 Cal. Rptr. 3d at 393-94.

## 2. The Vronsky Email Is a Protected Anti-SLAPP Communication

The Vronsky email "concern[s] the subject of the dispute," *id.* at 393—it identifies the subject of the dispute, refers to it as "a pretty significant trade secret and patent dispute," and identifies Meati and The Better Meat Co. as parties to that dispute. Ex. 15. Mr. Vronsky also conveyed the gravity of the dispute by offering to "connect with your counsel if that is helpful." Ex. 15. Further, the Vronsky Email was sent 13 minutes after the Notice Letter, D.I. 1, ¶ 46, and was therefore sent "in anticipation of litigation 'contemplated in good faith and under serious consideration'" for the same reasons discussed above with respect to the Notice Letter. *Neville*, 73 Cal. Rptr. 3d at 393 (citation omitted).

The Better Meat Co. even alleges in its Complaint that the timing of the Vronsky Email and the Notice Letter "demonstrates that Mr. Vronsky sent his email on behalf of, in coordination with, and at the direction of Emergy and with knowledge of Emergy's communications with BMC." D.I. 1, ¶ 48.

That the Vronsky Email was sent to The Better Meat Co.'s self-described "Lead Investor," who is not a party to the dispute and was not named in Emergy's complaint, does not remove the email from anti-SLAPP protection. Ex. 15; *see* D.I. 1, ¶¶ 39, 46. The anti-SLAPP statute covers communications "made in connection with" litigation and is not confined to statements made to parties named in the existing or contemplated litigation. *See* Cal. Civ. Proc. Code § 425.16(e)(2); *see also Netlist*, 2015 WL 153618, at *4 ("Statements made '*in connection with*' litigation are covered as protected conduct under section 425.16, *even if they are made to third parties* and not directly in the litigation itself." (second emphasis added)). A statement is made "'in connection with' litigation" "if it relates to the substantive issues in the litigation and is directed to *persons having some interest* in the litigation." *Neville*, 73 Cal. Rptr. 3d at 391 (emphasis added) (citation omitted).

Courts have held that communications to a wide variety of third parties qualify for protection under the anti-SLAPP statute. *See, e.g.*, *Litrinium, Inc. v. MACOM Tech. Sols. Inc.*, SACV 19-1674 JVS(JDEx), 2020 WL 4580506, at *4-5 (C.D. Cal. Apr. 27, 2020) (holding that letter sent to non-party customers regarding the litigation was protected under the anti-SLAPP statute); *TradeMotion, LLC v. MarketCliq, Inc.*, No. CV 11-3236 PSG (VBKx), 2011 WL 13220413, at *6 (C.D. Cal. Oct. 25, 2011) (holding that plaintiff's letter to defendant's webhost "business partner" was made in preparation of litigation and thus was protected under the anti-SLAPP statute); *GWS Techs., Inc. v. Furth*, No. SACV 08-00586-CJC(PLAx), 2010 WL 11520562, at *2 (C.D. Cal. Mar. 25, 2010) (holding that statements to non-party brokerage houses were protected under the anti-SLAPP statute because the statements were related to the action and the brokerage houses had an interest in the action).

*Neville* and *Sparrow* are particularly instructive. In *Neville*, the court held that a prelitigation letter sent to customers who were *not* potential parties to the litigation was protected by the anti-SLAPP statute. 73 Cal. Rptr. 3d at 392-95. As the court explained:

> We also reject Neville's argument that the Letter is not protected because it was addressed to Maxsecurity's customers, against whom Maxsecurity had no claim, rather than to Neville. Although many anti-SLAPP cases involving prelitigation communications concern demand

1

2

3

> letters or other statements to adverse parties or potential adverse parties, there is no such requirement in the text of section 425.16, subdivision (e)(2). That provision has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made "in connection with" pending or anticipated litigation.

4  *Id.* at 394 (citations omitted). Similarly, in *Sparrow*, the court held that "letters to and communications

5  with companies doing business or contemplating business with Defendants and relating to the alleged

6  infringement of Plaintiff's intellectual property that form[ed] the basis of the present litigation, were

7  protected activities covered by the Anti-SLAPP statute." *Sparrow*, 2014 WL 12573525, at *4. Like

8  the communication in *Sparrow*, the Vronsky Email was sent to The Better Meat Co.'s self-professed

9  "Lead Investor," who was doing business, or at least contemplating doing business, with The Better

10  Meat Co. *See id.*; D.I. 1, ¶¶ 39, 46. And, like the communication in *Neville*, it was reasonable to believe

11  here that the "Lead Investor" in The Better Meat Co. would have an interest in a serious trade secret

12  and patent dispute involving The Better Meat Co. *See Neville*, 73 Cal. Rptr. 3d at 392-93.

13  Emergy has met its initial burden to establish that the Notice Letter and Vronsky Email, which

14  form the basis of The Better Meat Co.'s tortious interference and unfair competition claims, are

15  protected under the anti-SLAPP statute.

16  **B.    The Second Anti-SLAPP Element Is Met Because The Better Meat Co.'s
        Tortious Interference and Unfair Competition Claims Are Barred by**

17  **California's Litigation Privilege, So There Is No Probability of Success**

18  Under the second step of the anti-SLAPP analysis, The Better Meat Co. cannot show a

19  probability of succeeding on its tortious interference or unfair competition claims because they are

20  barred by California's litigation privilege. California's litigation privilege covers: "any

21  communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants

22  authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or

23  logical relation to the action." *Silberg*, 786 P.2d at 369. The Notice Letter and Vronsky Email qualify

24  for the litigation privilege, which is an absolute privilege that courts have found sufficient to satisfy

25  the second step of the anti-SLAPP statute. *See Flatley*, 139 P.2d at 17 ("The litigation privilege is also

26  relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a

27  plaintiff must overcome to demonstrate a probability of prevailing."); *Neville*, 73 Cal. Rptr. 3d at 389

28  n.7 (explaining that if a statement "is privileged under section 47 [California's litigation privilege],

14

then a plaintiff could not show a likelihood of success on the merits, the second step in the anti-SLAPP inquiry").

The anti-SLAPP statute and litigation privilege are not "coextensive" or "identical in every respect." *Neville*, 73 Cal. Rptr. 3d at 388; *Flatley*, 139 P.2d at 17. But courts have explained that whether "pre-litigation statements are protectible under the anti-SLAPP statute is 'determined under the same test applicable to whether the statements are protected activity' under Cal. Civ. Code § 47." *I & U*, 2014 WL 12665121, at *6 (citation omitted). Thus, if the Court finds "that the statements were a protected activity under the anti-SLAPP statute, they are also privileged under [Cal. Civ. Code § 47] as statements made in anticipation of litigation." *Id.* (alteration in original) (citation omitted); *see also Rohde v. Wolf*, 64 Cal. Rptr. 3d 348, 356 (Cal. Ct. App. 2007) ("Because we have held that the statements were a protected activity under the anti-SLAPP statute, they are also privileged under section 47 as statements made in anticipation of litigation 'contemplated in good faith and under serious consideration.'" (citation omitted)). As discussed in Section IV.A above, the Notice Letter and Vronsky Email are both protected under the anti-SLAPP statute, so, following the logic of *I & U* and *Rohde*, they are also privileged under the litigation privilege as statements made in anticipation of litigation. *See I & U*, 2014 WL 12665121, at *6; *Rohde*, 64 Cal. Rptr. 3d at 356. But even if the outcome of protection under the anti-SLAPP statute did not automatically dictate the outcome of protection under the litigation privilege, both the Notice Letter and Vronsky Email still qualify for the litigation privilege under a formal analysis of the four prongs discussed below.

### 1. The Notice Letter Falls Squarely Within the Litigation Privilege

The Notice Letter meets all four prongs of the litigation privilege analysis because it is a communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg*, 786 P.2d at 369.

The first prong of the litigation privilege—whether the communication is made in a judicial or quasi-judicial proceeding—"is quite broad." *Sharper Image*, 425 F. Supp. 2d at 1077. Like the anti-SLAPP statute, protection is not limited to statements made in relation to *pending* litigation. Rather, courts have repeatedly held that "communications *preparatory to or in anticipation* of the bringing of

1    an action or other official proceeding are within the protection of the litigation privilege." *Dove Audio*,

2    54 Cal. Rptr. 2d at 835 (emphasis added); *see also Neville*, 73 Cal. Rptr. 3d at 391 (collecting cases

3    and noting that statements related to "pending or *contemplated* litigation" can be privileged under

4    Section 47). Thus, even though the Notice Letter was sent *before* Emergy sued The Better Meat Co.,

5    it is still eligible for protection under the litigation privilege. Indeed, courts routinely find that the

6    litigation privilege covers prelitigation letters like the Notice Letter here. For example, in *Gaydays,*

7    *Inc. v. Master Entertainment, Inc.*, the court held that a prelitigation letter from counsel was a

8    communication that "falls squarely within the litigation privilege." 2008 WL 11336813, at *4; *see*

9    *also, e.g.*, *Dove Audio*, 54 Cal. Rptr. 2d at 833 ("[The privilege] applies to communications preliminary

10   to a proposed judicial proceeding, such as a demand letter from an attorney to a potential adversary.");

11   *Sparrow*, 2014 WL 12573525, at *6 (holding that cease and desist letters were protected under the

12   litigation privilege).

13           Under the second prong, the communication must be "by litigants or other participants

14   authorized by law." *Silberg*, 786 P.2d at 369. The Notice Letter satisfies the second prong because it

15   was sent from counsel for Emergy to counsel for The Better Meat Co., who are parties to the litigation

16   that was being contemplated and was ultimately filed just 12 days after the Notice Letter was sent. *See*

17   *I & U*, 2014 WL 12665121, at *5 ("[C]ommunications between the parties regarding the dispute 'are

18   covered by . . . the litigation privilege . . . .'" (quoting *Rohde*, 64 Cal. Rptr. 3d at 351)); *Gaydays*, 2008

19   WL 11336813, at *5 (holding that "an exchange between Plaintiff and Defendant where Plaintiff

20   specifically attempts to assert its trademark rights and Defendant denies those rights exist" was

21   covered by the litigation privilege).

22           The Notice Letter also satisfies the third and fourth prongs. "In practice, the third and fourth

23   prongs are merged into a single inquiry." *Butkus v. Downtown Athletic Club of Orlando, Inc.*, No. CV

24   07-2507 PA (JWJx), 2008 WL 11338099, at *4 (C.D. Cal. Mar. 10, 2008); *see also Sharper Image*,

25   425 F. Supp. 2d at 1078 (acknowledging that the California Supreme Court has characterized the third

26   prong as being part of the fourth prong). The requirement for the combined third and fourth prongs is

27   that "the communication be connected with, or have some logical relation to, the action." *Sharper*

28   *Image*, 425 F. Supp. 2d at 1078 (citation omitted). "When litigation is not yet underway, statements

16

1   may still meet the requirement of 'some connection or logical relation to the action' if an action is

2   'contemplated in good faith and under serious consideration.'" *Id.* (citation omitted).

3         The Notice Letter meets these requirements because it is directly connected and related to the

4   action "contemplated in good faith and under serious consideration." *See id.* (citation omitted). As

5   discussed in Section IV.A above, the nature and content of the Notice Letter itself, the short duration

6   of 12 days between when the Notice Letter was sent and when Emergy's complaint was filed, and Dr.

7   Huggins's declaration all show that the Notice Letter was sent in anticipation of a litigation that was

8   contemplated in good faith and was under serious consideration. In fact, the Notice Letter was even

9   more direct about the seriousness with which the litigation was being contemplated than the email at

10  issue in *Gaydays*, which stopped short of identifying specific claims and a timeline for the

11  contemplated litigation. *See* 2008 WL 11336813, at *5. In *Gaydays*, the court still determined that

12  "[t]he threat of litigation could not be clearer." *Id.* Here, the Notice Letter identified specific claims

13  that would be included in an "impending litigation" to be filed in "the immediate future." Ex. 15 at 1-

14  2. In sum, the Notice Letter meets all four prongs required for the litigation privilege.

15       **2.**     **The Vronsky Email Falls Squarely Within the Litigation Privilege**

16        The Vronsky Email also satisfies all four prongs of the litigation privilege because it is a

17  communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

18  participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some

19  connection or logical relation to the action." *Silberg*, 786 P.2d at 369. Under the first prong, and as

20  described above for the Notice Letter, the litigation privilege covers prelitigation communications.

21  *See, e.g.*, *Dove Audio*, 54 Cal. Rptr. 2d at 835; *Neville*, 73 Cal. Rptr. 3d at 391.

22        Regarding the second prong, courts have interpreted its requirement—communications "by

23  litigants or other participants authorized by law"—to cover statements between litigants and

24  nonparties with a "substantial interest" in the litigation. *Sharper Image*, 425 F. Supp. 2d at 1078

25  ("Therefore, the Court concludes that, to meet the second prong of the litigation privilege, Plaintiff

26  need only show that the recipients of its letter possessed a 'substantial interest' in the litigation."); *see*

27  *also Wolf*, 2014 WL 6685560, at *14 ("[C]ourts have expanded the privilege 'to include publication

28  to nonparties with a substantial interest in the proceeding.'" (citations omitted)); *Weiland Sliding*

*Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040 (S.D. Cal. 2011) ("As a general matter, the litigation privilege can apply to out-of-court statements 'to nonparties who have a substantial interest in the outcome of the pending litigation.'" (citation omitted)).

Accordingly, communications made to a variety of third parties qualify for protection under the litigation privilege. Notably, in *Sliding Door Co. v. KLS Doors, LLC*, the court held that an email sent from a plaintiff to non-party customers making them "aware of the litigation and informing them of their potential liability" was protected by the litigation privilege because the customers had a "substantial interest" in the litigation. No. EDCV 13-00196 JGB (DTBx), 2013 WL 2090298, at *5, *8 (C.D. Cal. May 1, 2013); *see also, e.g.*, *Litrinium*, 2020 WL 4580506, at *7-8 (holding that letter to non-party customers who had a "substantial interest" in the litigation was protected by the litigation privilege); *Wolf*, 2014 WL 6685560, at *13, *15 (holding that letter to non-party clients who had a "substantial interest" in the litigation was protected by the litigation privilege); *Sharper Image*, 425 F. Supp. 2d at 1078-79 (holding that letter to non-party retailers and media representatives who carried advertisements of the products and therefore "possessed a substantial interest in the underlying dispute" was protected by the litigation privilege).

The Vronsky Email satisfies the second prong because it was sent to The Better Meat Co.'s purported "Lead Investor," who, despite not being a party, had a substantial interest in the litigation. Indeed—as The Better Meat Co. admits—The Better Meat Co.'s "Lead Investor" was doing business, or at least contemplating doing business, with The Better Meat Co. at the time the Vronsky Email was sent. *See* D.I. 1, ¶¶ 39, 46. Moreover, the "Lead Investor" would likely be interested in any serious trade secret and patent dispute involving The Better Meat Co., especially one where The Better Meat Co. could incur liability. *See Weiland*, 814 F. Supp. 2d at 1041 (reasoning that "those considering business with Panda would want to know what of Panda's products may be subject to infringement liability").

The Vronsky Email also satisfies the consolidated third and fourth prongs requiring that "the communication be connected with, or have some logical relation to, the action." *See Sharper Image*, 425 F. Supp. 2d at 1078 (citation omitted). The combined third and fourth prongs can be satisfied by statements to nonparties. *See Netlist*, 2015 WL 153618, at *5 ("Statements to third parties about the

litigation are privileged under section 47" if they are "'reasonably relevant' to pending or contemplated litigation." (citation omitted)). Courts have "consistently concluded" that "communications to third parties with some interest in the litigation have the requisite 'connection or logical relation to the action' to qualify for the absolute immunity provided by the litigation privilege." *Butkus*, 2008 WL 11338099, at \*4 (citations omitted). Because The Better Meat Co.'s "Lead Investor" has an interest in the litigation, the Vronsky Email sent to the "Lead Investor" has the requisite "connection or logical relation to the action" to satisfy the third and fourth prongs of the litigation privilege. *See id.* (citations omitted).

Moreover, even though the Vronsky Email was sent before litigation was underway, it was sent when litigation was contemplated in good faith and under serious consideration. *See Sharper Image*, 425 F. Supp. 2d at 1078 ("When litigation is not yet underway, statements may still meet the requirement of 'some connection or logical relation to the action' if an action is 'contemplated in good faith and under serious consideration.'" (citation omitted)). The Vronsky Email, which was sent 13 minutes after the Notice Letter, D.I. 1, ¶ 46, was sent in anticipation of litigation "contemplated in good faith and under serious consideration" for the same reasons discussed above with respect to the Notice Letter. *Sharper Image*, 425 F. Supp. 2d at 1078 (citation omitted). Even The Better Meat Co. alleges in its Complaint that the timing of the Vronsky Email and the Notice Letter "demonstrates that Mr. Vronsky sent his email on behalf of, in coordination with, and at the direction of Emergy and with knowledge of Emergy's communications with BMC." D.I. 1, ¶ 48. The Vronsky Email, therefore, meets all four prongs required for the litigation privilege.

### 3.    The Better Meat Co.'s Tortious Interference and Unfair Competition Claims Are Barred by the Litigation Privilege

The Notice Letter and the Vronsky Email are both protected by the litigation privilege, which acts as an absolute bar to any tort actions arising from the Notice Letter and Vronsky Email. *Wolf*, 2014 WL 6685560, at \*14 ("Section 47(b) protects participants in judicial proceedings from derivative tort actions based on communications in or regarding the judicial proceeding." (citation omitted)). Because The Better Meat Co.'s tortious interference and unfair competition claims arise out of the privileged Notice Letter and Vronsky Email, these claims cannot succeed—they are barred by law. Accordingly, The Better Meat Co. is unable to prove a probability of success on those claims as

1   required by step two of the anti-SLAPP analysis. *See Neville*, 73 Cal. Rptr. 3d at 389 n.7 (explaining

2   that if a statement "is privileged under section 47 [California's litigation privilege], then a plaintiff

3   could not show a likelihood of success on the merits, the second step in the anti-SLAPP inquiry");

4   *Flatley*, 139 P.3d at 17 ("The litigation privilege is also relevant to the second step in the anti-SLAPP

5   analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a

6   probability of prevailing.").

7   **V.      CONCLUSION**

8          Emergy respectfully requests that the Court strike The Better Meat Co.'s tortious interference

9   claim (Count 1) and unfair competition claim (Count 2) against Emergy. Emergy also requests its

10  attorney's fees and costs pursuant to Cal. Civ. Proc. Code § 425.16(c)(1).

11

12

13  Dated: February 7, 2022                    FINNEGAN, HENDERSON, FARABOW,
                                                GARRETT & DUNNER, LLP
14

15                                             By:    */s/ Jeffrey D. Smyth*
                                                     Jeffrey D. Smyth
16                                                   *Attorney for Defendant Emergy Inc.*

17

18

19

20

21

22

23

24

25

26

27

28