J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
    theodore@braunhagey.com
Robert Petraglia, Esq. (SBN: 264849)
    petraglia@braunhagey.com
Amy Senia, Esq. (SBN: 329134)
    senia@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

Eric Schlabs, Esq. (*pro hac vice*)
    schlabs@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403
Facsimile: (646) 829-9403

ATTORNEYS FOR PLAINTIFF
THE BETTER MEAT CO.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE BETTER MEAT CO.,<br><br>      Plaintiff,<br><br>      v.<br><br>EMERGY, Inc. d/b/a MEATI FOODS, PAUL VRONSKY, and BOND CAPITAL MANAGEMENT LP,<br><br>      Defendants. | Case No: 2:21-CV-02338-KJM-CKD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT EMERGY, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)**<br><br>Date: May 6, 2022<br>Time: 10:00 AM<br>Location: Courtroom 3, 15th Floor<br>Judge: Hon. Kimberly J. Mueller |

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

    A.    The Parties ............................................................................................ 2

        1.    The Better Meat Co. ...................................................................... 2

        2.    Defendant.......................................................................................... 2

    B.    BMC's Technology ............................................................................. 3

    C.    Defendant's Efforts to Suppress BMC's Fundraising and Inhibit Competition..... 3

    D.    BMC's Lawsuit and Defendant's Duplicative Action............................................ 5

ARGUMENT........................................................................................................ 5

I.    THE LITIGATION PRIVILEGE DOES NOT APPLY BECAUSE
NEITHER COMMUNICATION FURTHERED THE OBJECTS OF
LITIGATION ................................................................................................ 5

    A.    The Complaint Alleges that the Purpose of Defendant's Misconduct Was to
Interfere with BMC's Fundraising Efforts ............................................................ 6

    B.    The Decisions Defendant Cites Are Inapposite Because They Involve Legitimate
Efforts to Preserve Evidence and Gather Information Pre-Suit.............................. 8

    C.    Courts Have Not Eliminated the "In Furtherance" Requirement ........................... 9

II.    THE LITIGATION PRIVILEGE DOES NOT APPLY BECAUSE
DEFENDANT DID NOT CONTEMPLATE LITIGATION IN GOOD
FAITH.......................................................................................................... 10

    A.    Defendant Had No Good Faith Intention to Bring Litigation against BMC ........ 11

B.      Defendant Could Not Have Had a Good Faith Basis to Bring Litigation against BMC Because Its Claims Are False ...................................................................... 13

CONCLUSION.......................................................................................................... 16

PLAINTIFF'S OPPOSITION TO DEFENDANT EMERGY, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Action Apartment Assn., Inc. v. City of Santa Monica*,
  41 Cal. 4th 1232 (2007) ................................................................................................. 11, 12, 13

*Bylin Heating Sys., Inc. v. M & M Gutters, LLC*,
  No. 20-CV-00505-FCD-KJM, 2008 WL 744706 (E.D. Cal. Mar. 18, 2008) .............................. 9

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
  54 Cal. Rptr. 2d 830 (1996) ................................................................................................. 13

*E.D.C. Techs., Inc. v. Seidel*,
  225 F. Supp. 3d 1058 (N.D. Cal. 2016) ................................................................................. 8

*Edwards v. Centex Real Estate Corp.*,
  53 Cal. App. 4th 15 (1997) .............................................................................................. 11, 16

*Eisenberg v. Alameda Newspapers, Inc.*,
  74 Cal. App. 4th 1359 (1999) ............................................................................................. 13

*I & U v. Publishers Sols. Int'l*,
  2014 WL 12665121 (C.D. Cal. Aug. 7, 2014) ....................................................................... 13

*In re Tracht Gut, LLC*,
  836 F.3d 1146 (9th Cir. 2016) ............................................................................................... 5

*Kettler v. Gould*,
  22 Cal. App. 5th 593 (2018) ......................................................................................... 6, 7, 10

*Klem v. Access Ins. Co.*,
  17 Cal. App. 5th 595 (2017) ................................................................................................ 6, 7

*Litrinium v. MACOM Tech. Sols.*,
  SACV 19-1674 JVS(JDEx), 2020 WL 4580506 (C.D. Cal. Apr. 27, 2020) ................................ 8

*Neville v. Chudacoff*
  *160 Cal. App. 4th 1255 (2008)* ........................................................................................... 13

*Rickley v. Goodfriend*,
  212 Cal. App. 4th 1136 (2013) ........................................................................................... 1, 7

*Rothman v. Jackson*,
  49 Cal. App. 4th 1134 (1996) ......................................................................................... 6, 8, 10

*Salon Supply Store, LLC v. Creative Nail Design, Inc.*,
  2015 WL 11438492 (S.D. Cal. June 19, 2015) .................................................................. 11, 12

*San Joaquin Gen. Hosp. v. United Healthcare Ins. Co.*,
  No. 16-CV-1904-KJM-EFB, 2017 WL 1093835 (E.D. Cal. Mar. 23, 2017) .......................... 5, 10

*Sharper Image Corp. v. Target Corp.*,
  425 F. Supp. 2d 1056 (N.D. Cal. 2006) .................................................................... 8, 9, 10, 13

*Silberg v. Anderson*,
  786 P.2d 365 (1990) ............................................................................................................. 6

*Sliding Door Co. v. KLS Doors, LLC*,
  2013 WL 2090298 (C.D. Cal. May 1, 2013) ........................................................................... 8

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ................................................................................................. 5

*Sparrow v. Lora*,
  2014 WL 12573525 ............................................................................................................. 8

*Stamas v. Cnty. of Madera,*
   No. 09-CV-0753-LJO-SMS, 2010 WL 2556560 (E.D. Cal. June 21, 2010)................................. 6
*Strawn v. Morris, Polich & Purdy, LLP,*
   30 Cal. App. 5th 1087 (2019) ........................................................................... 1, 6, 10, 11
*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors,* LLC,
   814 F. Supp. 2d 1033 (S.D. Cal. 2011)........................................................................ 8
*Wolf v. Travolta,*
   2014 WL 6685560 (C.D. Cal. Nov. 24, 2014) ............................................................... 8
*Wonderland Bakery Inc. v. Wonderland Custom Cakes, LLC,*
   2013 WL 12123693 (C.D. Cal. May 6, 2013) ............................................................... 8

**STATUTES**

California Bus. & Prof. Code §§ 17200 ............................................................... 5

PLAINTIFF'S OPPOSITION TO DEFENDANT EMERGY, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)

1    Plaintiff The Better Meat Co. ("BMC") respectfully submits this Opposition to Defendant

2 Emergy, Inc.'s Motion to Dismiss Under Rule 12(b)(6).

3                                                    **<u>INTRODUCTION</u>**

4    BMC is a Sacramento-based startup that has invented and patented a healthy and eco-

5 friendly mycelium-based meat substitute. It brought this action to stop Defendant Emergy, a well-

6 funded fungal products company, from tortiously interfering with BMC's ability to raise capital

7 and compete in the marketplace by gratuitously contacting BMC's prospective investors and

8 making false claims to them about BMC and BMC's patented technology.

9    Defendant's motion seeks to evade liability based on California's litigation privilege, Civ.

10 Code § 47(b). The litigation privilege exists to protect good faith efforts to petition the courts for

11 redress. Governing law, which Defendant fails to cite, provides that a communication falls within

12 the privilege only if it is to achieve the objects of the litigation, which are limited to remedies that

13 can be awarded by courts. *Rickley v. Goodfriend*, 212 Cal. App. 4th 1136, 1163 (2013). Moreover,

14 the litigation must be seriously contemplated in good faith for purposes of resolving a dispute

15 through the courts. *Strawn v. Morris, Polich & Purdy, LLP*, 30 Cal. App. 5th 1087, 1095-1096

16 (2019).

17    The conduct alleged in the Complaint does not satisfy either requirement. The Complaint

18 alleges that Defendant had no litigation purpose, such as investigation or document preservation,

19 for contacting BMC's prospective investors. Instead, Defendant's purpose was to undermine

20 BMC's ability to raise the capital that would allow it to build a commercial production facility. The

21 Complaint also alleges that Defendant knew its claim that it somehow owned BMC's patent to be

22 false, and that Defendant thus had no good faith basis or intention to assert such a claim in a court

23 of law – resuscitating old assertions after three months of silence only when it learned that BMC

24 was attempting to raise a Series A fundraising round. (Dkt. No. 1 ¶¶ 1-3, 41-51.)

25    In its motion, Defendant does not claim that its challenged communications were intended

26 to achieve a litigation object and elides the requirement that it intended to bring litigation and

27 claims in good faith. That is fatal to its motion to dismiss, which should be denied.[1]

---

28 [1] Defendant has filed a duplicative "anti-SLAPP" motion that makes identical arguments to the

PLAINTIFF'S OPPOSITION TO DEFENDANT EMERGY, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)

## BACKGROUND

### A.    The Parties

#### 1.    The Better Meat Co.

BMC is a Sacramento-based startup that was founded in early 2018 by Paul Shapiro, Joanna Bromley, and Adam Yee to create next-generation animal-free protein. (Dkt. No. 1 ¶¶ 1, 15.) BMC's breakthrough technology has resulted in the creation of animal-free products that can be used as meat substitutes or to enhance animal meat—improving health, animal welfare, and environmental sustainability at a competitive cost. (*Id.* ¶ 15.) BMC's "Rhiza" product is a whole food, complete protein ingredient that is versatile, allergen-free, neutral in taste, and has the natural texture of animal meat. (*Id.* ¶ 16.) It is shelf stable and contains more protein than eggs, more iron than beef, more fiber than oats, and more potassium than bananas. (*Id.*) The Rhiza product and the underlying unique technology is the result of extensive time, effort, and resources devoted by BMC to researching mycelium-based foods. (*Id.* ¶ 17.) BMC is in the process of raising Series A funding to build a facility that has the capacity to produce its ingredients at a commercial scale. (*Id.* ¶ 1.)

#### 2.    Defendant

Defendant Emergy was founded in 2015 to carbonize mycelium for use in batteries. (*Id.* ¶ 20.) That same year, Defendant was accepted into the Chain Reaction Innovations (CRI) program at the Department of Energy's Argonne National Laboratory. (*Id*. ¶ 21.) Based on the evidence available to date, Defendant was focused on researching battery technology, not meat replacement uses of mycelium, during its time at the Department of Energy. (*Id.* ¶ 35.)

Since then, Defendant has used its significant venture capital backing to cycle through various focuses. (*Id.* ¶ 22.) In 2018, after abandoning battery research, Defendant launched a new entity called BTRFY to market a potato chip alternative made from mycelium. When that idea failed, in June 2019, Defendant shifted its business model to focus on animal-free meat and changed its d/b/a from Emergy to "Meati Foods." (*Id.* ¶ 23.)

---

ones in this brief. By denying this motion, the Court should also deny the anti-SLAPP motion because it relies on the same legal theory, namely that the litigation privilege somehow immunizes Defendant's extra-legal efforts to interfere with BMC's prospective investors.

PLAINTIFF'S OPPOSITION TO DEFENDANT EMERGY, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)

### B.    BMC's Technology

In July 2021, BMC was issued U.S. Patent No. 11,058,137 ("the BMC Patent"). The heart of this patent, as described in Claim 1, is a cultured fungal biomass with a novel combination of particle sizes and water weights that allows mycelium products to remain shelf stable while also maintaining a pleasing and meat-like texture. (*Id.* ¶ 3.)

The named inventor on the BMC Patent is Augustus Pattillo, who joined BMC as its Chief Technology Officer in March 2019. Prior to that, between December 2017 and May 2018, Mr. Pattillo held an educational fellowship at the Department of Energy. (*Id.* ¶ 30.) As part of this fellowship, he conducted research with Defendant during the period in which Defendant was focused on carbonization of mycelium for energy storage. (*Id.*) Following Mr. Pattillo's departure from his fellowship in May 2018, he opened his own laboratory and began researching and developing meat replacement uses of mycelium, and on September 20, 2018, he filed U.S. Provisional Patent Application No. 67/733,925, from which the BMC Patent claims priority.

By contrast, Defendant has filed multiple patent applications on subject matter distinct from that of the BMC Patent, but all have been rejected by the United States Patent and Trademark Office on grounds that they do not contain anything novel or non-obvious. For example, Defendant's U.S. Patent Application No. 16/435,261, which was filed on June 14, 2019 and purports to claim a "method of growing fungal mycelium and forming edible food products includes growing fungal cells in a growth media such that the fungal cells produce mycelium," received a final rejection from the examiner on November 24, 2021.[2]

### C.    Defendant's Efforts to Suppress BMC's Fundraising and Inhibit Competition

After learning that BMC had received a patent for its shelf stable product, Defendant began using its superior financial resources to try to undermine BMC's business. Defendant's first tactic was to claim privately to BMC that it owned the BMC Patent. On July 16, 2021—three days after the Patent and Trademark Office issued the BMC Patent— Defendant sent twin letters to BMC and

---

[2] Since the Complaint was filed, Defendant has received yet further rejections from the PTO. Defendant's U.S. Patent Application No. 16/435,261 received a non-final rejection from the examiner on February 14, 2022, and its U.S. Patent Application No. 16/435,269 received a final rejection on January 12, 2022.

1    Mr. Pattillo, the inventor of the BMC Patent. (Dkt. No. 1 ¶ 30.) In its letters, Defendant falsely

2    claimed that three years earlier, Mr. Pattillo had stolen the inventions in the BMC Patent from

3    Defendant while he was on an educational fellowship at the Department of Energy, long before the

4    time that Defendant shifted its focus from making batteries, chips, and other products to refocus on

5    meat substitutes. (*Id.*) Defendant also accused BMC and Mr. Pattillo of misappropriating trade

6    secrets and demanded that BMC withdraw its Rhiza product from the market. (*Id.* ¶ 31.) The letter

7    did not identify any trade secrets or contributions from Defendant to the BMC Patent. (*Id.* ¶ 34.)

8        After BMC invited Defendant to provide evidence to support its allegations, on August 25,

9    2021, Defendant sent BMC its "evidence," which consisted largely of unidentified and undated

10   pictures of mycelial discs and chunks—all of the sort that could, are, and have been grown by

11   countless investigators, laboratories, and fungal biomass producers for decades. (*Id.* ¶ 35.)

12   Defendant provided no evidence that it (i) had identified the novel claim terms of the BMC Patent,

13   (ii) had shared any of the concepts at issue with Mr. Pattillo, or (iii) was even actively researching

14   meat replacement uses of mycelium prior to 2019 when it pivoted away from making batteries,

15   toothpaste, and snacking chips. (*Id.* ¶ 35.)

16       On September 8, 2021, BMC responded to Defendant and explained that the materials it

17   had provided were not "evidence" that Defendant had developed BMC's technology or owned the

18   BMC Patent. (*Id.* ¶ 36.) BMC offered to discuss the matter further or to review any other evidence

19   that Defendant had. Defendant did not respond and did not contact BMC for more than three

20   months. (*Id.* ¶ 37.)

21       Defendant appeared to have dropped the matter – until December 2021, when it learned that

22   BMC was soliciting a Series A investment round. (*Id*. ¶¶ 38-40.) Defendant then took prompt and

23   coordinated action to undermine BMC's ability to raise capital. (*Id*. ¶ 41.) First, Defendant sent

24   BMC a letter accusing BMC of "misappropriation of Meati's trade secrets and unfair competition"

25   (the "Interference Letter"). (*Id.* ¶ 42.) The Interference Letter expressed Defendant's intention to

26   "move forward with legal action" and "fil[e] a complaint . . . in the immediate future" but did not

27   make any demand, offer to negotiate, or otherwise seek to accomplish anything from a litigation

28   perspective. (*Id.*) Thirteen minutes later, Defendant's investor sent an email to BMC's lead investor

1    in the Series A round in which it falsely represented that BMC and Defendant were in a "pretty

2    significant trade secret and patent dispute" (the "Investor Email"). (*Id.* ¶¶ 46-50.)

3        **D.    BMC's Lawsuit and Defendant's Duplicative Action**

4        Despite Defendant's threat of an "imminent suit," Defendant did nothing after interfering

5    with BMC's investor. On December 17, 2021, BMC filed the instant case against Plaintiff and its

6    investor to redress their interference with BMC's Series A fundraising round and put to rest their

7    false claim that they own the BMC Patent. (*Id.* ¶ 1.) BMC asserts claims for tortious interference,

8    unfair competition under the California Bus. & Prof. Code §§ 17200 et seq. ("UCL"), and

9    declaratory judgment of inventorship of the BMC Patent. (*Id.* ¶¶ 52-73.)

10       For another ten days thereafter, Defendant was silent. Then, on December 27, 2021,

11   Defendant filed a separate case asserting a blunderbuss of claims related to its purported ownership

12   of the BMC Patent and trade secret misappropriation. (Case No. 2:21-cv-02417-KJM-CKD, Dkt.

13   No. 1.) Defendant's suit repeated the same allegations that it had laid out in its August 25, 2021

14   letter and that BMC had refuted on September 8, 2021.

15                                    **ARGUMENT**

16       "Dismissal under Rule 12(b)(6) is proper" only "when the complaint either (1) lacks a

17   cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."

18   *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "At the motion to dismiss phase, the trial

19   court must accept as true all facts alleged in the complaint and draw all reasonable inferences in

20   favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016); *San Joaquin*

21   *Gen. Hosp. v. United Healthcare Ins. Co*., No. 16-CV-1904-KJM-EFB, 2017 WL 1093835, *1

22   (E.D. Cal. Mar. 23, 2017) (in ruling on motion to dismiss, Court must "assume that" plaintiff's

23   "factual allegations are true and draw[] reasonable inferences from them").

24   **I.    THE LITIGATION PRIVILEGE DOES NOT APPLY BECAUSE NEITHER
         COMMUNICATION FURTHERED THE OBJECTS OF LITIGATION**

25       Defendant does not dispute that BMC has adequately stated the elements of its claims for

26   tortious interference and unfair competition. Defendant's only argument is that the litigation

27   privilege immunizes the conduct alleged in the Complaint. "The litigation privilege exists so that

28

PLAINTIFF'S OPPOSITION TO DEFENDANT EMERGY, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)

1  persons who have been harmed or have other grievances calling for redress through the judicial

2  processes can and will use the courts, rather than self-help, to obtain relief." *Rothman v. Jackson*,

3  49 Cal. App. 4th 1134, 1146 (1996). For this reason, the litigation privilege applies only to

4  "communication[s] (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

5  participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some

6  connection or logical relation to the action." *Strawn*, 30 Cal. App. 5th at 1094 (citing *Silberg v.*

7  *Anderson*, 786 P.2d 365, 369 (1990)). Because it only protects legitimate use of "access to the

8  courts," it does not protect conduct unnecessary to litigation or bad faith misuse of the legal

9  process. Where "operative facts are in dispute," the court "may not rule as a matter of law that the

10 litigation privilege precludes plaintiff's claim." *Stamas v. Cnty. of Madera*, No. 09-CV-0753-LJO-

11 SMS, 2010 WL 2556560, *7 (E.D. Cal. June 21, 2010).

**A.    The Complaint Alleges that the Purpose of Defendant's Misconduct Was to Interfere with BMC's Fundraising Efforts**

12

13     Defendant's tortious interference occurred in the absence of any litigation, and when

14 litigation was filed, BMC was the party that filed it, not Defendant. Defendant's attempt to

15 shoehorn its misconduct into the litigation privilege fails because the litigation privilege only

16 protects communications made "in furtherance of … an official proceeding," *i.e.*, to "achieve the

17 objects of the litigation." *Klem v. Access Ins. Co.*, 17 Cal. App. 5th 595, 613-15 (2017); *see also*

18 *Kettler v. Gould*, 22 Cal. App. 5th 593 (2018) (A prelitigation communication "must be made 'to

19 achieve the objects of the litigation'"). This is because the "principal purpose of section [47(b)] is

20 to afford litigants and witnesses the utmost freedom of access to the courts without fear of being

21 harassed subsequently by derivative tort actions" – not to immunize collateral tortious behavior.

22 *Silberg*, 786 P.2d at 369.

23     Here, Defendant's efforts to target investors and disrupt BMC's fundraising did not further

24 any litigation object. Rather, as alleged in the Complaint, the purpose of Defendant's contacting

25 BMC's investor and bluffing that it was going to file baseless litigation was "to interfere with

26 [BMC's] fundraising and punish a competitive company in the meat replacement space." (Dkt. No.

27 1 ¶¶ 50-51.) These allegations alone, which must be taken as true, defeat Defendant's motion.

28

1    Since "a party's legitimate objectives in the litigation are limited to the remedies which can

2    be awarded by courts ..., 'the objects of the litigation' for a plaintiff are to obtain a monetary

3    recovery for damages or other relief...." *Rickley*, 212 Cal. App. 4th at 1163. This Defendant's

4    communications did not do. The Interference Letter simply reiterated Defendant's accusations and

5    expressed Defendant's intention to "move forward with legal action" and "fil[e] a complaint . . . in

6    the immediate future" without making any real demand or responding to any points raised in

7    BMC's most recent correspondence. (Dkt. No. 1 ¶ 42.) That letter teed up the Investor Email sent

8    thirteen minutes later, which simply relayed the existence of Defendant's false accusations to

9    BMC's lead investor. (*Id.* ¶¶ 46-51.)

10    This collateral interference with BMC's fundraising did not further any relief that can be

11    awarded by a court. And reaching out to BMC's potential investors did not in any way advance

12    Defendant's litigation efforts. Defendant does not even argue—much less point to any allegation in

13    the Complaint—showing that BMC's investor had any facts or evidence that might be relevant to

14    its supposed claims, that it was a participant in the intellectual property dispute, or that it had any

15    other relationship to the litigation. To the contrary, the Complaint alleges that Defendant's

16    communications did not seek any such information, as is true on their face. (Dkt. No. 1 ¶¶ 41-51.)

17    As the Complaint explains, the purpose of these communications was not to further contemplated

18    litigation but to "undermine BMC's ability to raise the capital that would allow it to build out a

19    commercial production facility." (*Id*. ¶¶ 41, 51.)

20    For this reason, "statements to nonparticipants in the action are generally not privileged

21    under section 47, subdivision (b), and are thus actionable unless privileged on some other basis."

22    *Rickley*, 212 Cal. 4th at 1163. For example, in *Klem*, the court declined to apply the litigation

23    privilege to an insurer's notice to the DMV that a vehicle was a total salvage loss because the DMV

24    had no power to act in an "investigatory or decisionmaking capacity in connection with" the notice,

25    meaning the notice served no discernable purpose. 17 Cal. App. 5th at 615; *see also Kettler*, 22 Cal.

26    App. 5th at 610 ("[T]he communications to AXA could do nothing to further the objects of the

27    litigation, which had nothing to do with AXA. Those communications were entirely 'extraneous to

28    the action' … and accordingly not protected by the litigation privilege.").

**B.    The Decisions Defendant Cites Are Inapposite Because They Involve Legitimate Efforts to Preserve Evidence and Gather Information Pre-Suit**

By contrast, in each of the cases Defendant cites to justify applying the privilege to statements to third parties, the recipient had some concrete interest in the litigation itself, such as: (1) having status as a "potential witness," *Litrinium v. MACOM Tech. Sols.*, SACV 19-1674 JVS(JDEx), 2020 WL 4580506, at *4-5 (C.D. Cal. Apr. 27, 2020) and *Sparrow v. Lora*, 2014 WL 12573525, at *2 (C.D. Cal. Dec. 4, 2014; (2) facing potential liability as a result of the litigation, *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1078 (N.D. Cal. 2006), *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors*, LLC, 814 F. Supp. 2d 1033, 1040 (S.D. Cal. 2011), *Sliding Door Co. v. KLS Doors, LLC*, 2013 WL 2090298, at *5, *8 (C.D. Cal. May 1, 2013) and *Wolf v. Travolta*, 2014 WL 6685560, at *14 (C.D. Cal. Nov. 24, 2014); or (3) being required to preserve evidence, *Litrinium*, 2020 WL 4580506, at *4-5.

Here, the Investor Email does not "implicate" the lead investor's "business or liability." *Wonderland Bakery Inc. v. Wonderland Custom Cakes, LLC*, 2013 WL 12123693, at *5 (C.D. Cal. May 6, 2013). It did not inform the lead investor that he "might [himself] face liability," need to "provide evidence," or "act as a witness[] in this dispute." *E.D.C. Techs., Inc. v. Seidel*, 225 F. Supp. 3d 1058, 1068-69 (N.D. Cal. 2016) ("the communications are not protected by California's litigation privilege because they were not sent to parties with a 'substantial interest' in this litigation"). Rather, it was sent to the lead investor, whose interest in the supposed dispute was limited to a potential financial stake in one party. (Dkt. No. 1 ¶¶ 46-48.) Defendant cannot point to any allegation that the lead investor faced liability or discovery relating to its putative intellectual property claims. It likewise provides no support for the idea that a potential investment is sufficient to bring the Investor Email within the bounds of the litigation privilege.

The Interference Letter similarly did not further any litigation object but simply served as the excuse – even substrate – for Defendant to reach out to BMC's investors thirteen minutes later. (Dkt. No. 1 ¶¶ 41-50.) On its face, the letter did not accomplish anything litigation-wise: it did not make any demand, did not make any new accusation, did not seek any information, and did not offer to negotiate. *See Rothman*, 49 Cal. App. 4th at 1148 ("the test can be satisfied only by communications which function intrinsically, and apart from any consideration of the speaker's

1   intent, to advance a litigant's case."). Instead, it simply attached Defendant's August 25 letter, to

2   which BMC had already responded on September 8, and stated that Defendant intended to file suit.

3   If litigation were Defendant's object, it could have just filed without sending the letter. But as

4   reflected by Defendant's three months of inaction after receiving BMC's prior correspondence and

5   the coincidence of timing between the Interference Letter, BMC's fundraising, and Defendant's

6   efforts to interfere – and as alleged in the Complaint – litigation was not Defendant's object. And

7   the Interference Letter did nothing to further potential litigation.[3]

8       The Complaint further alleges that Defendants coordinated between one other to send the

9   Investor Email and the Interference Letter as part of a joint interference strategy for which they are

10  both liable. (Dkt. No. 1 ¶¶ 48, 56.) Taking these facts as true and viewing them in the light most

11  favorable to BMC, BMC has more than adequately stated a claim.

12      As this Court has held, ultimately, whether a communication is in furtherance of litigation is

13  a question of fact that precludes a motion to dismiss. *See, e.g.*, *Bylin Heating Sys., Inc. v. M & M*

14  *Gutters, LLC*, No. 20-CV-00505-FCD-KJM, 2008 WL 744706, *5 (E.D. Cal. Mar. 18, 2008)

15  (Mueller, J.) (holding that whether "prelitigation communications with distributors were 'hollow

16  threats' made solely to harm [opposing party] and to unfairly compete against [opposing party] are

17  questions of fact").

18      **C.    Courts Have Not Eliminated the "In Furtherance" Requirement**

19      In its motion, Defendant does not claim that the Interference Letter and the Investor Email

20  were sent to further the objects of litigation. Instead, Defendant contends that the third prong

21  (furtherance of the objects of the litigation) has been "merged" or "consolidated" into the fourth

22  prong (logical relation to the action) and on this basis chooses to ignore it entirely. (Dkt. No. 27 at

23  7, 10 (citing *Sharper Image*, 425 F. Supp. 2d at 1078).) Defendant claims that the litigation

24  privilege applies simply because the Interference Letter is "related to the action" and has the same

25  "subject." (*Id*. at 8.)

26  _____

27  [3] Defendant makes much of the fact that it eventually filed suit. (Dkt. No. 27 at 7.) But Defendant
    did not do so until ten days after *BMC* filed this action seeking to redress Defendant's improper

28  interference. This stands in marked contrast to Defendant's purported intent to file suit
    "imminently."

PLAINTIFF'S OPPOSITION TO DEFENDANT EMERGY, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)

This argument ignores that the purpose of the litigation privilege is to protect only legitimate petitioning activity. For this reason, governing authority – including the very case cited by *Sharper Image* for Defendant's "consolidation" point – expressly rejects such a contention. "While a 'logical relation' certainly exists between court pleadings and out-of-court statements that include identical or similar allegations, a 'logical relation' of this kind is not sufficient to invoke the litigation privilege." *Rothman*, 49 Cal. App. 4th at 1145; *see also Kettler*, 22 Cal. App. 5th at 610 ("The law requires more than 'some connection or logical relation' to a later lawsuit."). Rather, "the communicative act — be it a document filed with the court, a letter between counsel or an oral statement — must function as a necessary or useful step in the litigation process and must serve its purposes. This is a very different thing from saying that the communication's content need only be related in some way to the subject matter of the litigation." *Rothman*, 49 Cal. App. 4th at 1146. Defendant's failure even to claim that the communications at issue furthered the objects of litigation is fatal to its motion to dismiss.

At bottom, BMC alleges that the only plausible motive for Defendant's pre-suit communications was to "impair BMC's ability to raise money." (Dkt. No. 1 ¶¶ 45, 50.) Defendant seeks to construe the pleadings against BMC, but that is just the opposite of what the Court must do. *San Joaquin*, 2017 WL 1093835, at *1. If Defendant wanted to bring litigation against BMC, it could have done so at any time. Instead, it sent and coordinated communications that served no useful litigation purpose but *did* ensure that Defendant's unfounded allegations would reach BMC's investors without risking challenge in a court of law. Defendant had no reason to send the Interference Letter or coordinate the Investor Email if it intended to file suit. Because interference with investment activities is not protected by the litigation privilege, Defendant's motion to dismiss should be denied.

## II.     THE LITIGATION PRIVILEGE DOES NOT APPLY BECAUSE DEFENDANT DID NOT CONTEMPLATE LITIGATION IN GOOD FAITH

The litigation privilege also does not apply here for a second reason: the privilege "does not attach prior to the actual filing of a lawsuit unless and until litigation is seriously proposed in good faith for the purpose of resolving the dispute." *Strawn*, 30 Cal. App. 5th at 1096. Thus, the

1   privilege attaches to "prelitigation statements" only when "'imminent access to the courts is

2   seriously proposed by a party in good faith for the purpose of resolving a dispute, and not when a

3   threat of litigation is made merely as a means of obtaining a settlement.'" *Edwards v. Centex Real*

4   *Estate Corp.*, 53 Cal. App. 4th 15, 36 (1997).

5        "Whether a prelitigation communication relates to litigation that is contemplated in good

6   faith and under serious consideration is an issue of fact" that precludes determination at the motion

7   to dismiss stage. *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1252

8   (2007) (holding that a "a factual inquiry is required in order to determine whether a particular

9   eviction notice is privileged"); *see also Strawn*, 30 Cal. App. 5th at 1096 (noting that good faith "is

10  a question of fact that must be determined before the privilege is applied"); *Salon Supply Store,*

11  *LLC v. Creative Nail Design, Inc.*, 2015 WL 11438492, *6 (S.D. Cal. June 19, 2015) (finding that

12  open questions of fact preclude "determin[ing] whether the takedown notices sent to eBay were

13  made in connection with a proposed litigation 'contemplated in good faith and under serious

14  consideration'"). Here, the Complaint provides extensive allegations to support the conclusion that

15  Defendant was not acting in good faith. As with the in-furtherance requirement, Defendant glosses

16  over the good faith requirement in its motion to dismiss.

17        **A.**     **Defendant Had No Good Faith Intention to Bring Litigation against BMC**

18        BMC's allegations and Defendant's own behavior separately make clear that Defendant had

19  not contemplated litigation in "good faith" or "for the purpose of resolving [a] dispute" when it sent

20  the Interference Letter to BMC and the Investor Email to BMC's lead investor. *Strawn*, 30 Cal.

21  App. 5th at 1096; *Edwards*, 53 Cal. App. 4th at 36.

22        The Complaint expressly alleges that Defendant was satisfied with sending correspondence

23  to interfere with BMC's investor, rather than testing its spurious claims in court. (Compl. ¶¶ 50-

24  51.) Indeed, Defendant had every opportunity to file suit in September 2021 if it disagreed with

25  BMC's letters refuting its claims. (Dkt. No. 1 ¶¶ 30-36.) Instead, Defendant went silent for over

26  three months. (*Id.* ¶ 37.) Only after learning about BMC's fundraising efforts did Defendant send

27  the Interference Letter and coordinate the Investor Email. (*Id.* ¶¶ 3, 4, 32, 44-45, 50-51.)

28

1    The Interference Letter and Investor Email served only to "impair BMC's ability to raise

2    money." (*Id.* ¶ 45.) If Defendant held a "good faith" intention to bring litigation, it could have filed

3    suit without inventing unnecessary communications, and BMC's investors would have learned

4    about Defendant's allegations right away. Instead, Defendant sent the Interference Letter and

5    coordinated the Investor Email so its false allegations would reach BMC's investors without being

6    subject to the scrutiny of a court. (*Id.* ¶¶ 4, 44, 50-51.) "No public policy supports extending a

7    privilege to persons who attempt to profit from hollow threats of litigation." *Action Apartment*, 41

8    Cal. 4th at 1251.

9    The back-to-back timing of the Interference Letter and Investor Email—the former

10   preceded the latter by only thirteen minutes—eliminates any doubt that both communications were

11   part of a coordinated effort to suppress BMC's fundraising, not prepare for litigation. (Dkt. No. 1 ¶

12   48.) The 1:51 p.m. Interference Letter teed up the 2:04 p.m. Investor Email and enabled Defendant

13   to maximize dissemination of its false claims without filing suit. (*Id.* ¶¶ 50-51.)

14   The ten-day gap between BMC's complaint and Defendant's complaint also confirms that

15   Defendant lacked any good faith intention to bring "imminent" litigation. Defendant required ten

16   saved to prepare its complaint after being served with this lawsuit, which accused it of making bad

17   faith litigation threats, tortious inference, and unfair competition, and sought a declaratory

18   judgment of inventorship. (*Id.* ¶¶ 52-73.) Defendant did not "imminently" intend to sue; instead,

19   BMC's filing of litigation sent Defendant on a ten-day scramble to cobble together a complaint.

20   These facts—especially viewed in the light most favorable to BMC—undermine

21   Defendant's claim that it contemplated litigation in good faith before BMC filed suit and preclude a

22   decision that the litigation privilege protects Defendant's communications. (Dkt. No. 27 at 8, 10-

23   11.) Similar "facts and circumstances" were at issue in *Salon Supply Store*, and they gave the court

24   "concerns about whether [a sender of prelitigation communications] contemplated litigation in

25   'good faith and under serious consideration' at the time the communications were made." 2015 WL

26   11438492, at *11. Those concerns are even more serious here: whereas the trademark infringement

27   "takedown notices" in *Salon Supply Store* were arguably necessary prerequisites to trademark

28

PLAINTIFF'S OPPOSITION TO DEFENDANT EMERGY, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)

1   infringement litigation and could support a claim for willful infringement, the Interference Letter

2   and Investor Email served no discernable purpose except to derail BMC's fundraising efforts.[4]

3        On this record, Defendant could not establish good faith even if it had attempted to argue it

4   in its motion. *See Action Apartment*, 41 Cal. 4th at 1252 (reversing judgment that litigation

5   privilege applied where "a factual inquiry is required in order to determine whether a particular

6   eviction notice is privileged"); *Eisenberg v. Alameda Newspapers, Inc*., 74 Cal. App. 4th 1359,

7   1381 (1999) (denying summary judgment where "it remains a triable issue of fact whether …

8   imminent litigation was seriously proposed and actually contemplated in good faith as a means of

9   resolving the dispute"). That Defendant attempted to avoid the issue only confirms that its motion

10  should be denied.

11       **B.**    **Defendant Could Not Have Had a Good Faith Basis to Bring Litigation against BMC Because Its Claims Are False**

12       The reason Defendant had no good faith intention to bring suit against BMC but satisfied

13  itself with attempt to disrupt BMC's fundraising is simple: Defendant knows that its claim to own

14  the BMC patent and related technology is false. (Dkt. No. 1 ¶¶ 3-4, 32, 35, 44-45, 50-51.) The

15  Complaint repeatedly alleges that Defendant's claims to own the BMC Patent are false, and those

16  allegations must be taken as true, *e.g.*:

17       •   Defendant "falsely claimed to own and to have invented BMC's core technologies,

18             specifically the novel combination of particle-size and water weight limitations that

19

20

21  _____

22  [4] Defendant's cases provide no support for a claim that it contemplated litigation. In *Neville v. Chudacoff*, the court held that prelitigation letters sent to customers of an employee accused of misappropriating trade secrets four months before the lawsuit was filed were ultimately protected

23  by the litigation privilege because those customers were "potential witnesses." 160 Cal. App. 4th 1255, 1267-68 (2008). Unlike here, there was no allegation of bad faith on the part of the sender—

24  rather, the moving party merely argued that there was "insufficient evidence" that the sender intended to bring litigation when the letters went out. *Id.* at 1269; *see also Sharper Image*, 425 F.

25  Supp. 2d at 1079 (court did not "consider the factual question of whether Plaintiff seriously contemplated suing the retailers and media outlets"); *Dove Audio, Inc. v. Rosenfeld, Meyer &*

26  *Susman*, 54 Cal. Rptr. 2d 830, 834 (1996) (sender reached out to celebrities to obtain support "in preparation for the sending of a complaint to the Attorney General" and no one disputed sender's

27  good faith intent to file complaint); *I & U v. Publishers Sols. Int'l*, 2014 WL 12665121, *5 (C.D. Cal. Aug. 7, 2014) (no one disputed sender's good faith intent to bring litigation).

28

are at the heart of BMC's recently issued patent and that allow BMC's products to remain shelf stable and have their pleasing and meat-like texture" (*id*. ¶ 3);

- Defendant "has asserted that its founders should be named as inventors of BMC's patents … There is absolutely no truth to those claims, **and [Defendant] knows that there is no truth to them**" (*id*. ¶¶ 3-4) (emphasis added);

- "Had [Defendant] developed those ideas, it would have included them in its own patent applications. But those applications simply retread the extensive prior art on fungal fermentation and have been rejected by the Patent and Trademark Office over and over for that reason" (*id*. ¶ 4);

- Defendant "falsely accused BMC and BMC's former employee of trade secret misappropriation and unfair competition" (*id*. ¶ 31); and

- "When [Defendant] sent the December 15 letter and attachments, it knew that the claims in those letters were false and that Emergy had not in fact invented the novel subject matter of BMC's '150 Application and '137 Patent, much less shared them with BMC's former employee" (*id*. ¶ 44).

After Defendant falsely accused BMC of trade secret misappropriation on July 16, 2021 and demanded that BMC assign its patent to Defendant, BMC invited Defendant to provide evidence to support its accusations. (*Id*. ¶¶ 34-35.) The "evidence" Defendant provided on August 25, 2021 to support its inventorship claims was inconsistent with its assertions and instead consisted largely of unidentified and undated pictures of mycelial discs and chunks—all of the sort that could, are, and have been grown by countless investigators, laboratories, and fungal biomass producers for decades. (*Id*. ¶ 35.) After BMC responded on September 8, 2021 by explaining that what Defendant had provided was not evidence of anything and offered to discuss the matter further, Defendant went silent for over three months. (*Id*. ¶ 37.) When Defendant did file a complaint in response to BMC's, it simply repeated the evidence that BMC had already refuted, right down to the claim chart and purported evidentiary support. (*Compare* Case No. 2:21-cv-02417-KJM-CKD, Dkt. No. 1 at 18-19, *with* Dkt. 33-12 at 7-8.)

1    Defendant's complaint reproduces its unidentified and variously dated pictures of batches

2    of mycelium and asserts that they satisfy various individual elements of the claims of the BMC

3    Patent. But Defendant has no evidence that it ever recognized the significance of any of the

4    parameters at issue for purposes of creating a shelf stable meat replacement, no evidence that it

5    ever combined all of the claim elements into the invention described in the patent, and no evidence

6    that it had ever cooked up a batch of mycelium that even so happened to match the critical water

7    content range limitation until more than five months *after* Mr. Pattillo left the Department of

8    Energy. (Case No. 2:21-cv-02417-KJM-CKD, Dkt. No. 1 at 18-19.) For example, as supposed

9    proof that it conceived the invention in Claim 1 of the BMC Patent, Defendant points to photos

10   allegedly taken on August 7, 2017, as showing the "particle size" limitation, but to an October 23,

11   2018 experiment conducted long after Mr. Pattillo's departure from the Department of Energy as

12   separately showing the "4% to about 6% w/w" limitation. (*Id.* at 18-19.)

13   　　Similarly, Defendant's contention that it has other purported stolen trade secrets that were

14   not disclosed in the BMC Patent hinges on vague references to a "proprietary matrix for treating

15   and harvesting mycelium" with steps like "pressing" and "drying" mycelium, which were well-

16   known and practiced widely in the industry for decades.[5] Nor does Defendant allege that BMC

17   presses or otherwise dries its mycelium in a way that employs those purported trade secrets.

18   　　Defendant has even been unable to provide any evidence that it was actively researching or

19   developing meat replacement uses of mycelium prior to its pivot in 2019, long after Mr. Pattillo

20   departed the Department of Energy and concluded any involvement with Defendant. (Dkt. No. 1 ¶¶

21

---

22   [5] Though not relevant at the motion to dismiss stage, "pressing" then "drying" mycelium is a
     technique that is well-known and long used in the industry. *E.g.,*
23   https://www.youtube.com/watch?v=hkwWNxKa14Q (1975 video showing mechanical dewatering
     of mycelium by pressing it); U.S. Patent No. 8,481,295 (2013 patent published in 2010 covering
24   "dewatering and ***drying*** the fungal biomass for the manufacture of food for consumption," where
     "dewatering [the] harvested fungal biomass" involves "using any one of a filter press, a ***belt press***,
25   and a centrifuge"); Van Leeuwen et al., *Fungal Treatment of Crop Processing Wastewaters with
     Value-Added Co-Products*, Sustainable Bioenergy and Bioproducts at 13-14 (2012) (showing
26   techniques in U.S. Patent No. 8,481,295 in action); Jin et al, *A comprehensive pilot plant system for
     fungal biomass protein production and wastewater reclamation*, 6(2) Advances in Environmental
27   Research 179-189 (2002) (describing use of a "***belt pressure filter*** followed by a flash air-***dying***
28   process," as well as "vacuum and pressure filtration processes").

20-21, 35.) It is therefore unsurprising that Defendant lacked a good faith belief in the merits of its putative claims and filed them only after BMC filed first, thereby forcing Defendant to defend the unfounded claims it had sought to get into the hands of BMC's prospective investors without actual litigation. Much like a "threat of litigation … made merely as a means of obtaining a settlement" cannot invoke the litigation privilege, Defendant's false threat of litigation made merely as a means of disrupting BMC's fundraising is also unprotected. *Edwards*, 53 Cal. App. 4th at 36. BMC is not required to sit back and allow Defendant to tortiously interfere with its fundraising through meritless threats directed at prospective investors.

<u>**CONCLUSION**</u>

For the foregoing reasons, BMC respectfully requests that the Court deny Defendant Emergy, Inc.'s Motion to Dismiss Under Rule 12(b)(6).

Dated:  April 19, 2022                                      Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:   _/s/ Jeffrey M. Theodore_
              Jeffrey M. Theodore

*Attorneys for Plaintiff*
*The Better Meat Co.*