Jeffrey D. Smyth (SBN 280665)
 jeffrey.smyth@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California  94304
Telephone:    (650) 849-6600
Facsimile:    (650) 849-6666

Deanna C. Smiley (*pro hac vice*)
 Deanna.Smiley@finnegan.com
Taylor L. Stark (*pro hac vice*)
 Taylor.Stark@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
Telephone:    (571) 203-2700
Facsimile:    (571) 203-2777

David K. Mroz (*pro hac vice*)
 David.Mroz@finnegan.com
Luke J. McCammon (*pro hac vice*)
 Luke.McCammon@finnegan.com
John M. Williamson (*pro hac vice*)
 John.Williamson@finnegan.com
Sonja W. Sahlsten (*pro hac vice*)
 Sonja.Sahlsten@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:    (202) 408-4000
Facsimile:    (202) 408-4400

*Attorneys for Defendant Emergy, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BETTER MEAT CO.,<br><br>            Plaintiff,<br><br>    v.<br><br>EMERGY, INC. d/b/a MEATI FOODS, PAUL VRONSKY, and BOND CAPITAL MANAGEMENT LP,<br><br>            Defendants. | CASE NO. 2:21−CV−02338−KJM−CKD<br><br>**EMERGY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE DEPOSITION TRANSCRIPT OF TYLER HUGGINS, Ph.D. NOT CONFIDENTIAL**<br><br>Date:        September 16, 2022<br>Time:        10:00 AM<br>Location:   Courtroom 3, 15th Floor<br>Judge:       Hon. Kimberly J. Mueller |

**TABLE OF CONTENTS**

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. BACKGROUND | 2 |
| III. ARGUMENT | 5 |
|     A. BMC's Motion Is Procedurally Improper and Should Be Denied | 5 |
|         1. BMC Never Opposed Sealing the Deposition Transcript | 5 |
|         2. BMC's Did Not File Objections to the Magistrate Judge's Order Sealing the Deposition Transcript | 7 |
|         3. BMC's Did Not Apply the Correct Legal Standard for Unsealing the Deposition Transcript | 8 |
|     B. Emergy Has Satisfied the "Compelling Reasons" Standard Required to Seal Sections of the Transcript of Dr. Huggins's Deposition | 9 |
|         1. Transcript Designations Related to Research, Development, and Technical Information that Would Harm Emergy's Competitive Standing if Known | 10 |
|         2. Transcript Designations Related to Investors and Corporate Structure Should Remain Sealed | 11 |
|         3. Transcript Designations Related to Internal Communications, Strategy, and Decision Making Would Harm Emergy's Competitive Standing if Made Public | 12 |
|     C. BMC's Arguments About Emergy's Confidentiality Designations Lack Merit | 14 |
| IV. CONCLUSION | 15 |

i

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adtrader, Inc. v. Google LLC*,
   No. 17-cv-07082, 2020 WL 6391210 (N.D. Cal. Mar. 24, 2020) .............................................. 13

*Algarin v. Maybelline, LLC*,
   No. 12cv3000, 2014 WL 690410 (S.D. Cal. Feb. 21, 2014) ................................................. 9, 11

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*,
   No. 2:20-CV-1585, 2021 WL 3159815 (E.D. Cal. June 16, 2021) ............................................ 9

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   No. 17-CV-00220, 2019 WL 95922 (N.D. Cal. Jan. 3, 2019) ..................................................... 9

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-cv-05808, 2016 WL 7911651 (N.D. Cal. April 6, 2016) .............................................. 13

*Fundingsland v. OMH Healthedge Holdings, Inc.*,
   No. 15-cv-01053, 2018 WL 1524474 (S.D. Cal. Mar. 27, 2018) ........................................ 11, 12

*Hogan v. City of Sacramento*,
   No. 2:15-CV-1933, 2016 WL 410277 (E.D. Cal. Feb. 3, 2016) ................................................. 6

*Kamakana v. City & Cnty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ............................................................................................. 9, 11

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
   No. 2:12-cv-02182, 2016 WL 10672084 (E.D. Cal. June 28, 2016) .......................................... 6

*Monster Energy Co. v. Vital Pharms., Inc.*,
   No. EDCV 18-1882, 2019 WL 3099711 (C.D. Cal. June 17, 2019) .......................................... 9

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) .................................................................................................... 9, 12, 13

*Rodman v. Safeway Inc.*,
   No. 11-cv-03003, 2015 WL 13673842 (N.D. Cal. Aug. 4, 2015) ............................................ 13

*Snapkeys, Ltd. v. Google LLC*,
   No. 19-CV-02658, 2021 WL 1951250 (N.D. Cal. May 14, 2021) .......................................... 12

*In re Tesla, Inc. Sec. Litig.*,
   No. 18-cv-04865, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) .............................................. 12

*U.S. v. Stone*,
   No. CR12-0072, 2013 WL 5934346 (E.D. Cal. Nov. 5, 2013) .................................................. 8

*Vasquez v. O'reilly Auto Enters., LLC*,
   No. 1:21-cv-01099, 2022 WL 1645145 (E.D. Cal. May 24, 2022) ............................................ 9

ii

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

*W. Air Charter, Inc. v. Sojitz Corp.*,
 No. CV 18-7361, 2019 WL 4509304 (C.D. Cal. May 2, 2019) .................................................. 12

**Rules**

L.R. 141 ........................................................................................................................................ 3

L.R. 141(b) .............................................................................................................................. *passim*

L.R. 141(c) .................................................................................................................................... 6

L.R. 141(f) ................................................................................................................................. 5, 8

L.R. 230 ........................................................................................................................................ 6

L.R. 230(c) .................................................................................................................................... 6

L.R. 303(b) .................................................................................................................................... 7

L.R. 303(c) ................................................................................................................................ 7, 8

iii

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

I.   INTRODUCTION

Emergy created a crown-jewel innovation in the alternative meat market with massive potential. Emergy's discoveries on how to use mycelium to simulate the muscle structure of meat forged a new path in the market that did not exist before. Competitors will do whatever it takes to enter this market and gain market share, including steal or misuse confidential information, as BMC has done. Thus, it is important for the Court protect the confidential information filed in this case. Otherwise, Emergy could be competitively harmed.

Relevant here, BMC deposed Emergy's CEO, Dr. Tyler Huggins, as part of the expedited discovery ordered by the court. Rather than taking a short, targeted deposition of Dr. Huggins on the narrow scope of discovery authorized by the court, BMC deposed Dr. Huggins for the full seven hours and spent most of the day questioning him on topics far outside the Court's order. Now, BMC seeks to make the entire Huggins deposition transcript public, including the highly sensitive testimony it obtained by going beyond the scope of the Court's order. But as described below, the transcript contains confidential information that, if disclosed, would put Emergy at risk of competitive harm and therefore should remain sealed.

Notably, the Magistrate Judge has *already sealed* the Huggins transcript in its entirety. BMC had a chance to move for reconsideration or object to this ruling within the 14-day window set forth in this Court's local rules but did not. Moreover, when Emergy filed its supplemental reply brief in support of its anti-SLAPP motion, it moved to seal portions of the Huggins transcript included and described in its brief. BMC did not oppose this request to seal. Now, BMC asks the Court to ignore these facts and give it a free pass by unsealing the transcript at this late stage. Even worse, BMC makes this request while failing to apply the correct legal standard and burden of proof in its motion. Because the transcript has already been sealed, BMC has the burden of showing good cause for why it should be *unsealed*. Emergy no longer has the burden of proving that the transcript should be sealed, as BMC suggests. These procedural points confirm that the Huggins transcript should remain sealed, and that BMC's motion should be denied.

1

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

## II.  BACKGROUND

BMC's tortious interference and unfair competition claims are based on correspondence sent by Emergy and Mr. Vronsky that is squarely protected by California's anti-SLAPP statute and the litigation privilege. *See* ECF No. 1. Accordingly, Emergy, Bond, and Mr. Vronsky moved to strike and dismiss these claims. *See, e.g.*, ECF. Nos. 27, 29, 31, 56, 57, 58, 67, 75. But because BMC believed it was entitled to discovery before the Court ruled on Emergy's anti-SLAPP motion, it filed an ex parte application for discovery. ECF No. 47. In that ex parte application, BMC requested a single deposition of Tyler Huggins (Emergy's CEO), which BMC represented would be "limited in scope to the issues raised in his [two-page] declaration." ECF No. 47 at 7. During the May 6 argument on the ex parte application, BMC vastly expanded the scope of its request, asking for "full discovery" on Emergy's inventorship claim and a twelve-month discovery period that would include both fact and expert discovery. *See* Hr'g Tr. (May 6, 2022) at 28. The Court rejected BMC's expanded request and instead granted "narrowly focused," "expedited" discovery on the issue of whether "Emergy had a good-faith intent of filing a lawsuit at the time of the contested communications." ECF No. 66 at 7. This included the Huggins deposition. *Id.*

Knowing that confidential information would be produced during expedited discovery, and given that a protective order had not yet been entered in the case, Emergy approached BMC about "reach[ing] an agreement over email" governing the confidential information that would be produced. Ex. A at 4. Under Emergy's proposal, there would be one confidentiality designation, HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, and the parties would agree that all such information could "only be shared between outside counsel representing one of the parties in the suit." *Id.* BMC responded by proposing a two-level confidentiality designation system that included the designations CONFIDENTIAL and HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY. *Id.* at 3. Emergy agreed to this two-level confidentiality arrangement. *Id.* at 2.

Notably, knowing that nearly all confidential information produced during the expedited discovery would be Emergy information, Emergy proposed an arrangement that would allow certain individuals from BMC to see confidential information. Under this arrangement, BMC's counsel

2

Emergy's Opposition to Plaintiff's Motion to Designate the Deposition Transcript of T. Huggins Not Confidential
Case No. 2:21-cv-02338-KJM-CKD

could ask if certain documents could be shown to its client, and Emergy could consider each request and provide consent "on an ad hoc basis." *Id.* BMC never agreed to this proposal. Instead, BMC represented that it would be "happy to keep competitively sensitive information from [its] client and expect[ed] the same courtesy in reverse," and that it would "honor good faith designations reflecting that concern." *Id.* at 1.[1]

The Huggins deposition was taken with the above agreements in effect. When Emergy's counsel designated the transcript "highly confidential outside attorneys' eyes only" during the deposition, BMC's counsel responded, "[t]hat's fine." ECF No. 73-1; July 13 Conf. Materials (emailed to chambers pursuant to Local Rule 141(b)) ("Huggins Dep. Tr.") at 65:8-14. At the end of the deposition, Emergy's counsel explained that the "highly confidential, outside attorneys' eyes only" designation meant that "only counsel of record, attorneys, can see this transcript, and no employees of Better Meat Co. or Mr. Pattillo" could see the transcript. Huggins Dep. Tr. at 307:22-308:3. BMC's counsel agreed that "certainly for now, we will not share this transcript with . . . our clients" and stated that the parties could talk later about "what aspects are AEO and what aspects are not." Huggins Dep. Tr. at 308:4-11.

After the final transcript issued, Emergy combed through it to see what could be down-designated from HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY. This was not an easy task given that BMC deposed Dr. Huggins for the full seven hours and addressed many sensitive issues far outside the scope of the discovery that the Court ordered. For example, BMC's attorney questioned Dr. Huggins about the development of Emergy's groundbreaking technology, his time at Argonne Labs, his thoughts on whether claims in U.S. Patent No. 11,058,137 covered Emergy's current products, and other applications Emergy has considered for its mycelia inventions. *See, e.g.*, Huggins Dep. Tr. at 31:17-32:10; 64:8-17; 64:18-65:2; 65:17-20; 66:19-67:6; 67:21-22; 99:12-19; 101:21-102:15; 136:15-137:14; 137:17-138:1; 140:3-23; 141:1-42:8; 143:24-146:17; 249:11-249:17; 250:2-250:19; 254:5-10; 259:22-260:4; 260:6-9; 260:16; 260:19; 260:21-25; 261:12-14; 267:13-16;

---

[1] The parties also agreed to follow Local Rule 141 when filing confidential information with the Court and that the protective order (when ultimately entered) would replace the email agreement and would retroactively govern all documents produced during anti-SLAPP discovery. Ex. A at 2-4.

3

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

267:20-21; 267:24-268:5; 268:21-269:6; 269:25-270:14; 285:8-18; 286:20-287:12; 288:2-4; 288:18-289:1; 289:15-23; 290:5-14; 291:1-6; 295:21-23297:13-15; 298:11-13; 298:15-19; 298:21-23; 299:1-3; 300:7-10. None of these sensitive issues has anything to do with whether Emergy had a good-faith intent of filing a lawsuit at the time of the contested communications in December 2021. ECF No. 66 at 7. Nonetheless, Emergy determined what information from the Huggins transcript could be shared with BMC.

Upon completing this task, Emergy sent counsel for BMC an annotated transcript indicating what subject matter was HIGHLY CONFIDENTIAL–OUTSIDE ATTORNEYS' EYES ONLY, and what subject matter could be down-designated to CONFIDENTIAL and shown to BMC. Well over half of the transcript was down-designated. Notably, Emergy restricted access to the information to "two people from BMC and Mr. Pattillo." Ex. B at 1. Emergy invoked these restrictions because no protective order was in place and because of Emergy's general distrust for BMC and Mr. Pattillo given the intellectual property theft described in Emergy's offensive complaint. *See generally* Complaint & Demand for Jury Trial, *Emergy, Inc. v. Better Meat Co.*, No. 2:21-cv-02417 (E.D. Cal. Dec. 27, 2021), ECF No. 1.

In view of these facts, it becomes clear Emergy did not blindly over-designate the Huggins transcript in hopes of shielding BMC from the relevant facts of the case, as BMC suggests. Instead, Emergy was open and communicative with BMC's counsel early in the expedited discovery process about confidentiality designations, and it remained open and communicative with BMC's counsel all the way through the Huggins transcript designations. BMC's motion ignores the relevant history described above and the agreements the parties reached along the way.

Notably, the parties' meet-and-confers about the confidentiality designations in the Huggins transcript did not focus on the dividing line between confidential and public. The negotiations focused on the dividing line between HIGHLY CONFIDENTIAL–OUTSIDE ATTORNEYS' EYES ONLY and CONFIDENTIAL, with the understanding that information downgraded to CONFIDENTIAL, could be viewed by Mr. Pattillo and certain individuals at BMC. The parties never met-and-conferred about unsealing the entire Huggins transcript and making it publicly available. BMC's motion took Emergy by surprise.

4

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-cv-02338-KJM-CKD

## III. ARGUMENT

### A. BMC's Motion Is Procedurally Improper and Should Be Denied

BMC's motion is procedurally improper for at least three reasons. First, BMC never opposed sealing the Huggins deposition transcript. Second, once the transcript was sealed by the Magistrate Judge, BMC failed to file a motion for reconsideration or objections to that portion of the order. Third, BMC failed to articulate, much less apply, the proper "good cause" standard to unseal documents under Local Rule 141(f). Emergy addresses each of these defects in turn, any one of which is sufficient to deny BMC's motion.

#### 1. BMC Never Opposed Sealing the Deposition Transcript

As part of expedited discovery on Emergy's anti-SLAPP motion, Emergy produced 156 documents totaling 788 pages, many of which contain Emergy's confidential information. The discovery also included the Huggins deposition. During that deposition, counsel for BMC questioned Dr. Huggins for seven hours on topics far beyond the scope of the two-page declaration he submitted in support of Emergy's anti-SLAPP motion and far beyond the scope of discovery granted by the Court, which was to be "narrowly focused on the question whether Emergy had a good-faith intent of filing a lawsuit at the time of the contested communications." ECF No. 66 at 7. Much of that deposition testimony included Emergy's confidential information, including confidential material contained in the documents and other confidential information. Emergy takes the confidentiality of its information very seriously. Emergy is justifiably particularly sensitive to confidentiality issues in the case involving BMC. After all, the dispute between the parties arises from, among other things, BMC and Mr. Pattillo's misappropriation of Emergy's trade secret and confidential information.

Against this backdrop and pursuant to Local Rule 141(b), Emergy has submitted requests to seal its confidential information (and the related notices) with its supplemental anti-SLAPP filings. *See* ECF No. 69 (notice); Emergy's June 25 Request to Seal (emailed to chambers pursuant to Local Rule 141(b)); ECF No. 76 (notice); Emergy's July 18 Request to Seal (emailed to chambers pursuant to Local Rule 141(b)). Emergy's first request to seal covered the confidential documents and discovery responses submitted in support of its supplemental anti-SLAPP brief. ECF No. 69; Emergy's June 25 Request to Seal. And Emergy's second request to seal covered additional

5

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

confidential discovery responses it filed in support of its supplemental anti-SLAPP reply brief and confidential information in the supplemental reply brief itself. ECF No. 76; Emergy's July 18 Request to Seal. Among the confidential information in the supplemental reply brief was direct quotes from the deposition transcript of Dr. Huggins. *See* Emergy's July 18 Conf. Materials (emailed to chambers pursuant to Local Rule 141(b)) at 8-9. In its requests to seal this confidential information, Emergy provided a detailed explanation of why the materials, including the excerpts from the deposition transcript, should be sealed under the appropriate "compelling reasons" legal standard. *See* Emergy's June 25 Request to Seal; Emergy's July 18 Request to Seal.

BMC never submitted an opposition to any of Emergy's requests to seal. If BMC disagreed with sealing any of Emergy's confidential materials, including the excerpts of the deposition transcript, it should have submitted an opposition as required by Local Rule 141(c). The Court may construe BMC's failure to file an opposition as a non-opposition to sealing at least those portions of the Huggins transcript covered in Emergy's request to seal. *Cf.* L.R. 230(c) ("A failure to file a timely opposition may also be construed by the Court as a non-opposition to the motion."); ECF No. 4, ¶ 8 ("The failure to file an opposition or statement of non-opposition . . . may be deemed consent to the granting of the motion and the court may exercise its discretion to dispose of the motion summarily."); *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, No. 2:12-cv-02182, 2016 WL 10672084, at *2 (E.D. Cal. June 28, 2016) ("Local Rule 230 governs the calendaring and procedures of civil motions . . . . Failure to comply with Local Rule 230(c) . . . may be deemed consent to the motion and the court may dispose of the motion summarily."); *Hogan v. City of Sacramento*, No. 2:15-CV-1933, 2016 WL 410277, at *2 (E.D. Cal. Feb. 3, 2016) (same). BMC now moves to have the *entire* transcript designated not confidential despite already having the opportunity to oppose Emergy's request to seal at least some portions of the transcript. Because of BMC's failure to timely oppose, the Court should deny BMC's request to designate the *entire* transcript not confidential.

Notably, *BMC itself* noticed and submitted a request to seal the entire Huggins transcript when it filed its supplemental anti-SLAPP opposition brief, albeit with the caveat that BMC "does not agree that these materials are confidential and reserves its right to oppose any submission in support of sealing as well as the confidentiality of such information on the merits in this litigation."

6

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

BMC's July 8 Request to Seal at 1 (emailed to chambers pursuant to Local Rule 141(b)); ECF No. 72 (notice). The problem with BMC's position is that, despite "reserv[ing] its right" to oppose Emergy's submission, it opposed nothing when Emergy submitted its request to seal with its supplemental reply brief, as described in this section.

### 2. BMC's Did Not File Objections to the Magistrate Judge's Order Sealing the Deposition Transcript

In conjunction with the joint statement regarding discovery disagreement on its motion to compel, BMC again filed a request to seal the deposition transcript of Dr. Huggins. BMC's July 13 Request to Seal (emailed to chambers pursuant to Local Rule 141(b)); ECF No. 74 (notice).[2] In her July 28 Order denying BMC's motion to compel, the Magistrate Judge granted two requests to seal (ECF Nos. 69 and 74). ECF No. 80 at 13. As discussed, the request to seal filed in conjunction with the joint statement regarding discovery disagreement (ECF No. 74) included the entire transcript of the deposition of Dr. Huggins. The Magistrate Judge has, therefore, already considered and sealed the deposition transcript in its entirety.

On August 11, BMC filed "objections" to some of the discovery aspects of the Magistrate Judge's Order.[3] ECF No. 84. But BMC did not object to the portion of the Order granting the request to seal the deposition transcript. Under Local Rule 303(b), magistrate judge rulings—like the order denying the motion to compel and granting the request to seal—"shall be final if no reconsideration thereof is sought from the Court within fourteen (14) days." Because BMC did not seek reconsideration (or even file objections) to the sealing aspect of the Magistrate Judge's Order, it is final. As Emergy argued in its opposition to BMC's "objections," because BMC failed to object to the aspect of the Magistrate Judge's Order granting the request to seal, it should not be set aside or

---

[2] Here, again, BMC stated that it "reserv[ed] its right to oppose . . . the confidentiality" of the deposition transcript "on the merits in this litigation." BMC's July 13 Request to Seal at 1. But as discussed in this section, BMC did not timely object when it had the chance. It let the fourteen-day window for requesting reconsideration or objecting to the portion of the Magistrate Judge's Order sealing the entire transcript pass without objection.

[3] The Local Rules specify that a party seeking reconsideration of a magistrate judge's ruling "shall file a request for reconsideration" that "shall be captioned 'Request for Reconsideration by the District Court of Magistrate Judge's Ruling.'" L.R. 303(c). BMC did not file a request for reconsideration (as its pleading is captioned "Objections to Order Denying The Better Meat Co.'s Motion to Compel") and did not articulate, much less apply, the legal standard for requesting reconsideration.

7

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

modified. ECF No. 86 at 17; *see U.S. v. Stone*, No. CR12-0072, 2013 WL 5934346, at *4 n.5 (E.D. Cal. Nov. 5, 2013) (denying motion for reconsideration where "Defendant d[id] not articulate any specific objections to . . . three rulings"); *Lal v. Felker*, No. S-07-2060, 2014 WL 1847442, at *1 (E.D. Cal. May 8, 2014) ("Under Local Rule 303(c), the party seeking reconsideration 'shall specifically designate the ruling, or part thereof, objected to and the basis of that objection.'" (quoting L.R. 303(c))).

Instead of filing a request for reconsideration of the Magistrate Judge's Order granting the request to seal the deposition transcript, which would have been procedurally proper under Local Rule 303(c), or even objecting to it in its improperly styled "objections," BMC decided to ignore the Local Rules and file this separate "motion to designate" the transcript not confidential. ECF No. 82. This allowed BMC to circumvent page-limit requirements.[4] The Court should not permit BMC to flout the Local Rules and should deny BMC's procedurally improper motion.

### 3. BMC's Did Not Apply the Correct Legal Standard for Unsealing the Deposition Transcript

The deposition transcript has already been sealed by the Magistrate Judge's Order. ECF No. 80 at 13. Local Rule 141(f) provides the following procedure and standard for unsealing documents: "Upon the motion of any person, or upon the Court's own motion, the Court may, *upon a finding of good cause or consistent with applicable law*, order documents unsealed." L.R. 141(b) (emphasis added). When listing the Rule 141(f) standard in its motion, ECF No. 82 at 4, BMC completely omits the portion italicized above. BMC never articulates, much less satisfies, the good cause standard required to unseal documents. Instead, BMC focuses its motion on Emergy's purported failure to show good cause to seal the transcript in the first instance. Thus, BMC's argument ignores that the deposition transcript *has already been sealed*, and that it is now BMC's burden to show good cause to unseal it. Given this posture, the Court should reject BMC's attempt to flip the burden.

---

[4] BMC's 15-page Objections to Order Denying The Better Meat Co.'s Motion to Compel and 10-page Motion to Designate the Deposition Transcript of Tyler Huggins, Ph.D. Not Confidential totals 25 pages, which exceeds the 20-page limit that would have applied had BMC followed the rules. ECF No. 4, ¶ 8 (articulating 20-page limit for moving papers).

8

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

BMC has not, and does not even purport to, show good cause to unseal the transcript, so the Court should deny its motion for this reason alone.

> B. **Emergy Has Satisfied the "Compelling Reasons" Standard Required to Seal Sections of the Transcript of Dr. Huggins's Deposition**

Even if this Court finds that BMC's motion is procedurally proper, Emergy provides compelling reasons for why at least some portions of the Huggins transcript should be sealed, which means BMC's request to unseal the entire transcript should be denied. BMC argues that Emergy cannot satisfy the "compelling reasons" standard set forth in *Kamakana v. City & County of Honolulu*. ECF No. 82 at 1; *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). However, there are significant portions of the Huggins transcript that constitute the types of information that this Court routinely seals. Additionally, these significant portions have been 'narrowly tailored to remove from the public sphere only the material that warrants secrecy." *Vasquez v. O'reilly Auto Enters., LLC*, No. 1:21-cv-01099, 2022 WL 1645145 (E.D. Cal. May 24, 2022) (internal quotations omitted).

"'[C]ourts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing.'" *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, No. 2:20-CV-1585, 2021 WL 3159815, at *2 (E.D. Cal. June 16, 2021) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). This Court and the Ninth Circuit have provided examples of types of information that can "harm a litigant's competitive standing" if made public: formulas, patterns, devices or compilations of information used in one's business, pricing terms, royalty rates, and guaranteed minimum payment terms. *Cachil*, 2021 WL 3159815, at *2 (internal quotations omitted); *see also Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to seal for documents that, "if published, may harm [the party]'s or third parties' competitive standing"); *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882, 2019 WL 3099711, at *2 (C.D. Cal. June 17, 2019) (finding "[e]ven where records do not include trade secrets, they may still be sealed where they could be a 'source[] of business information that might harm a litigant's competitive standing'" (quoting *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016))); *Algarin v. Maybelline, LLC*, No. 12cv3000, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21,

9

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

2014) (finding compelling reasons for sealing where "confidential business material, marketing strategies, [and] product development plans could result in improper use by business competitors seeking to replicate [the company's] business practices and circumvent the time and resources necessary in developing their own practices and strategies"). Under this authority, business information that may harm Emergy's competitive standing if publicly disclosed should be sealed.

Emergy organizes the confidential information from the Huggins Transcript into three separate categories below: (1) research, development, and technical information about Emergy's innovations; (2) information relating to Emergy's investors and corporate structure; and (3) information relating to Emergy's strategy and decision making, including the CEO's decision-making process. As Emergy explains, all the information specified by transcript citations in the next three sections below should remain sealed.[5] *See* Sections III.B.1-3. Emergy's competitive standing would be harmed if this information were made public.

### 1. Transcript Designations Related to Research, Development, and Technical Information that Would Harm Emergy's Competitive Standing if Known

Emergy's mycelium innovations are crown jewels in the alternative meat market, which has massive potential. Emergy's discoveries on how to use mycelium to simulate the muscle structure of meat opened a new frontier that did not exist before. The Huggins transcript contains several disclosures describing the research that led to Emergy's discoveries, how Emergy's innovative processes and products developed over time, and Emergy's products as they exist today. *See, e.g.*, Huggins Dep. Tr. at 31:17-32:10; 99:12-19; 101:21-102:15; 285:8-18; 288:18-289:1; 289:15-23; 290:5-14; 291:1-6; 297:13-15; 298:11-13; 298:15-19; 298:21-23; 299:1-3; 300:7-10 (relating to Emergy's mycelium research); *id.* at 64:8-17; 136:15-137:14; 137:17-138:1; 140:3-23; 141:1-42:8; 143:24-146:17; 286:20-287:12; 288:2-4; 295:21-23 (relating to the details of Emergy's innovative process for growing mycelium); *id.* at 64:18-65:2; 65:17-20; 66:19-67:6; 67:21-22; 259:22-260:4; 260:6-9; 260:16; 260:19; 260:21-22; 267:13-16; 267:20-21; 267:24-268:5; 268:21-269:6; 269:25-270:14 (relating to the details of Emergy's current products and processes)

---

[5] If the Court prefers, Emergy can furnish an annotated copy of the transcript identifying the citations listed in the following sections.

10

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

This is exactly the type of information that warrants sealing. Its public disclosure would greatly affect Emergy's competitive position. Emergy's competitors would have knowledge of how Emergy creates and develops its products and what Emergy considers and values when doing so. These competitors could use the information to develop their own products and processes without having to expend exhaustive time and resources it would otherwise take to achieve what Emergy did through years of tireless work. *See Algarin*, 2014 WL 690410, at *3 (recognizing harm in a competitor using a litigant's information to "replicate . . . business practices and circumvent the time and resources necessary in developing their own practices and strategies"). Again, that Emergy is operating in a new frontier with groundbreaking technology substantially elevates the risk of harm to Emergy's competitive standing. The alternative meat market is a highly sought-after market in today's world, and companies will do whatever it takes to enter it and gain market share, including steal or misuse confidential information (as BMC has done). This Court should protect Emergy's interests and allow the transcript citations described in this section, to remain under seal.

## 2. Transcript Designations Related to Investors and Corporate Structure Should Remain Sealed

A party seeking to seal a document must "identify[] the interests favoring continued secrecy *and* [] show that these specific interests overc[o]me the presumption of access by outweighing the 'public interest in understanding the judicial process.'" *Kamakana*, 447 F.3d at 1181 (internal citation omitted) (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). Specific interests may include "sensitive, non-public, non-party financial information." *Fundingsland v. OMH Healthedge Holdings, Inc.*, No. 15-cv-01053, 2018 WL 1524474, at *2 (S.D. Cal. Mar. 27, 2018).

Counsel for BMC asked for *detailed* information regarding Emergy's investors and Emergy's Board of Directors, including how many seats are on the board, the types of seats, and who fills those seats. Huggins Dep. Tr. at 68:19-24; 114:3-11; 116:7-9; 120:16-19; 120:21, 166:12-168:2; *see also id.* at 115:13-21; 116:11-13; 119:4-119:16; 119:19-120:9; 122:21-123:5; 126:10-127:15; 147:1-24; 150:7-25; 152:5-7; 153:24-154:5; 154:14-155:24; 161:3-23; 164:5-166:11; 175:2-5; 175:10-12; 178:8-20; 186:12-191:19; 222:5-11; 228:2-7; 229:14-230:11; 231:6-232:2; 248:20-249:4 (other testimony relating to investors and board operations). This type of information falls within non-

public, non-party information, specifically non-party ownership information. *See Snapkeys, Ltd. v. Google LLC*, No. 19-CV-02658, 2021 WL 1951250, at *3 (N.D. Cal. May 14, 2021) (granting Google's motion to file under seal confidential non-party information regarding Google's business partners). In addition to Emergy, these investors and directors, have an interest and expectation in keeping this information private. This interest overcomes the public interest in having access to such information and creates a compelling reason for sealing. *See Fundingsland*, 2018 WL 1524474, at *2 (granting motion to seal of "sensitive and proprietary information relating to payments to non-parties investors, non-party salary information and bonus information, and non-party ownership information").

Emergy, its investors, and its board of directors, could suffer harm if the information described above is made public. The transcript contains sensitive information surrounding Emergy's board seats and shareholders and their involvement in this litigation. Disclosure of this information could damage the relationship between Emergy and its investors and hinder Emergy's ability to obtain investors in the future, and in turn, harm Emergy's competitive standing. *See In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865, 2022 WL 1497559, at *13 (N.D. Cal. Apr. 1, 2022) (suggesting that examples of harm as a result of disclosure of investor information could include "hinder[ing] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors"); *W. Air Charter, Inc. v. Sojitz Corp.*, No. CV 18-7361, 2019 WL 4509304, at *5 (C.D. Cal. May 2, 2019) (finding public disclosure of a stock purchase agreement that contained "non-public, confidential, and commercially sensitive information" would harm party's competitive standing). Thus, the portions of the Huggins transcript that refer to Emergy's investors and ownership information (the citations for which are in this section) should remain sealed.

### 3. Transcript Designations Related to Internal Communications, Strategy, and Decision Making Would Harm Emergy's Competitive Standing if Made Public

Competitive harm may also come from the disclosure of information relating to corporate decision-making strategy. Publication of such information could give competitors an insight into the inner workings of a company, including how decisions are made and who makes them, causing the court files to "become a vehicle for improper purpose." *Nixon*, 435 U.S. at 598.

12

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD

1    Throughout Dr. Huggins' deposition, he testified about internal communications between Emergy employees, and communications between Emergy and its board of directors and investors. These details include who was present at the meetings, what individual members thought about certain decisions, why certain courses of action were taken, and why the decision to file a lawsuit was made. Huggins Dep. Tr. at 92:16-93:6; 105:18-108:10; 108:17-109:17; 109:22-110:9; 115:13-21; 119:4-119:16; 119:19-120:9; 121:2-5; 122:21-123:5; 124:8; 126:10-127:15; 147:1-24; 150:7-25; 152:5-153:8; 153:21-154:5; 155:25-156:17; 157:5-19; 157:23-158:19; 159:1:160:18; 160:25-161:23; 163:19-164:4; 164:5-166:11; 167:11-168:1-2; 176:10-178:22; 192:11-195:24; 196:7-197:14; 197:17-198:4; 198:11-200:14; 201:12-202:8; 202:25-203:6; 206:10-23; 207:5-208:23; 209:17-210:23; 221:25-222:11; 222:20-224:6; 232:24-234:5; 238:13-17; 239:3-10. These details also include internal communications between Emergy employees about company strategy, including marketing strategy. *Id.* at 45:24-46:19; 48:18-50:21; 51:1-52:3; 53:11-18; 54:16; 54:18-24; 73:23-74:10; 74:15; 75:13; 75:17-19; 76:12; 76:16-19; 129:17-18; 129:20-22; 130:6-13; 239:11-16; 240:7-241:12; 242:6-21; 243:12-244:5; 246:10-247:1; 247:15-248:8; 262:22-263:12.

If public, this information could be used for improper purposes, including negatively affecting Emergy's competitive standing by giving competitors insight into how decisions are made within Emergy. *See Nixon*, 435 U.S. 598; *Adtrader, Inc. v. Google LLC*, No. 17-cv-07082, 2020 WL 6391210, at *2 (N.D. Cal. Mar. 24, 2020) (granting motion to seal document that discloses "corporate decision-making strategy and other sensitive business information that provides an inaccurate and incomplete picture of [the business's] decision making" because disclosure could lead to competitive harm); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2016 WL 7911651, at *3 (N.D. Cal. April 6, 2016) (finding "strategic business considerations" to be "sealable information" and also sealing CEO deposition testimony); *Rodman v. Safeway Inc.*, No. 11-cv-03003, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015) (granting motion to seal Safeway's "pricing strategy, business decision-making, customer research, and financial records" as such documents "would expose Safeway to competitive harm if disclosed"). As described, that Emergy is operating in a new frontier with crown-jewel technology substantially elevates the risk of competitive harm. Emergy is a big target in this field, and competitors would stand to benefit from

gaining access to Emergy's competitively sensitive information, including business strategy and litigation information. For these reasons, the specific sections of the Huggins transcript that disclose Emergy's internal communications (the citations for which are in this section) should remain sealed.

### C. BMC's Arguments About Emergy's Confidentiality Designations Lack Merit

BMC's arguments about Emergy's confidentiality designations are wrong for the reasons described above. BMC's arguments also fail for additional reasons described here. For many of the transcript citations BMC includes in its brief, Emergy has not included those citations in Sections III.B.1-3 above, meaning that BMC's counsel can share this testimony with its clients. For example, of the transcript citations BMC includes on page 5 of its brief, none of the citations in the first, second, fourth, and sixth bullet points are included in Sections III.B.1-3 of this brief. Regarding the third bullet point, several of the citations are not included in Sections III.B.1-3. For the subject matter in the third bullet point that is addressed above, the questioner had access to confidential Emergy information and revealed confidential information through the question. "I don't know" answers to these types of questions does not render the confidential information wrapped into the question non-confidential. Regarding the second bullet point on page 6, the article from 2016 that BMC relies on does not make product features used by a company in 2022 public. Thus, BMC is wrong to rely on this article to suggest that certain Emergy product features Dr. Huggins testified about were publicly known. Next, Emergy does not include any of the citations in the bullet points on the bottom half of page 6 or in the third bullet point on page 7 in Sections III.B.1-3.

Regarding the remaining transcript citations BMC raises in its brief, they fit squarely into one of the categories described in Sections III.B.1-3 and, thus, compelling reasons exist for sealing that information. Notably, that Emergy included *general* information in its public filings that relates to the detailed confidential information in the Huggins transcript does not necessarily render this confidential information nonconfidential, as BMC suggests. ECF No. 82 at 7-9. This is because the public subject matter was more general compared to the detailed, confidential testimony Dr. Huggins provided in his deposition.

Next, and contrary to BMC's assertions, Emergy did not attempt to shield BMC and Mr. Pattillo from seeing the relevant facts of the case. First, parties routinely designate entire deposition

transcripts as confidential in intellectual property cases. Second, as explained in Section II, Emergy was open and communicative with BMC's counsel early in the expedited discovery process about confidentiality designations, and it remained open and communicative with BMC's counsel all the way through the Huggins transcript designations. Indeed, Emergy spent hours generating a redacted transcript *with the sole intent* of giving BMC's counsel something it could share with its clients.

## IV. CONCLUSION

Emergy respectfully requests that this Court deny BMC's motion. The entire transcript should remain sealed for the reasons described in Section III.A. If the Court requires more narrowly tailored designations, the confidential information identified in the transcript citations in Sections III.B.1-3 should remain sealed.

Dated: August 24, 2022                    FINNEGAN, HENDERSON, FARABOW,
                                          GARRETT & DUNNER, LLP


                                          By:   */s/ Jeffrey D. Smyth*
                                                Jeffrey D. Smyth
                                                *Attorney for Defendant Emergy, Inc.*

15

EMERGY'S OPPOSITION TO PLAINTIFF'S MOTION TO DESIGNATE THE
DEPOSITION TRANSCRIPT OF T. HUGGINS NOT CONFIDENTIAL
CASE NO. 2:21-CV-02338-KJM-CKD