UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Emergy Inc., | No. 2:21-cv-02417-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| The Better Meat Co., et al., | |
| Defendants. | |

The court summarized the history and nature of this matter in a previous order:

> Emergy Inc. and The Better Meat Co. have both filed lawsuits in this court concerning their respective intellectual property rights in a mycelium-based meat substitute. On December 17, 2021, Better Meat filed a complaint against Emergy and an Emergy investor. *See generally* Compl., ECF No. 1, Case No. 2:21-cv-02338-KJM-CKD. Ten days later, and seven days after being served with Better Meat's complaint, Emergy filed this lawsuit against Better Meat and a former employee. *See generally* Compl., ECF No. 1, Case No. 2:21-cv-02417-KJM-CKD. Emergy alleges Better Meat stole its technique for generating a mycelium-based meat substitute. Better Meat alleges Emergy's claims are a baseless attempt to sabotage a competitor.

Order, ECF No. 38. In that same order, the court concluded Emergy's claims in its second-filed lawsuit are compulsory counterclaims, *see id.* at 2–3 (citing Fed. R. Civ. P. 13(a)); the court also tentatively concluded it would "direct Emergy to file the claims it attempted to assert [in its

1

second-filed lawsuit] as counterclaims in Better Meat's lawsuit," *id.* at 3.  Before doing so, the court "provide[d] the parties an opportunity to show cause . . . why this approach is not superior to consolidation while fully meeting the parties' and the court's needs." *Id.*  The parties have now submitted supplemental briefing in response to the court's order. *See* ECF Nos. 39 & 40.

  Emergy has two principal arguments against the court's proposed approach.  First, Emergy argues the approach "could force Emergy to defend itself against statute of limitations challenges." Emergy Suppl. Br. at 11.  Emergy does not specify which of its state and federal claims might be subject to such challenges.  In any event, the court disagrees Emergy's compulsory counterclaims may face this hurdle. *See Malaivanh v. Humphreys Coll.*, No. 16-1081-KJM, 2017 WL 3503386, at *2 (E.D. Cal. Aug. 16, 2017) (explaining federal law permits tolling of compulsory counterclaims from moment plaintiff files complaint, and California rules "toll the counterclaim's statute of limitations from the moment [plaintiff] file[s] her original complaint regardless of the counterclaim's factual relatedness to the complaint"); *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.*, 5 Cal. App. 5th 69, 84–85 (2016), *as modified* (Nov. 30, 2016) ("[The statute of limitations] is a bar to the defendant's affirmative claim only if the period has already run when the complaint is filed. The filing of the complaint suspends the statute during the pendency of the action, and the defendant may set up his or her claim by appropriate pleading at any time.").

  Second, Emergy argues dismissing its claims and requiring it to re-file them as counterclaims in Better Meat's lawsuit "would set off a chain of unnecessary and duplicative work for both the parties and the Court." Emergy Suppl. Br. at 11.  Specifically, Emergy laments having to "re-package" its claims as counterclaims and participate in the motion to dismiss briefing that would likely follow, which in turn would force the court "to, once again, review, administratively track, potentially hold argument on, and rule on each of these filings." *Id.*  To address Emergy's efficiency concerns, the court addresses Better Meat's pending motion to dismiss below, while confirming its determination that Emergy's claims should proceed as counterclaims in Better Meat's first-filed suit.

## I. BETTER MEAT'S 12(B)(6) MOTION TO DISMISS

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

### B. Discussion

Emergy asserts ten claims. Six claims are against Better Meat and Augustus Pattillo: (1) trade secret misappropriation under the federal Defend Trade Secrets Act (DTSA) (18 U.S.C. § 1836), *see* Compl. ¶¶ 85–101; (2) trade secret misappropriation under the California Uniform Trade Secret Act (CUTSA) (Ca. Civ. Code § 3426), *see id.* ¶¶ 102–119; (3) unfair competition (Cal. Bus. & Prof. Code § 17200), *see id.* ¶¶ 120–124; (4) unjust enrichment, *see id.* ¶¶ 125–128; (5) correction of inventorship (35 U.S.C. § 256), *see id.* ¶¶ 129–135; and (6) conversion, *see id.* ¶¶ 136–142. Two claims are against Pattillo only: (7) breach of contract, *see id.* ¶¶ 143–153; and (8) breach of implied contract, *see id.* ¶¶ 154–159. And two claims are against Better Meat only:

3

(9) inducement to breach of contract, *see id.* ¶¶ 160–167; and (10) tortious interference, *see id.* ¶¶ 168–169.

Better Meat and Pattillo move to dismiss nine of Emergy's claims, excluding only the breach of contract claim against Pattillo. Better Meat packages its arguments into four categories, addressing Emergy's (1) inventorship claims, *see* Mot. at 15–19; (2) conversion claim, *see id.* at 19–20; (3) misappropriation claims, *see id.* at 20–21; and (4) remaining common-law claims, *see id.* at 21–26. The court addresses these arguments below.

### 1. Emergy's Inventorship Claims

Invoking 35 U.S.C. § 256, Emergy requests that its co-founders, Drs. Tyler Huggins and Justin Whiteley, be substituted as the inventors of the '137 patent or added as joint inventors. *See* Compl. ¶¶ 129–135. Section 256 states:

> (a) CORRECTION.—Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> (b) PATENT VALID IF ERROR CORRECTED.—The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256. This section "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997). Specifically, it "addresses two types of inventorship errors—misjoinder and nonjoinder." *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019) (citation omitted). "Misjoinder is the error of naming a person as an inventor who is not an inventor; nonjoinder is the error of omitting an inventor." *Id.* (citation omitted). "Through claims of misjoinder and

4

nonjoinder together, § 256 allows complete substitution of inventors." *Id.* (internal quotation marks, citations, and footnote omitted).

Before analyzing Emergy's inventorship claims, the court first outlines the relevant factual allegations.

          a)      Background

Drs. Huggins and Whiteley founded Emergy in 2015. Compl. ¶ 12. They were Ph.D. students at the time. *Id.* As Ph.D. students, Huggins and Whiteley published articles and won multiple awards for their research on mycelium. *Id.* Between October 2016 and May 2017, Augustus Pattillo expressed interest in Dr. Huggins' work and repeatedly asked about job opportunities with Emergy, including twice offering to work for Emergy without pay. *Id.* ¶¶ 19–23. Pattillo had a bachelor's degree in Environmental Studies/Ecology and Evolutionary Biology from the University of Colorado Boulder, *id.* ¶ 19, but he did not have professional training as a microbiologist or prior experience cultivating or processing mycelium, *id.* ¶ 39. Emergy eventually offered Pattillo a job as a "junior lab technician intern" and later selected him for a research fellowship. *Id.* ¶¶ 18, 24–25, 32–36. As a condition of his employment, Emergy required Pattillo to sign a nondisclosure agreement (NDA). *Id.* ¶¶ 24–25, 29. Emergy began sharing confidential information with Pattillo in May 2017, shortly after Pattillo returned the signed NDA. *Id.* ¶¶ 29–31.

Pattillo began his fellowship with Emergy in October 2017. *Id.* ¶ 36. Because Pattillo "was not a professionally trained microbiologist, nor did he have any prior experience using methods of cultivating or processing mycelium like those used by Emergy," his work was "confined to being trained on how to perform Emergy's confidential techniques, doing certain experiments using those techniques, and performing other tasks customary for a junior lab technician." *Id.* ¶ 39. During his employment with Emergy, and because he signed the NDA, Pattillo had access to substantial amounts of Emergy's confidential information, including information on Emergy's innovative pressing and drying techniques that produced its textured mycelia. *See id.* ¶¶ 41–48. Pattillo was also "aware of and involved in" Emergy's alternative meat applications for its textured mycelium, and he "frequently discussed it with Drs. Huggins

5

and Whiteley." *Id.* ¶ 54. Emergy started making alternative meat "no later than April 30, 2018." *Id.* Five days later, on May 5, 2018, Pattillo asked Drs. Huggins and Whiteley to make him a cofounder and one-third shareholder of Emergy. *Id.* ¶ 56. Drs. Huggins and Whiteley declined, explaining they "did not believe he brought substantive value to the company beyond his duties as a junior lab technician." *Id.* Pattillo quit that same day. *Id.*

Pattillo joined The Better Meat Co. as its "CTO [Chief Technology Officer] and co-founder in May 2018—the same month he abruptly stopped conducting research for Emergy." *Id.* ¶ 57. Four months later, on September 20, 2018, Better Meat filed a provisional patent application "which included Emergy confidential and trade secret information and which incorrectly listed Mr. Pattillo as the inventor." *Id.* ¶ 60. In reliance on that provisional patent application, Pattillo later submitted U.S. Patent Application No. 16/578,099 ('099 application), for which he sought, and was granted, expedited review. *Id.* The '099 application issued as U.S. Patent No. 11,058,137 ('137 patent) on July 13, 2021, with Pattillo listed as the sole named inventor and Better Meat listed as the assignee. *Id.* ¶ 67; *see also* '137 Patent Abstract, Compl. Ex. 2, ECF No. 1-2 (explaining patent covers shelf-stable protein food ingredients comprising "cultured fungal biomass and a limited amount of water," "food products comprising the shelf-stable protein food ingredients," and methods of the ingredients' production and use"). Emergy alleges:

> The '137 patent covers the same mycelium harvesting methods and mycelium-based food products that Mr. Pattillo learned from Drs. Huggins and Whiteley during his time conducting research for Emergy. Indeed, the specification and claims of the '137 patent describe specific trade secret and confidential information from Drs. Huggins and Whiteley's confidential electronic lab notebook documenting their research[.]

Compl. ¶ 68; *see also id.* ¶ 69 (providing six pages of examples). Emergy thus moves this court to substitute Drs. Huggins and Whiteley as the inventors of the '137 patent or to add them as joint inventors. *See id.* ¶¶ 129–135.

/////

b)      Discussion

i)      Sole Inventorship Claim

Better Meat argues Emergy's sole inventorship claim should be dismissed because Emergy "does not come close" to alleging "clear and convincing facts" demonstrating Drs. Huggins and Whiteley conceived all thirty-three claims in the '137 patent. *See, e.g.*, Mot. at 15 (arguing complaint does not reference "factual proof that would establish that [Emergy] invented any of the claims" or "come close to alleging clear and convincing facts showing that anyone other than Mr. Pattillo invented" the '137 patent). Better Meat also submits Emergy fails to demonstrate that Drs. Huggins and Whiteley "conceived 'all limitations of the claimed invention' as part of a single 'idea' at a single point in time." *See id.* at 16–17 (citing *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000) & *Dawson v. Dawson*, 710 F.3d 1347, 1352 (Fed. Cir. 2013)).

The court is not persuaded. First, it is true sole inventorship claims generally must be proven by clear and convincing evidence, *see Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001), but this does not mean Emergy must allege "clear and convincing facts" to survive a motion to dismiss, *see generally Iqbal*, 556 U.S. 662; *CODA*, 916 F.3d at 1359 ("[W]e conclude that Plaintiffs' correction-of-inventorship claims are plausible."); *Nw. Univ. v. PanaceaNano, Inc.*, No. 20-5729, 2021 WL 4401442, at *6 (N.D. Ill. Sept. 27, 2021)("It is true that an inventorship claim must be proven by clear and convincing evidence. However, a Rule 12(b)(6) motion tests the complaint's sufficiency under the federal pleading standards applicable to a complaint filed before any discovery has been taken." (citations and internal quotation marks omitted)).

Second, courts assessing sole inventorship claims at the motion to dismiss stage need not mine the complaint for factual allegations concerning each of the patent's claims. *See CODA*, 916 F.3d at 1358–60 (vacating and remanding district court's dismissal and finding putative inventors plausibly alleged claims for complete substitution of inventorship and joint inventorship without referencing any claim in any of thirteen patents at issue). *Contra* Mot. at 16 ("To state a claim for substitution of inventors pursuant to 35 U.S.C. § 256, a plaintiff must show that it conceived of ***every claim of the patent*** . . . ." (internal citation, quotation marks, and alterations

7

omitted; emphasis in the original)).[1]  Rather, for a complete substitution of inventorship claim, the court asks whether the allegations in the complaint "allow the reasonable inference that [plaintiff] conceived the invention of the [subject] patent and that [defendant] did not." *CODA*, 916 F.3d. at 1359 (citing *Iqbal*, 556 U.S. at 678); *Acromed*, 253 F.3d at 1379 ("Conception is the touchstone of inventorship." (citation omitted)).

Emergy's well-pleaded facts, accepted as true, support the reasonable inference that Drs. Whiteley and Huggins, and not their short-term intern and research fellow, conceived of the food ingredients, food products, and methods described in the '137 patent. *Cf. CODA*, 916 F.3d at 1359 (finding plaintiff's correction-of-inventorship claims plausible with particular focus on, e.g., defendant's "eagerness to meet" with plaintiff, "the timing of [defendant's] distancing itself from [plaintiff]," and the timing of "its filing for the [relevant] patent"). Pattillo twice contacted Dr. Huggins to offer his services at no cost. *See* Compl. ¶¶ 22–23. At the time, Pattillo lacked relevant training and experience. *See id.* ¶¶ 30, 39. Less than a year after being offered the opportunity to work with Emergy, Pattillo asked to become a one-third shareholder, and abruptly abandoned his research fellowship when Emergy denied his request. *See id.* ¶ 56. Within four months of his departure, Pattillo had co-founded and become the CTO of Better Meat, and under his leadership Better Meat had filed its provisional patent application. *See id.* ¶¶ 56, 57, 60. That provisional patent application culminated in the '137 patent, whose claims overlap substantially

---

[1] The six cases Better Meat cites in support of its argument are unpersuasive. Three of the six are Federal Circuit cases involving post-judgment appeals of patent interference claims. *See Dawson v. Dawson*, 710 F.3d 1347, 1352 (Fed. Cir. 2013); *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000); *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994) (all cited in Mot. at 16–17). The other three cases are non-binding district court cases, and this court disagrees with their interpretation of the circuit authority they cite. Specifically, each of the three cases purports to articulate the rule for sole inventorship in reliance on a passage from Federal Circuit authority that does not discuss sole inventorship. *See Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, No. 04-9014, 2008 WL 8627085, at *7 (C.D. Cal. June 9, 2008) (citing *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358–59 (Fed. Cir. 2004)); *James v. J2 Cloud Servs. Inc.*, No. 16-5769, 2019 WL 2304157, at *5 (C.D. Cal. May 29, 2019) & *CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*, 57 F. Supp. 3d 118, 122 (D. Mass. 2014) (both citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998)). To the extent these passages from the Federal Circuit do bear on sole inventorship claims, they do not require claim-by-claim analysis at the motion to dismiss stage. *See CODA*, 916 F.3d at 1359.

with content in Emergy's electronic lab notebook. *See* '137 Patent at 2 (identifying the '925 provisional patent application as "related" to the '137 patent); *see also generally* Compl. ¶ 69. At this stage of the litigation, these allegations allow the reasonable inference that Drs. Whiteley and Huggins conceived the subject matter of the '137 patent and Pattillo did not.

ii) Joint Inventorship Claim

Turning to Emergy's joint inventorship claim, the court undertakes a two-part inquiry. First, the court asks whether the allegations in the complaint "allow the reasonable inference that [plaintiff] made a more-than-insignificant contribution to the conception of at least one claim" of the patent. *CODA*, 916 F.3d at 1359; *see id.* at 1358 (joint inventor "need not make the same type or amount of contribution to the invention nor contribute to every claim—a contribution to one claim is enough." (internal quotation marks and citation omitted)). Second, the court asks whether the allegations in the complaint allow the reasonable inference that there was some element of joint behavior. *See Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992); *see also CODA*, 916 F.3d at 1359-60 (outlining facts satisfying "collaboration requirement").

Emergy has plausibly stated an alternative claim for joint inventorship. Better Meat's argument to the contrary relies on a misunderstanding of the collaboration requirement. *See* Mot. at 19; Reply at 11 (arguing Emergy's joint inventorship claim fails because "[p]laintiff specifically *disclaims* any collaboration between itself and Mr. Pattillo" (citing Compl. ¶¶ 38–39 (emphasis in original))). *But see, e.g.*, *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004) (noting collaboration is satisfied when, for example, one inventor sees another's report "and build[s] upon it" or when one inventor "hear[s] another's suggestion at a meeting" (quoting *Kimberly-Clark Corp.*, 973 F.2d at 917)); *Intel Corp. v. Tela Innovations, Inc.*, No. 18-2848, 2019 WL 2476620, at *5 (N.D. Cal. June 13, 2019) ("Even where one inventor is wholly unaware that his or her materials are being used by another inventor, the element of joint behavior can be satisfied." (internal quotation marks and citation omitted)). Emergy has plausibly alleged Pattillo "directly observed Emergy's highly confidential and proprietary cultivation process and procedures." Compl. ¶ 37; *see also, e.g., id.* ¶ 42 ("Mr. Pattillo had full access to the small

9

laboratory room where Emergy was conducting its confidential research."); *id.* ¶ 43 ("Mr. Pattillo also had access to the master electronic lab notebook where Emergy maintained confidential and trade secret information[.]"). Emergy also has plausibly alleged Pattillo used those observations to apply for the '137 patent. *See id.* ¶ 68 ("The '137 patent covers the same mycelium harvesting methods and mycelium-based food products that Mr. Pattillo learned from Drs. Huggins and Whiteley during his time conducting research for Emergy."); *id.* ¶ 69 (providing six pages of examples of the overlap between '137 patent and Emergy's research).

Emergy has plausibly stated claims for sole and joint inventorship; both claims may be included as counterclaims in Better Meat's first-filed suit.

### 2.    Emergy's Conversion Claim

Better Meat argues Emergy fails to state a claim for conversion for two independently sufficient reasons. First, Better Meat argues Emergy "fails to allege that it invented the ['137] patent" and therefore fails to allege ownership as required for conversion. Mot. at 20; *see Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 45 (2010), *as modified on denial of reh'g* (May 21, 2010) ("The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." (internal citations and quotation marks omitted)). But as discussed above, Emergy has plausibly alleged Drs. Whiteley and Huggins invented the subject matter of the '137 patent, and Better Meat's first argument is unsuccessful for that reason.

Better Meat's second argument, that federal patent law preempts Emergy's conversion claim, is more persuasive. *See* Mot. at 20 (arguing conversion claim preempted because it "is dependent on a determination of patent inventorship" (internal citation and quotation marks omitted)); Reply at 11–12. "[T]he field of federal patent law preempts any state law that purports to define rights based on inventorship." *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999); *see Ultra–Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005) ("Federal Circuit law governs whether federal patent law preempts a state law claim"); *Regents of Univ. of California v. Chen*, No. 16-7396, 2017 WL 3215356, at *7

10

(N.D. Cal. July 26, 2017) (observing preemption applies when court is "unable to resolve the state law claims without making a determination regarding the plaintiff's claim to inventorship"). A sister court has explained how this general principle applies "[i]n the specific context of a conversion claim":

> Claims that are dependent on a determination of patent inventorship or ownership, such as a misappropriation of patent rights, are generally preempted by federal patent law. *See Smith v. Healy*, 744 F.Supp.2d 1112, 1130 (D. Or. 2010) ("Plaintiffs' proposed conversion claim does not concern Plaintiffs' tangible property but rather their intangible idea . . . therefore . . . Plaintiffs' proposed conversion claim would be preempted by [federal] patent law."). In contrast, claims that can be established without reference to patent inventorship or ownership are generally not preempted by federal patent law. *See HIF Bio, Inc. v. Yung Shin Pharms. Industrial Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010) (suggesting that plaintiffs could establish a conversion claim not preempted by federal law by basing their claim on defendants' alleged misappropriation of experiments, experimental data, and non-public drafts of papers).

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 11-1273, 2012 WL 691758, at *7 (E.D. Cal. Mar. 2, 2012), *aff'd*, 587 F. App'x 654 (Fed. Cir. 2014); *see Chen*, 2017 WL 3215356 at *7 (noting district courts "have held preempted, e.g., state law conversion claims based on allegations that defendants misappropriated intellectual property rights by securing patents from the PTO for the same subject matter as Plaintiff's patents, or by improperly omitting the plaintiff as an inventor on a patent application." (internal citations, ¶ quotation marks, and alternations omitted)).

Emergy alleges conversion by asserting it is "the rightful owner of the '137 patent [and seven patent applications]," Compl. ¶ 137, and that Better Meat and Pattillo have appropriated, illicitly assigned, and deprived Emergy of those "ownership rights and interests," *id.* ¶¶ 138–42. Emergy's entire claim therefore depends on who invented the subject matter of the '137 patent and the patent applications. *See* Opp'n at 18 (asserting patent applications "should have been assigned to Emergy and not [Better Meat] because the subject matter they contain was developed by Emergy . . . before Mr. Pattillo left for [Better Meat.]"). Put differently, this court could not resolve Emergy's conversion claim without "defining rights based on inventorship." *Am. Cyanamid Co.*, 196 F.3d at 1372. Federal patent law thus preempts Emergy's

11

conversion claim as currently pled. *Cf. HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1355 (Fed. Cir. 2010), *as amended on reh'g in part* (June 14, 2010) (finding claim for slander of title preempted where "the only property interest in which the plaintiffs allege they have title" is defined in reference to pending patent applications that allegedly list the wrong inventors, and plaintiffs' only theory of recovery therefore "requires a determination of [inventorship]"); *Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149, 160 (E.D.N.Y. 2016) ("[P]laintiffs' assertion of ownership over the subject matter of the Woodway Patents, which underlies their claim of conversion, clearly turns on a determination of inventorship.").

Because the court cannot rule out the possibility that Emergy could cure this claim, if for example it can allege "misappropriation of experiments, experimental data, and non-public drafts of papers," *HIF Bio, Inc.*, 600 F.3d at 1354, Emergy may refile it as a counterclaim in Case No. 2:21-cv-02338-KJM-CKD.

### 3. Emergy's Misappropriation Claims

Both sides agree the court should analyze the sufficiency of Emergy's trade secret misappropriation claims under the DTSA and CUTSA together. *See* Mot. Dismiss at 20; Opp'n at 19 n.9. "To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" *Advanced BioTech, LLC v. BioWorld USA, Inc.*, No. 19-1215, 2020 WL 5797929, at *3 (E.D. Cal. Sept. 29, 2020) (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018)); *see also Deerpoint Grp., Inc. v. Agrigenix, LLC*, 393 F. Supp. 3d 968, 978–80 (E.D. Cal. 2019) ("apply[ing] the DTSA and the CUTSA consistently" and denying motion to dismiss both claims for the same reasons).

Better Meat addresses only the first two elements, arguing Emergy's "only allegations that [Better Meat] used any of [Emergy's] supposed trade secrets involve [Better Meat's] use of its own Patent." Mot. at 20; *see also id.* ("Since [Emergy] cannot show that it conceived th[e] claims [of the '137 patent] . . . it cannot show that it treated those claims as trade secrets and cannot

preclude [Better Meat] from practicing its own lawfully-issued Patent."); Reply at 12 ("Insofar as the alleged trade secrets at issue consist of the subject matter of the ['137] Patent, the misappropriation claim fails for the same reason as Plaintiff's inventorship claim: Plaintiff has not pleaded that it conceived or possessed the technology at issue.").

Again, as explained above, Emergy has plausibly alleged Drs. Whiteley and Huggins are the sole inventors of the '137 patent. Those allegations plausibly support Emergy's allegation that Better Meat's application for the '137 patent evidences misappropriation. The only question, then, is whether Emergy also plausibly alleges it treated the subject matter of that patent as trade secret information. It does. *See, e.g.*, Compl. ¶ 45 (pointing to Emergy grant proposal that "show[ed] how Drs. Huggins and Whiteley were able to create mycelium with preserved textural structures" and outlining the "several measures [Emergy took] to protect the confidentiality and secrecy of [this] information"); *id.* ¶ 108 (alleging Emergy limited access to its physical laboratory space and only allowed "people operating under an NDA" to access its master electronic lab notebook); *id.* ¶ 17 (alleging master electronic lab notebook contained "pressing and drying parameters" and "textural properties (e.g., densities, porosities, and firmness)" produced by those parameters; the master electronic notebook thus "expressly documented commercially significant confidential information about the innovative mycelium harvesting processes and resulting mycelium products that Drs. Huggins and Whiteley discovered"); *id.* ¶ 29 (explaining Emergy began sharing confidential information with Pattillo only after Pattillo signed an NDA).

Accepting Emergy's allegations as true, as the court must at this stage, *see Iqbal*, 556 U.S. at 678–79, Emergy has plausibly alleged claims for misappropriation under the DTSA and CUTSA and each may be included as a counterclaim in Better Meat's first-filed suit.

**4.  CUTSA Preemption**

Better Meat argues CUTSA preempts Emergy's common-law claims for unfair competition, unjust enrichment, breach of implied contract, inducement to breach of contract and tortious interference. *See* Mot. at 21–26.

13

"The general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject or, in other words, to 'occupy the field.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 953 (2009) (quoting *I.E. Assocs. v. Safeco Title Ins. Co.*, 39 Cal. 3d 281, 285 (1985)). CUTSA has a "comprehensive structure and breadth," *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003), and courts have found "that breadth suggests a legislative intent to preempt the common law," *I.E. Assocs.*, 39 Cal. 3d at 285; *see SilvacocData Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011) ("[A] prime purpose of [CUTSA] law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value.'").

CUTSA's express preemption provision provides in relevant part:

> (a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.
>
> (b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

Cal. Civ. Code § 3426.7. CUTSA thus "expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation." *K.C. Multimedia*, 171 Cal. App. 4th at 954. "At the same time, [section] 3426.7 implicitly preempts alternative civil remedies based on trade secret misappropriation." *Id.*

Stated plainly, CUTSA preempts a claim based on the "same nucleus of facts as the misappropriation of trade secrets claim." *Id.* at 958 (adopting rule applied in *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)). Applying this test, courts have held CUTSA may preempt various claims, including claims for conversion, quantum meruit, unjust enrichment, unfair competition as well as intentional and negligent misrepresentation,

14

where the wrongdoing alleged in connection with such claims is the misappropriation of trade secrets. *Id.* (holding claims for breach of confidence, interference with contract, and statutory unfair competition preempted because they were based on same nucleus of facts as trade secrets claim); *see SunPower Corp. v. SolarCity Corp.*, No. 12-694, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) (collecting cases); *Digital Envoy*, 370 F. Supp. 2d at 1035 (claims for unjust enrichment and unfair competition based on same nucleus of facts); *Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, 318 F. Supp. 2d 216, 220 (D. Del. 2004) (finding CUTSA preempted claims for conversion and unjust enrichment "based entirely on the same factual allegations" as trade secrets claim); *cf. Leatt Corp. v. Innovative Safety Tech., LLC*, 09-1301, 2010 WL 2803947, at *6 (S.D. Cal. July 15, 2010) (CUTSA does not preempt claims of unfair competition and tortious interference "based on more than just the misappropriation of Plaintiff's trade secrets").

As reviewed above, Emergy's DTSA and CUTSA claims allege Better Meat misappropriated "[t]he various processes, materials, product properties, product property ranges, and lab equipment that Drs. Huggins and Whiteley used to create their innovative textured mycelial masses" by acquiring these trade secrets from Pattillo; by using them to "build their mycoprotein fermentation facility," to "make the competing 'Rhiza' product, and to build its competing business"; and by disclosing them "to the general public by filing patent applications." Compl. ¶¶ 105, 112–14. To the extent Emergy's common-law claims rely on this "nucleus of facts," CUTSA preempts those claims. The court thus considers which of Emergy's claims, if any, CUTSA preempts.

     a)  Breach of Implied Contract

Emergy alleges that to "the extent the NDA is not a valid and enforceable contract," Emergy had a contract implied in fact with Pattillo,[2] which he breached by disclosing Emergy's

---

[2] Emergy technically alleges Pattillo breached their "implied contract." Compl. ¶¶ 155, 158. The Supreme Court of California has used the phrases "implied contract" and "contract implied in fact" interchangeably. *See, e.g.*, *Retired Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011); *accord* 1 Witkin, Summary of Cal. Law (11th ed. 2022) Contracts, § 103 (noting implied contracts are "more accurately called contracts implied in fact").

15

confidential information. *See id.* ¶¶ 154–159. Emergy seeks damages as a result. *Id.* ¶ 159. Better Meat does not dispute that a breach of contract claim falls outside of CUTSA preemption. Nor could it. *See* Cal. Civ. Code § 3426.7(b)(1). Better Meat instead, incorrectly, equates implied-in-fact contracts with quasi contracts, citing no authority in support, and argues quasi-contract claims are not contract claims at all. *See* Reply at 14; *contra, e.g., McGough v. Univ. of San Francisco*, 214 Cal. App. 3d 1577, 1584 (1989) ("Implied in fact contracts must be distinguished from implied in law (or quasi) contracts. Unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." (internal citations, quotation marks, and alterations omitted)); *Retired Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (explaining distinction between express and implied contract "reflects no difference in legal effect but merely in the mode of manifesting assent"). Emergy's claim for breach of implied contract lies outside of CUTSA's preemptive scope. *See* Cal. Civ. Code § 3426.7(b)(1) (CUTSA "does not affect contractual remedies, whether or not based upon misappropriation of a trade secret[.]"). Emergy has plausibly stated a claim for breach of implied contract and may include the claim as currently pled as a counterclaim in Better Meat's first-filed suit.

b) Preempted Claims

As explained below, CUTSA preempts Emergy's claims for unfair competition, unjust enrichment, inducement to breach of contract, and tortious interference because they are based on the same nucleus of facts as Better Meat's and Pattillo's alleged misappropriation of Emergy's trade secrets.

<u>Unfair competition</u>: Emergy does not appear to dispute that its unfair competition claim rests heavily on its allegations that Better Meat and Pattillo misappropriated its trade secrets. Emergy insists it also alleges facts not based on trade secret misappropriation, citing its allegations that Pattillo "improperly assign[ed] the '137 patent, the '099 application, the '150 application, and the '236 application to The Better Meat Co.," "improperly list[ed] himself as the sole inventor," and "breach[ed] his NDA with Emergy." Opp'n at 22–23 (citing Compl. ¶¶ 121–

16

122).  But these allegations are based on the same nucleus of facts as Emergy's misappropriation of trade secrets claim.  *Compare, e.g.*, Compl. ¶¶ 93–94, *with, e.g.*, *id.* ¶¶ 121–122.  The primary case Emergy relies on to claim otherwise, *Copart, Inc. v. Sparta Consulting, Inc.*, included allegations of unfair competition based on the defendant's "alleged fraud, negligence and other improper conduct aside from its theft of the intellectual property." 277 F. Supp. 3d 1127, 1160 (E.D. Cal. 2017).  In that case, this court found plaintiff's unfair competition claim "survive[s] CUTSA preemption to the extent [it] rel[ies] on these other, non-theft related allegations." *Id.* Here, unlike in *Copart*, there are no allegations of fraud, negligence, or other wrongdoing unrelated to Better Meat's and Pattillo's theft of Emergy's trade secrets.  As to the allegations Emergy highlights, Pattillo's listing himself as sole inventor and improperly assigning the '137 patent and patent applications are allegations of stolen intellectual property.  The same is true of the allegation that Pattillo breached his NDA with Emergy:  This breach only amounts to unfair competition because the NDA protected Emergy's alleged trade secrets.  CUTSA thus preempts Emergy's unfair competition claim, at least as currently pled.

Because the court cannot rule out the possibility that Emergy could cure this claim, Emergy may replead it as a counterclaim in Case No. 2:21-cv-02338-KJM-CKD.

<u>Unjust enrichment</u>: Emergy's unjust enrichment claim also derives from the same nucleus of facts as Emergy's misappropriation of trade secrets claim.  *Compare* Compl. ¶ 93 ("Pattillo used Emergy's trade secret information to help build a mycoprotein fermentation facility in Sacramento, to make the competing 'Rhiza' product, to build a competing business, and to wrongfully obtain patents based on Emergy's trade secrets."), *with* Opp'n at 23 (identifying as sole unjust enrichment allegation outside scope of misappropriation claims that defendants "[took] the benefit of Emergy's innovations all for their own." (citing Compl. ¶ 127)).  CUTSA therefore preempts Emergy's unjust enrichment claim, at least as currently pled. *Cf. Whiteslate, LLP v. Dahlin*, No. 20-1782, 2021 WL 2826088, at *12 (S.D. Cal. July 7, 2021) ("Plaintiff's argument rests solely on the claim that Dahlin was unjustly enriched via 'misappropriation of Slate's trade secrets and confidential business and proprietary information.'  Based on its own

words, Plaintiff's unjust enrichment claim rests on the same nucleus of facts as its misappropriation of trade secrets claim." (quoting complaint)).

Here as well, because the court cannot rule out the possibility that Emergy could cure this claim, Emergy may refile it as a counterclaim in Case No. 2:21-cv-02338-KJM-CKD.

<u>Inducement to breach of contract and tortious interference</u>: Emergy acknowledges this court has found "CUTSA . . . preempt[s] claims based on the misappropriation of confidential information that is not trade secret information." Opp'n at 25 (citing *Copart*, 277 F. Supp. 3d at 1158–60). Emergy nevertheless argues it would be "fundamentally unfair" to dismiss its inducement to breach of contract and tortious interference claims because they depend in part "on confidential information that is not trade secret." *See id.* at 25–26 (citing Compl. ¶¶ 164, 166, 169 (emphasis omitted)). In support, Emergy cites to three paragraphs in its complaint, but does not explain which portions of the paragraphs it cites mention confidential information that is not trade secret; the court discerns none. CUTSA preempts Emergy's inducement to breach of contract and tortious interference claims, as pled.

Because the court cannot rule out the possibility that Emergy could cure these claims, Emergy may refile them as counterclaims in Case No. 2:21-cv-02338-KJM-CKD.

## II. CONCLUSION

As discussed at the beginning of this order, the court finds Emergy's claims are compulsory counterclaims, and judicial efficiency is best served by dismissing this case. The court has addressed Emergy's primary argument to the contrary above and restates its conclusions here:

- Emergy has not plausibly stated a claim for unfair competition (claim 3), unjust enrichment (claim 4), conversion (claim 6), inducement to breach of contract (claim 9), or tortious interference (claim 10). Emergy may seek to amend these claims to cure the shortcomings identified above, pleading them as counterclaims in Case No. 2:21-cv-02338-KJM-CKD; and
- Emergy has plausibly stated claims for trade secret misappropriation (claims 1 & 2), correction of inventorship (claim 5), breach of contract (claim 7, uncontested), and

18

breach of implied contract (claim 8).  Emergy may include these claims as currently pled as counterclaims in Case No. 2:21-cv-02338-KJM-CKD.

This case is **dismissed.**  Emergy may file its counterclaims in Case No. 2:21-cv-02338-KJM-CKD within 21 days from the filed date of this order.  *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1418 (3d ed. 2022) ("Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will . . . dismiss the claim with leave to plead it in the prior action.").

The court **directs** the Clerk of Court to close this case and file a copy of this order in Case No. 2:21-cv-02338-KJM-CKD.

IT IS SO ORDERED.

DATED:  October 11, 2022.

CHIEF UNITED STATES DISTRICT JUDGE