J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
Jeffrey M. Theodore, Esq. (SBN: 324823)
    theodore@braunhagey.com
Robert Petraglia, Esq. (SBN: 264849)
    petraglia@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

Eric Schlabs, Esq. (*pro hac vice*)
    schlabs@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403
Facsimile: (646) 829-9403

ATTORNEYS FOR PLAINTIFF/
COUNTERDEFENDANTS
THE BETTER MEAT CO. AND
AUGUSTUS PATTILLO

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE BETTER MEAT CO.,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>EMERGY, Inc. d/b/a MEATI FOODS, PAUL VRONSKY, and BOND CAPITAL MANAGEMENT LP,<br><br>　　　　Defendants. | Case No: 2:21-CV-02338-KJM-CKD<br><br>**PLAINTIFF/COUNTERDEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:**　　February 10, 2023<br>**Time:**　　10:00 a.m.<br>**Ctrm:**　　Courtroom 3, 15th Floor<br>**Judge:**　Hon. Kimberly J. Mueller<br><br>**Complaint Filed:**　December 17, 2021 |

EMERGY, INC. d/b/a MEATI FOODS,

      Counterclaimant,

             v.

THE BETTER MEAT CO. and AUGUSTUS PATTILLO,

      Counterdefendants.

PLAINTIFF/COUNTERDEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

1

## **NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on February 10, 2023 at 10:00 a.m. in Courtroom 3 of the

4

above-entitled Court, Plaintiff/Counterdefendant The Better Meat Co. ("BMC") and

5

Counterdefendant Augustus Pattillo will and hereby do move for an order dismissing the claims

6

asserted by Defendant/Counterclaimant Emergy, Inc.

7

The motion will be based upon the Memorandum of Points and Authorities, the Court's

8

files and records in this action, and upon any further evidence and argument that the Court may

9

receive at or before the hearing.

10

11

Dated:  December 16, 2022                     Respectfully submitted,

12                                              BRAUNHAGEY & BORDEN LLP

13

14                                              By:   */s/ Jeffrey M. Theodore*
                                                        Jeffrey M. Theodore

15                                              *Attorneys for Plaintiff/Counterdefendant*
                                                *The Better Meat Co. and Counterdefendant*
16                                              *Augustus Pattillo*

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

<u>PAGE(S)</u>

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

      A.     The Parties ........................................................................................... 2

      B.     Defendant's Efforts to Interfere with BMC's Fundraising ..................................... 3

      C.     Procedural History ............................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.     DEFENDANT CANNOT AVOID THIS COURT'S RULING THAT ITS
PARASITIC STATE-LAW CLAIMS ARE PREEMPTED BY CUTSA ......................... 5

      A.     Defendant's State-Law Claims Are Still Preempted Because They Still Arise Out of
the Same Nucleus of Fact ....................................................................... 5

      B.     Defendant's Attempts to Plead Around CUTSA Preemption Are Unavailing ....... 8

            1.     CUTSA Still Preempts Defendant's State-Law Counterclaims Even Though
Defendant Now Claims that Some of the Information Does Not Rise to the
Level of a Trade Secret ............................................................... 9

            2.     Defendant's Pleading Defeats Its Attempt to Distinguish Confidential and
Trade Secret Information ........................................................... 10

      C.     Dismissal Should Be with Prejudice ........................................................ 12

II.    DEFENDANT'S REIMAGINED CONVERSION CLAIM STILL FAILS ................... 12

III.   THERE IS NO CAUSE OF ACTION IN CALIFORNIA FOR "UNJUST
ENRICHMENT" ........................................................................................ 14

CONCLUSION ................................................................................................................. 14

1

# **TABLE OF AUTHORITIES**

2

**CASES**                                                                   **PAGE(S)**

3
4

*A.T. by & through L.T. v. Dry Creek Joint Elementary Sch. Dist.*,
  No. 16-CV-02925-MCE-DB, 2017 WL 2654854 (E.D. Cal. June 20, 2017) ..................... 4, 5, 12

5

*Advanced Modular Sputtering v. Superior Court*,
  132 Cal. App. 4th 826 (2005) ........................................................................................ 8

6
7

*AmerUS Life Ins. Co. v. Bank of Am.*,
  143 Cal. App. 4th 631 (2006) ...................................................................................... 13

8
9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................... 4

10

*Avago Techs. U.S. v. Nanoprecision Prod.*,
  No. 16-CV-03737-JCS, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017)............................. 10

11
12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................... 4

13
14

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) (dismissing............................................................................ 5

15

*Chang v. Biosuccess Biotech Co.*,
  76 F. Supp. 3d 1022 (C.D. Cal. 2014) ............................................................................ 11

16
17

*Copart, Inc. v. Sparta Consulting, Inc.*,
  277 F. Supp. 3d 1127 (E.D. Cal. 2017) ........................................................................ 9, 12

18
19

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ............................................................................................ 4

20

*Farhang v. Indian Inst. of Tech., Kharagpur*,
  No. C-08-02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010)........................... 12

21
22

*Five Star Gourmet Foods, v. Fresh Express*,
  No. 19-CV-05611-PJH, 2020 WL 513287 (N.D. Cal. Jan. 31, 2020)............................. 9

23
24

*Guillen v. Sullivan*,
  No. 19-CV-00957-DAD, 2020 WL 1667060 (E.D. Cal. Apr. 3, 2020) ..................... 4, 12

25

*Henry Schein v. Cook*,
  No. 16-CV-03166-JST, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017)............................. 12

26
27

*Hill v. Roll Int'l. Corp.*,
  195 Cal. App. 4th 1295 (2011) ..................................................................................... 14

28

*Jardin v. Datallegro*,
No. 10-CV-2552-IEG WVG, 2011 WL 1375311 (S.D. Cal. Apr. 12, 2011) ........................... 9, 10

*K.C. Multimedia, Inc. v. Bank of Am.,*
*Tech. & Ops.*, 171 Cal. App. 4th 939 (2009) ................................................................ 5, 7, 8, 9

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ....................................................................................................... 5

*MedioStream v. Microsoft Corp.*,
869 F. Supp. 2d 1095 (N.D. Cal. 2012) ...................................................................... 12, 13

*New World Mortg. v. TD Bank*,
No. 11-CV00755, 2012 WL 13014965 (C.D. Cal. Jan. 3, 2012) ...................................... 13

*Peralta v. California Franchise Tax Bd.*,
124 F. Supp. 3d 993 (N.D. Cal. 2015) ............................................................................. 12

*Sanchez Ritchie v. Sempra Energy*,
No. 3:10-CV-1513-CAB-KSC, 2017 WL 4169706 (S.D. Cal. Sept. 20, 2017) ................... 13

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (2010) .......................................................................................... 5, 9

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .............................................................................................. 4

*Strasberg v. Odyssey Grp.*,
51 Cal. App. 4th 906 (1996) ............................................................................................. 13

*SunPower Corp. v. SolarCity Corp.*,
No. 12–CV–00694–LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ........................... 9

**STATUTES**

35 U.S.C. § 256 ........................................................................................................................ 14

Cal. Civ. Code § 3426.7(a), (b) ................................................................................................. 5

PLAINTIFF/COUNTERDEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

1   Plaintiff/Counterdefendant The Better Meat Co. ("BMC") and Counterdefendant Augustus

2   Pattillo respectfully submit this Memorandum in support of their Motion to Dismiss.

3   **INTRODUCTION**

4   BMC is a Sacramento-based startup that invented and developed a healthy and eco-friendly

5   mycelium-based meat substitute. Defendant Emergy is a private equity backed enterprise that has

6   been trying to stamp out competition after its efforts to use mycelium to make batteries, toothpaste,

7   and snacking chips failed and it began trying to make meat alternatives instead.

8   After Defendant began interfering with BMC's efforts to seek investment by falsely

9   claiming that it owned BMC's patent and that BMC had misappropriated its information and ideas,

10   BMC sued Defendant in this Court. Ten days later, Defendant filed an array of ten compulsory

11   counterclaims in a separate action before Judge Shubb, thereby multiplying the proceedings,

12   necessitating reassignment of that case, and forcing extended briefing. The Court overruled

13   Defendant's "lament[ations] [about] having to 're-package' its claims as counterclaims," dismissed

14   that case, and ordered Defendant to re-file its counterclaims herein. (No. 21-cv-02417, ECF No. 42

15   at 2, 19.) The Court also trimmed Defendant's case to its inventorship, trade secrets, and contract

16   claims – holding that Defendant's remaining state-law claims were preempted by CUTSA because

17   they relied on the same "nucleus of . . . allegations of stolen intellectual property." (*Id*. at 17.)

18   Defendant now seeks to re-complicate this case and increase the burden on the Court and

19   expense to BMC by attempting to plead *thirteen* counterclaims, including by re-alleging every one

20   of the state-law claims the Court dismissed. But a review of Defendant's revised pleading

21   demonstrates that all of its claims still rely on the same core theory: that BMC and Mr. Pattillo

22   misappropriated Defendant's supposed information, innovations, experimental results, and

23   discoveries, used them to make a competing product, and disclosed them in patent applications. As

24   a result, under the Court's existing holding, CUTSA preemption still applies.

25   Defendant attempts to save its unjust enrichment, unfair competition, tortious interference,

26   and inducement to breach of contract claims from preemption by claiming that certain language in

27   one of their government submissions is confidential and proprietary information but not a trade

28   secret. That fails for two reasons. First, preemption applies regardless, because CUTSA is the sole

remedy for claims of misappropriation of confidential information, whether or not it satisfies the statutory definition of a trade secret. And second, Defendant's own pleading reproduces explicit language from that very same government submission contradicting Defendant's allegation that it distinguished between trade secrets and other sorts of confidential information. This confirms that all of Defendant's claims arise from a common nucleus of fact and that the non-CUTSA state-law claims must be dismissed.

In an equally unavailing effort to save their conversion claim, Defendant pleads a new theory of conversion: that Mr. Pattillo took physical samples and documents out of the lab at the Department of Energy. Defendant does not explain how it discovered this only now, four and a half years after Mr. Pattillo's departure and a year and half after they first made their accusations of misappropriation. Regardless, its conversion claim should be dismissed because the only value of the samples and other materials is in any embedded intellectual property, which is governed by CUTSA.

The Court should reject Defendant's attempt to re-introduce the claims it has already dismissed and dismiss Defendant's claims for unjust enrichment, unfair competition, conversion, tortious interference, and inducement to breach of contract with prejudice.

## BACKGROUND

### A.  The Parties

As detailed in its previous motions, BMC is a Sacramento-based startup that was founded in early 2018 by Paul Shapiro, Joanna Bromley, and Adam Yee to create next-generation animal-free protein. (ECF No. 1 ("Compl.") ¶¶ 1, 15.) BMC is in the process of raising Series A funding to build a facility that has the capacity to produce its ingredients at a commercial scale. (*Id.* ¶ 1.) BMC has received four United States patents, including U.S. Patent No. 11,058,137 (the "First BMC Patent") for novel, animal-free protein that can be used as a shelf-stable alternative meat.

Defendant Emergy was founded in 2015 to carbonize mycelium for use in batteries. (*Id.* ¶ 20.) Since 2015, Defendant has used its significant venture capital backing to cycle through various focuses, at no point obtaining any patents or launching a successful business model. (*Id.* ¶ 22.) In June 2019, Defendant changed its business model to focus on animal-free meat and changed its

1  d/b/a from Emergy to "Meati Foods." (*Id.* ¶ 23.) Defendant has never attempted to patent the

2  subject matter of BMC's patents, and the PTO has denied all of its patent applications because they

3  are not novel.

4      **B.     Defendant's Efforts to Interfere with BMC's Fundraising**

5           After learning of the First BMC Patent, Defendant began using its superior financial

6  resources to try to undermine BMC's business, first by sending a series of letters accusing BMC

7  and Mr. Pattillo of trade secret misappropriation and claiming to own the First BMC Patent. (ECF

8  No. 68, Exs. 25, 27.) BMC responded by explaining that the materials Defendant had provided

9  were not "evidence" that Defendant had developed BMC's technology or owned the First BMC

10  Patent. (*Id.* Ex. 28.) Specifically, BMC pointed out that Defendant provided no evidence that it (i)

11  had identified the novel claim terms of the First BMC Patent, (ii) had shared any of the concepts at

12  issue with Mr. Pattillo, or (iii) was even actively researching meat replacement uses of mycelium

13  prior to 2019 when it pivoted away from making batteries, toothpaste, and snacking chips. (*Id.*)

14          Defendant did not respond and did not contact BMC for over three months. But after

15  learning about BMC's Series A fundraising efforts on December 8, 2021, Defendant revived its

16  disruptive efforts, which culminated in a December 15, 2021, letter to BMC threatening to file

17  litigation (the "Interference Letter") and a December 15, 2021, email from Defendant's investor,

18  Paul Vronsky, to BMC's Series A Lead Investor falsely claiming that BMC and Defendant were in

19  a "pretty significant trade secret and patent dispute" (the "Investor Email"). (ECF No. 33, Exs. 14-

20  15.) This conduct obstructed BMC's fundraising efforts.

21      **C.     Procedural History**

22          On December 17, 2021, BMC filed this action against Defendant to redress its interference

23  with BMC's Series A fundraising round and put to rest its false claim to own the First BMC Patent.

24  (ECF No. 1.)

25          Ten days later, on December 27, 2021, Defendant filed a separate case asserting ten

26  different compulsory counterclaims, all arising out of its allegations that Mr. Pattillo stole

27  Defendant's purported trade secrets. *See Emergy v. The Better Meat Co.*, No. 21-cv-02417-KJM-

28  CKD. After extensive briefing, the Court overruled Defendant's "lament[ations] [about] having to

1  're-package' its claims as counterclaims," dismissed the case, and ordered Defendant to re-file its

2  counterclaims in this case. *Id*., ECF No. 42 ("Dismissal Order") at 2, 19.) The Court found that

3  Defendant could proceed with claims for correction of inventorship, breach of contract, and trade

4  secret misappropriation but dismissed Defendant's five prolix claims for unfair competition, unjust

5  enrichment, conversion, inducement to breach of contract, and tortious interference because they

6  were preempted by CUTSA and/or patent law. (*Id.* at 10-12, 13-18.)

7          Defendant re-filed its compulsory counterclaims in this case on November 2, 2022. (ECF

8  No. 113 ("Counterclaims").) Rather than accept the Court's preemption ruling, Defendant

9  expanded its pleading to thirteen separate counterclaims, reasserting each of the claims that had

10  been dismissed and now claiming to have invented all four of BMC's patents. Defendant

11  substituted an entirely new theory on its conversion claim never before hinted at: that Mr. Pattillo

12  took samples and "other materials" out of its laboratory. (*Id*. ¶ 167.) Otherwise, Defendant does not

13  make any substantive change to the essential contours of its accusations against BMC and Mr.

14  Pattillo – that Mr. Pattillo took Defendant's trade secrets and confidential information during his

15  time at the Department of Energy, supplied them to BMC, and used them in his patent applications.

16  **<u>ARGUMENT</u>**

17          "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable

18  legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v.*

19  *Apple*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must

20  contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

21  *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

22  Courts must disregard allegations that are legal conclusions, even when disguised as facts. *See id*.

23  at 681 ("It is the conclusory nature of respondent's allegations . . . that disentitles them to the

24  presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996

25  (9th Cir. 2014).

26          Where claims are "barred as a matter of law" or where "amendment would be futile,"

27  dismissal with prejudice is appropriate. *Guillen v. Sullivan*, No. 19-CV-00957-DAD, 2020 WL

28  1667060, *1 (E.D. Cal. Apr. 3, 2020). *A.T. by & through L.T. v. Dry Creek Joint Elementary Sch.*

1   *Dist.*, No. 16-CV-02925-MCE-DB, 2017 WL 2654854, *5 (E.D. Cal. June 20, 2017); *see also*

2   *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (dismissing claim with prejudice

3   as futile where plaintiffs would have been unable to state a cognizable claim).

4   **I.    DEFENDANT CANNOT AVOID THIS COURT'S RULING THAT ITS PARASITIC
        STATE-LAW CLAIMS ARE PREEMPTED BY CUTSA**

5

6           For the same reasons this Court already dismissed them, Defendant's unfair competition,

    unjust enrichment, inducement to breach of contract, and tortious interference claims are preempted

7   by CUTSA. Defendant attempts to avoid the Court's Order dismissing these claims by

8   distinguishing "confidential and proprietary" information from "trade secret" information. These

9   arguments are legally unavailing, so each claim should be dismissed with prejudice.

10          **A.    Defendant's State-Law Claims Are Still Preempted Because They Still Arise
                Out of the Same Nucleus of Fact**

11

12          As the Court previously held in dismissing Defendant's state-law claims for unjust

13  enrichment, unfair competition, inducement to breach, and tortious interference, "stated plainly,

14  CUTSA preempts a claim based on the 'same nucleus of facts as the misappropriation of trade

15  secrets claim.'" Dismissal Order at 14 (quoting *K.C. Multimedia v. Bank of Am. Tech. & Ops.*, 171

16  Cal. App. 4th 939, 958 (2009)). That is because "CUTSA provides the exclusive civil remedy for

17  conduct falling within its terms, so as to supersede other civil remedies 'based upon

18  misappropriation of a trade secret.'" *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 250-

19  51 (2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310

20  (2011) (quoting Cal. Civ. Code § 3426.7(a), (b)). This Court therefore observed that, "applying this

21  test, courts have held CUTSA may preempt various claims, including claims for conversion,

22  quantum meruit, unjust enrichment, unfair competition as well as intentional and negligent

23  misrepresentation, where the wrongdoing alleged in connection with such claims is the

24  misappropriation of trade secrets." Dismissal Order at 14-15 (quoting and citing extensive

25  authority).

26          This Court then held that Defendant's unjust enrichment, unfair competition, inducement to

27  breach, and tortious interference claims are preempted because they all arise out of the same

28  nucleus of fact: allegations that "Better Meat misappropriated '[t]he various processes, materials,

1   product properties, product property ranges, and lab equipment that Drs. Huggins and Whiteley

2   used to create their innovative textured mycelial masses' by acquiring these trade secrets from

3   Pattillo; by using them to 'build their mycoprotein fermentation facility,' to 'make the competing

4   'Rhiza' product, and to build its competing business'; and by disclosing them 'to the general public

5   by filing patent applications.'" Dismissal Order at 15. As the Court observed, all the claims are

6   based on "allegations of stolen intellectual property," and "there are no allegations of fraud,

7   negligence, or other wrongdoing unrelated to Better Meat's and Pattillo's [alleged] theft of

8   Emergy's trade secrets." *Id*. at 17. The claims are therefore preempted by CUTSA.

9        Despite Defendant's effort to revise its pleading to avoid CUTSA preemption, all the

10  factors that underlie the Court's Dismissal Order remain true of Defendant's "new" state-law

11  claims. Defendant's entire case continues to rely on the nucleus of alleged fact that Mr. Pattillo

12  supposedly took Defendant's "processes," "materials," "properties," etc., gave them to BMC, and

13  disclosed them in patent applications. (*E.g.*, Counterclaims ¶¶ 36-89, 180 ("The confidential and

14  proprietary information that BMC and Mr. Pattillo have stolen from Emergy has conferred and

15  continues to confer a benefit on BMC and Mr. Pattillo, who have used and, on information and

16  belief, continue to use this information to develop BMC's competing business . . .").) In its

17  Counterclaims, Defendant has not identified any wrongful conduct, such as fraudulent or negligent

18  misrepresentation, other than these "allegations of stolen intellectual property" to support its state-

19  law claims. (Dismissal Order at 17; *see* Counterclaims ¶¶ 166-71, 172-77, 178-82, 200-08, 209-13.)

20  And each of Defendant's "new" state-law claims continues to rely on its allegations of theft of

21  proprietary information:

| Claim | Defendant's Allegations Relying on Same Nucleus of Facts as Trade Secrets Misappropriation | Counterclaims Citation |
|---|---|---|
| **Unfair Competition**<br><br>(Count 8) | Alleging that Mr. Pattillo and BMC engaged in unfair competition by:<br><br>• "***disclosing*** and ***using*** Emergy's ***confidential and proprietary information*** in association with BMC to develop BMC's competing business"; | (¶¶ 174, 175) (emphasis added) |

| | | |
|---|---|---|
| | • "*disclosing* Emergy's *confidential and proprietary information* in association with BMC through published patent applications and issued patents" | |
| **Unjust Enrichment**<br><br>(Count 9) | Alleging that BMC and Mr. Pattillo have been unjustly enriched because:<br><br>• "[t]he *confidential and proprietary information* that BMC and Mr. Pattillo have *stolen from Emergy* has conferred and continues to confer a benefit on BMC and Mr. Pattillo'";<br><br>• "[i]t is inequitable for BMC and Mr. Pattillo to retain the benefit of Emergy's *confidential and proprietary information* without paying Emergy for it" | (¶¶ 180, 182) (emphasis added) |
| **Inducement to Breach of Contract**<br><br>(Count 12) | Alleging that BMC induced Mr. Pattillo to breach the NDA by:<br><br>• "*disclosing* Emergy's *confidential and proprietary information* to BMC"<br><br>• "*exploit[ing]* of Emergy's *confidential and proprietary information*"<br><br>• "knowingly and intentionally induc[ing] Mr. Pattillo to breach the NDA and *disclose* Emergy's *confidential and proprietary information* to BMC" | (¶¶ 205, 207) (emphasis added) |
| **Tortious Interference**<br><br>(Count 13) | Alleging that BMC intentionally interfered with Defendant's business relationships by:<br><br>• "*using confidential and proprietary information misappropriated* from Emergy to attract [its] customers" | (¶ 212) (emphasis added) |

As shown in the chart above, "the conduct at the heart" of Defendant's state-law claims continues to be "the asserted disclosure" of Defendant's information by Mr. Pattillo to BMC and BMC's alleged use of that information to develop its own competing product, file patent applications, and attract customers. *K.C. Multimedia*, 171 Cal. App. 4th at 960. That same conduct underpins Defendant's claims for trade secret misappropriation. (Counterclaims ¶¶ 115-33.) As a result, Defendant's claims are "based on the same nucleus of facts" as the trade secret claim and are preempted by CUTSA. *See K.C. Multimedia*, 171 Cal. App. 4th at 960 (undertaking same analysis).

1    In *K.C. Multimedia*, for example, the plaintiff brought claims against its former employee

2  and his new employers for breach of confidence, interference with contract, and unfair competition.

3  171 Cal. App. 4th at 945. Notwithstanding the fact that plaintiff's claims for breach of confidence,

4  interference with contract, and unfair competition were based in part on the employee's alleged

5  breach of his employment agreement with the plaintiff, the Court of Appeal held that these three

6  claims were preempted by CUTSA because, after evaluating "the complaint as a whole" the claims

7  "rest[ed] on factual allegations of trade secret misappropriation." *Id*. at 959-60 (citing *Advanced*

8  *Modular Sputtering v. Superior Court*, 132 Cal. App. 4th 826, 835, 901 (2005)). Here too, because

9  everything Defendant alleges in its revised pleading stems from this same common nucleus of

10  misappropriation, namely Mr. Pattillo's supposed theft of its proprietary information and supplying

11  of that information to BMC, Defendant's state-law claims should be dismissed with prejudice.

12        **B.      Defendant's Attempts to Plead Around CUTSA Preemption Are Unavailing**

13        In its Counterclaims, Defendant tries to plead around this Court's finding of preemption by:

14  (1) alleging that some portion of its "confidential, proprietary, and trade secret information" *may*

15  constitute merely "confidential and proprietary information" that is supposedly distinct from its

16  "trade secrets" and (2) revising its allegations that it is "is inequitable for the Better Meat Co. and

17  Mr. Pattillo to retain the benefit of Emergy's confidential, proprietary, and *trade secret*

18  *information*" to refer to "confidential and proprietary information." (*Compare* Dismissed

19  Complaint, No. 21:cv-02417, ECF No. 1 ¶¶ 121, 128, 169 (emphasis added) with Counterclaims

20  ¶¶, 174, 182, 212.) Specifically, Defendant now asserts that there may be "confidential and

21  proprietary information in its SBIR [Small Business Innovations Research Proposal]" that is "not

22  designated as trade secret information by inclusion of *vertical lines* in the side margin."

23  (Counterclaims ¶ 179, ¶ 48-49 (emphasis added).) Defendant then relies on this non-"vertical

24  line[d]," supposedly confidential yet non-trade secret information to support its ancillary state-law

25  claims. (*Id*. ¶¶ 173, 179, 201, 210.) This attempt at CUTSA evasion fails as a matter of law and on

26  the basis of the allegations in Defendant's own pleading.

27

28

1.   **CUTSA Still Preempts Defendant's State-Law Counterclaims Even Though Defendant Now Claims that Some of the Information Does Not Rise to the Level of a Trade Secret**

Defendant's attempt to evade the Court's Dismissal Order fails at the outset because CUTSA preemption is not limited to information that meets the statute's definition of a "trade secret" but to all claims based on misappropriation of confidential information. "CUTSA may preempt a claim for misappropriation of confidential information even if the information does not ultimately meet the statutory definition of a trade secret." *Copart*, *Inc. v. Sparta Consulting, Inc.,* 277 F. Supp. 3d 1127, 1158 (Mueller, J.) (citing *K.C. Multimedia*, 171 Cal. App. 4th at 958). "If the basis of the alleged property right is in essence that the information is that it is 'not . . . generally known to the public,' then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret." *SunPower Corp. v. SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012).

The reason for this is simple: CUTSA was enacted to define uniformly the circumstances in which confidential information is and is not protectable in tort. CUTSA "sweep[s] away [California's] bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information ... of value.' Central to the effort was the act's definition of a trade secret. Information that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen." *Silvaco*, 184 Cal. App. 4th at 239 n.22 (quoting Cal. Civ. Code § 3426.1); *Five Star Gourmet Foods, v. Fresh Express*, No. 19-CV-05611-PJH, 2020 WL 513287, at *15 (N.D. Cal. Jan. 31, 2020). If information that does not meet the CUTSA definition of a "trade secret" were still protectable under another common theory such as unjust enrichment or tortious interference, the "bewildering web" would remain.

Courts therefore regularly dismiss ancillary claims based on misuse of "confidential information" that does not rise to the level of a "trade secret." *Five Star Gourmet*, 2020 WL 513287, at *15 (dismissing intentional inference with contract claim as preempted even though the fact finder could determine that "the subject matter at issue is not a trade secret"); *Jardin v.*

1  *Datallegro*, No. 10-CV-2552-IEG WVG, 2011 WL 1375311, at *4 (S.D. Cal. Apr. 12, 2011)

2  ("Because they stem from alleged misappropriation of confidential information, claims III through

3  VI are preempted by the CUTSA"); *Avago Techs. U.S. v. Nanoprecision Prod.*, No. 16-CV-03737-

4  JCS, 2017 WL 412524, at *7 (N.D. Cal. Jan. 31, 2017) (finding preemption and finding that

5  "CUTSA preemption extends to claims based on the misappropriation of confidential and

6  proprietary information, regardless of whether it qualifies as a 'trade secret'").

7         The same holds here. BMC's and Mr. Pattillo's alleged taking of "confidential information"

8  must be analyzed under CUTSA, whether or not that information rises to the level of a trade secret

9  because the same nucleus of fact is at issue: misappropriation of Emergy's "processes, materials,

10  product properties, product property ranges, and lab equipment" to build BMC's "mycoprotein

11  fermentation facility" and "Rhiza product." (Dismissal Order at 15.)

12              **2.    Defendant's Pleading Defeats Its Attempt to Distinguish Confidential and Trade Secret Information**

13         Defendant's attempt to claim non-trade secret "confidential" information in its SBIR (Small

14  Business Innovation Research) proposal separately and independently fails because Defendant's

15  own quotations from the proposal show that Defendant made no distinction between its supposed

16  trade secrets and "confidential information" in its submission to the government and that any non-

17  trade secret information is also not confidential.

18         Defendant alleges that its SBIR proposal "contained trade secret information identified

19  throughout by vertical lines in the side margin" but that there is "confidential and proprietary

20  information in its SBIR proposal not designated as trade secret information by inclusion of vertical

21  lines in the side margin." (Counterclaims ¶¶ 48-49, 173, 179, 201, 210.) It relies on the latter –

22  along with its alleged trade secrets – to underpin its ancillary state-law claims. (*Id*. ¶¶ 173, 179,

23  201, 210.)

24         But the SBIR proposal, which Defendant pastes into and cites throughout its counterclaims,

25  specifies that the vertical lines refer not just to "trade secret" information but to all "proprietary

26  data" and "commercial…information." (Counterclaims ¶ 48.) Indeed, the vertical lines make no

27  distinction between "trade secret" and other "proprietary" or "confidential" information. (*Id*.) And

28

PLAINTIFF/COUNTERDEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

1  "the Government may use or disclose any information that is not appropriately marked" with those

2  "vertical line[s]." (*Id.*)

3  
4  
5  
6  
7  

> Pages 2, 5, 6, 7, 10, 12 of this document may contain trade secrets or commercial or financial information that is privileged or confidential and is exempt from public disclosure. Such information shall be used or disclosed only for evaluation purposes or in accordance with a financial assistance or loan agreement between the submitter and the Government. The Government may use or disclose any information that is not appropriately marked or otherwise restricted, regardless of source.
>
> Proprietary Data Legend: Lines, paragraphs, tables, charts, and other graphics containing trade secrets, commercial, and/or financial information are marked with a vertical line in the side margin  |  .

8          Thus, according to the express language of the SBIR proposal incorporated into

9  Defendant's own pleading, the non-vertically lined information that Defendant now says is

10  confidential but not a trade secret is actually not confidential or proprietary *at all*. Because that

11  information is free to be "disclose[d]" (*id.*), it cannot possibly support state-law claims premised on

12  misuse and disclosure of non-trade secret "confidential and proprietary information."

13  (Counterclaims ¶¶ 174, 180, 207, 212.)

14          Moreover, Defendant's use of vertical lines to designate its "trade secret," "confidential,"

15  and "proprietary" information in undifferentiated unison demonstrates that Defendant drew no

16  distinction between "trade secret" and "non-trade secret" confidential information and treated it all

17  the same. It is this whole mass of alleged information that Defendant generally alleged Mr. Pattillo

18  took and that is now the common nucleus of fact of all Defendant's counterclaims in this case.

19  Apart from their vertical lines abstraction, Defendant has not identified any substantive or subject

20  matter difference between their alleged "trade secret" and "non-trade secret" confidential

21  information. Indeed, Defendant invokes the full panoply of the "trade secret, confidential, and

22  proprietary information of a technical and business nature" found in its "SBIR proposal" to support

23  its CUTSA claim. (Counterclaims ¶ 120.) This confirms that the claims in this case arise from a

24  common nucleus of fact, and the non-CUTSA state-law claims are preempted. *Chang v. Biosuccess*

25  *Biotech Co.*, 76 F. Supp. 3d 1022, 1041 (C.D. Cal. 2014) ("If there is no 'material distinction'

26  between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the

27  [C]UTSA preempts the other claim.").

28

### C.   Dismissal Should Be with Prejudice

Because Defendant's claims are barred as a matter of law and cannot be salvaged by amendment, the Court should dismiss them with prejudice. *Guillen*, 2020 WL 1667060, at *1; *A.T. by & through L.T.,* 2017 WL 2654854, at *5. District courts regularly dismiss tort claims as preempted with prejudice where proponents are unable to successfully amend. *E.g.*, *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *11 (N.D. Cal. June 1, 2010) (dismissing unfair competition claims with prejudice as preempted); *Peralta v. California Franchise Tax Bd*., 124 F. Supp. 3d 993, 1002 (N.D. Cal. 2015) (Plaintiff's "claims . . . are based on the same nucleus of operative facts as her claim for alleged misappropriation of trade secrets claim and are pre-empted by the CUTSA. Those claims are DISMISSED WITH PREJUDICE.").

## II.   DEFENDANT'S REIMAGINED CONVERSION CLAIM STILL FAILS

Now that the Court found that "federal patent law preempts Emergy's conversion claim" (Dismissal Order at 10), Defendant has abandoned its prior conversion theory founded on supposed illicit assignment of patent applications and claims that Mr. Pattillo stole from Defendant's lab "experimental samples and certain documents" "rightfully belong[ing] to Emergy." (Counterclaims ¶¶ 166-171.) Defendant does not explain why it never previously made this allegation or how it only noticed five years after the fact that Mr. Pattillo is supposed to have removed physical items from its lab. Regardless, its new claim fails for multiple reasons.

*First*, Defendant's new conversion claim is still preempted, this time by CUTSA rather than patent law. "CUTSA preempts conversion claims unless the value of the converted property is rooted in something other than the information it contains . . . ." *Henry Schein v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017) ("HSI has not alleged how the converted documents have value other than that which is derived from their status as trade secrets. Without such a showing, the conversion claim is based on the same facts as the misappropriation of trade secrets and is therefore preempted."); *see also Copart*, 277 F. Supp. 3d at 1159 ("When the [allegedly converted] property and the alleged trade secret are . . . indistinguishable, and the property's only source of value is the trade secret information, CUTSA preempts."); *MedioStream*

1    *v. Microsoft Corp*., 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012) (finding CUTSA preempted claim

2    of conversion of property, including "documents and data and computer data discs," that was

3    indistinguishable from the alleged trade secret material).

4           Defendant does not allege that its "samples" or "documents" contain "value" distinct from

5    that of its alleged "trade secret" and other "confidential information." (Counterclaims ¶¶ 166-71.)

6    Just the opposite, Defendant describes these "materials," "textured mycelial masses," and

7    "document[s] . . .  describ[ing] properties, procedures, and parameters from Emergy's experiments"

8    as its "trade secret information." (Counterclaims ¶¶ 118, 120.) The value of Defendant's documents

9    is of course only in the information within. As to Defendant's "experimental samples," it is not

10   plausible that a now five-year-old experimental mycelium patty would have any value beyond the

11   information implicit in the experimental result. Because that information is exactly what Defendant

12   seeks to address in its CUTSA claim, its conversion claim cannot proceed.

13          *Second*, the Court should separately dismiss Count 7 because the statute of limitations bars

14   Defendant's conversion claim. "Code of Civil Procedure section 338, subdivision (c) provides for a

15   three-year statute of limitations for actions alleging conversion." *Strasberg v. Odyssey Grp*., 51

16   Cal. App. 4th 906, 915 (1996). That statute of limitations applies to conversion claims unless the

17   "defendant in a conversion action fraudulently conceals the relevant facts or . . . fails to disclose

18   such facts in violation of his or her fiduciary duty to the plaintiff." *AmerUS Life Ins. Co. v. Bank of*

19   *Am.,* 143 Cal. App. 4th 631, 639 (2006). Here, Defendant's conversion claim accrued when Mr.

20   Pattillo left the Department of Energy in May 2018. But even crediting Defendant with *BMC's*

21   filing date, Defendant sat on its hands until December 2021—over three and a half years year. For

22   that reason and because the complaint makes *no* allegation of fraudulent concealment on the part of

23   Mr. Pattillo or BMC, the conversion claim should be dismissed. *See also New World Mortg. v. TD*

24   *Bank*, No. 11-CV00755, 2012 WL 13014965, at *1 (C.D. Cal. Jan. 3, 2012) (dismissing conversion

25   claim on statute of limitations ground, finding that "Plaintiff fails to plausibly allege that Defendant

26   engaged in fraudulent concealment"); *Sanchez Ritchie v. Sempra Energy*, No. 3:10-CV-1513-CAB-

27   KSC, 2017 WL 4169706, at *4 (S.D. Cal. Sept. 20, 2017) (same).

28

1   Here, too, dismissal should be with prejudice. Defendant has already repleaded its

2   conversion claim once, only to run afoul of the same CUTSA preemption issues that doomed its

3   state-law claims the first time around. It is clear that Defendant cannot allege the taking of anything

4   but its intellectual property, which is governed by CUTSA, DUTSA, and 35 U.S.C. § 256.

5   **III.   THERE IS NO CAUSE OF ACTION IN CALIFORNIA FOR "UNJUST ENRICHMENT"**

6
7   Finally, Defendant's unjust enrichment claim should be dismissed for the independent

   reason that "[u]njust enrichment is not a cause of action" under California law. *Hill v. Roll Int'l.*

8   *Corp*., 195 Cal. App. 4th 1295, 1307 (2011) (affirming dismissal of unjust enrichment claim

9   without leave to amend because "[u]njust enrichment is not a cause of action"). Because there is no

10  such cause of action, dismissal should be with prejudice.

11  <u>**CONCLUSION**</u>

12
13  For the foregoing reasons, the Court should dismiss Counts 7 (for conversion), 8 (for unfair

   competition), 9 (for unjust enrichment), 12 (for inducement to breach of contract), and 13 (for

14  tortious interference) with prejudice.

15

16  Dated:  December 16, 2022                          Respectfully submitted,

17                                                     BRAUNHAGEY & BORDEN LLP

18

19                                                     By:   /s/ *Jeffrey M. Theodore*
                                                           Jeffrey M. Theodore
20
                                                     *Attorneys for Plaintiff/Counterdefendant*
21                                                   *The Better Meat Co. and Counterdefendant*
                                                     *Augustus Pattillo*
22

23

24

25

26

27

28

PLAINTIFF/COUNTERDEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS