1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   THE BETTER MEAT CO.,                      No. 2:21-cv-02338-KJM-CKD

12              Plaintiff,                      ORDER

13       v.

14   EMERGY, Inc. d/b/a MEATI FOODS, PAUL
     VRONSKY, and BOND CAPITAL
15   MANAGEMENT LP,

16              Defendants.

17

18

19

20          For the reasons below, the court **grants** defendant Emergy's motion to strike plaintiff

21   Better Meat's first and second claims under California's anti-SLAPP statute.

22   **I.      BACKGROUND**

23          This court has summarized the history of this action in a previous order and incorporates

24   that summary here by reference. *See* Prior Order (May 25, 2022), ECF No. 66. In short, Emergy

25   and Better Meat compete in the market for mycelial meat substitutes. Mycelial meat substitutes

26   are derived from mycelium, "the root-like structure of fungi." Compl. at 4, ECF No. 1. Emergy

27   alleges Better Meat and its founders copied or stole Emergy's trade secrets and intellectual

1  property; Better Meat alleges Emergy and its investors have used threats of litigation to stymie

2  competition and scare away Better Meat's potential investors.

3      Better Meat's complaint cites two communications.  *See generally* Compl.  First, Emergy

4  sent Better Meat a letter reiterating prior accusations of trade-secret misappropriation and unfair

5  competition.  *See* Dec. 15, 2021 Letter, Sahlsten Decl. Ex. 14, ECF No. 33-14.  Emergy expressed

6  its intent to "move forward with legal action" and "fil[e] a complaint . . . in the immediate

7  future."  *Id.*  Second, thirteen minutes after Emergy's counsel sent his letter to Better Meat, Paul

8  Vronsky, a partner at Bond Capital Management LP, an Emergy investor, sent Better Meat's

9  "lead investor" an email:

10          I wanted to give you a heads up that one of our portfolio companies,
11          [Emergy], is in a pretty significant trade secret and patent dispute
12          with a company you might be evaluating, The Better Meat Co. I don't
13          know really more than that but as a matter of friendship and courtesy,
14          I thought I would reach out and let you know. I'm happy to connect
15          with your counsel if that is helpful.

16  Vronsky Email, Sahlsten Decl. Ex. 15 at 2, ECF No. 33-15.

17      Two days later, Better Meat filed this lawsuit against Emergy, Bond Capital and Vronsky,

18  asserting state-law claims for tortious interference and unfair competition.  *See generally* Compl.

19  Emergy responded by filing an action against Better Meat, which the court dismissed with

20  instructions to Emergy to pursue a counterclaim in Better Meat's action.  *See generally* Order

21  (Oct. 12, 2022), ECF No. 108.  Emergy now moves to strike Better Meat's claims for tortious

22  interference and unfair competition based on the two communications reviewed above.  Emergy

23  argues the disputed letter and email are protected by California's litigation privilege because they

24  relate to a judicial proceeding, namely this case.  Mot. Strike at 13, ECF No. 31.

25      Better Meat sought discovery to oppose Emergy's motion to strike, ECF No. 47, which

26  this court granted in part, allowing discovery "narrowly focused on the question whether Emergy

27  had a good-faith intent of filing a lawsuit at the time of the contested communications," Prior

28  Order (May 25, 2022) at 7.  The assigned magistrate judge has overseen the discovery as

29  provided by local rule, which included a deposition of Emergy CEO Dr. Tyler Huggins, during

30  which he answered questions about his motives for the litigation and the disputed

1  communications.  Theodore Decl. Ex. 1 (Huggins Dep.), ECF No. 126–3.  Emergy also produced

2  documents, including emails from Emergy staff discussing claims against Better Meat, Emergy

3  Emails, Ex. 7, ECF No. 126–9 a draft press release, in which Emergy discusses Better Meat and

4  its alleged trade secret misappropriation, Theodore Decl. Ex. 7 (Press Release), ECF No. 126-9;

5  and responses to Better Meat's interrogatories, Interrogatory Responses, Ex. 45, ECF No. 129–

6  29.  Emergy withheld some information under assertions of attorney–client privilege.  Theodore

7  Decl. Ex. 9 (Privilege Log), ECF No. 126–11.  Better Meat moved unsuccessfully to compel

8  further depositions and responses.  *See generally* Mot. to Compel, ECF No. 70; MJ Order

9  (July 28, 2022), ECF No. 80; Prior Order (Apr. 14, 2023), ECF No. 133

10       Briefing on the motion to strike is now complete and includes Emergy's motion, Better

11  Meat's opposition, Opp'n, ECF No. 53, Emergy's reply, Reply, ECF No. 57, Emergy's

12  supplemental brief, Supp. Brief, ECF No. 67, Better Meat's supplemental brief in opposition,

13  Supp. Opp'n, ECF No. 126-1, and Emergy's supplemental reply, Supp. Reply, ECF No. 126-17.

14  **II.    LEGAL STANDARD**

15       California law permits special motions to strike under section 425.16(b) of the Code of

16  Civil Procedure "to curtail the 'disturbing increase in lawsuits brought primarily to chill the valid

17  exercise of the constitutional rights of freedom of speech and petition for the redress of

18  grievances.'"  *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 3d 1172,

19  1178–79 (C.D. Cal. 2006) (quoting Cal. Civ. Proc. Code § 425.16(a)).  The section's intended

20  targets are actions that "'masquerade as ordinary lawsuits'" but that actually are meant "to deter

21  ordinary people from 'exercising their political or legal rights or to punish them for doing so.'"

22  *Makaeff v. Trump Univ., LLC*, 725 F.3d 254, 261 (9th Cir. 2013) (quoting *Batzel v. Smith*,

23  333 F.3d 1018, 1024 (9th Cir. 2003), *superseded in part by statute on other grounds as stated in*

24  *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017)).  Actions that fit this

25  description have long been known by the acronym "SLAPP," for "strategic lawsuits against

26  public participation."  Special motions to strike are thus commonly known as "anti-SLAPP"

27  motions, and section 425.16 is known as the anti-SLAPP statute.  *Santana v. Cty. of Yuba*, No.

28  15-00794, 2016 WL 1268107, at *6 (E.D. Cal. Mar. 31, 2016) (citations omitted).

1    California courts use a two-part test to evaluate anti-SLAPP motions.  "First, a defendant

2    'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance

3    of the defendant's rights of petition or free speech.'"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

4    1097, 1110 (9th Cir. 2003) (quoting *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,

5    63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999)).  "The defendant need not show that the plaintiff's

6    suit was brought with the intention to chill the defendant's speech; the plaintiff's 'intentions are

7    ultimately beside the point.'"  *Id.* (quoting *Equilon Enters., LLC v. Consumer Cause, Inc.*,

8    29 Cal. 4th 53, 67 (2002)).  Nor does the defendant bringing the motion need to show its speech

9    was actually chilled.  *Id.* (citing *City of Cotati v. Cashman*, 29 Cal. 4th 69, 75–76 (2002)).

10   "Second, once the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to

11   demonstrate a probability of prevailing on the challenged claims.'"  *Id.* at 1110 (quoting

12   *Globetrotter Software, Inc.*, 63 F. Supp. at 1129).  If "the court determines that the plaintiff has

13   established that there is a probability that the plaintiff will prevail on the claim," the court must

14   deny the motion.  Cal. Civ. Proc. Code § 425.16(b)(1).  Plaintiffs need only make a showing of

15   minimal merit to succeed on this prong.  *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).

16   "The degree to which anti-SLAPP provisions are consistent with the Federal Rules of

17   Civil Procedure"—and thus whether and how federal district courts should entertain anti-SLAPP

18   motions—"has been hotly disputed."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.*

19   *Progress*, 890 F.3d 828, 833 (9th Cir.), *as amended*, 897 F.3d at 1224 (9th Cir. 2018).  Despite

20   some lingering uncertainty, a relatively straightforward test has emerged for anti-SLAPP motions

21   filed in federal court.  A district court must first decide whether a motion challenges the

22   complaint's "legal sufficiency" or its "factual sufficiency."  *Herring Networks, Inc. v. Maddow*,

23   8 F.4th 1148, 1156 (9th Cir. 2021).  If the motion challenges the complaint's legal sufficiency,

24   then it is "analyzed pursuant to Rule 12."  *Id.*  The plaintiff need not submit evidence, and

25   discovery is unnecessary.  *Planned Parenthood*, 890 F.3d at 834.  If the motion challenges the

26   complaint's factual sufficiency, it is "analyzed pursuant to Rule 56."  *Herring Networks*, 8 F.4th

27   at 1156.  "[D]iscovery must be allowed, with opportunities to supplement evidence based on the

1  factual challenges, before any decision is made by the court." *Planned Parenthood*, 890 F.3d at

2  834.

3        In its previous order, the court held Emergy's motion raises a factual challenge and

4  permitted discovery. *See* Prev. Order at 5–7. The court now analyzes Emergy's motion under

5  Rule 56. *Herring Networks*, 8 F.4th at 1156. First, Emergy must show the "suit arises from an

6  act in furtherance of [its] constitutional right to free speech." *Id.* at 1155 (quoting *Makaeff*,

7  715 F.3d at 261). Second, the court must grant the motion if "no reasonable jury could find for

8  [Better Meat]." *Id.* at 1155 (quoting *Metabolife Int'l v. Wornick*, 264 F.3d 832, 840 (9th Cir.

9  2001)). This standard is akin to those governing motions for summary judgment and judgment as

10  a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250–52 (1986)

11  (summary judgment standard "mirrors" standard for motions for directed verdict); *Wilcox v.*

12  *Superior Court*, 27 Cal. App. 4th 809, 823 (1994) (describing anti-SLAPP standard as similar to

13  "that used in determining a motion for a nonsuit or directed verdict"), *overruled in part on other*

14  *grounds by Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002)). The court does not

15  assess witnesses' credibility, weigh evidence or decide what most likely happened. *See Hilton v.*

16  *Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (citing *Wilson v. Parker, Covert & Chidester*,

17  28 Cal. 4th 811, 821 (2002)). It credits the plaintiff's evidence and decides whether the moving

18  defendant is entitled to dismissal "as a matter of law." *Id.* (quoting *Wilson*, 28 Cal. 4th at 821).

19  **III.   ANALYSIS**

20        Emergy contends the disputed letter and email are protected under the first part of the anti-

21  SLAPP test because they were "made in connection with an issue" considered by a judicial body.

22  Mot. Strike at 10 (quoting Cal. Civ. Proc. Code. § 425.16(e)(2)). For the second part of the anti-

23  SLAPP test, Emergy invokes California's litigation privilege, which in general protects

24  defendants from liability for communications related to pending and anticipated litigation. *See*

25  *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). Better Meat does not dispute that if Emergy can

26  invoke the litigation privilege, then Better Meat cannot prevail in its claims for tortious

27  interference and unfair competition. It argues only that Emergy cannot invoke the litigation

1    privilege.  *See, e.g.*, Suppl. Opp'n at 3–11.  The parties' dispute thus focuses on the first part of

2    the anti-SLAPP test and whether Emergy can properly invoke the litigation privilege.

3         Although "the litigation privilege and the anti-SLAPP statute are substantively different

4    statutes that serve quite different purposes," California courts have "looked to the litigation

5    privilege as an aid in construing the scope of" section 425.16(e)(2) of the anti-SLAPP statute, on

6    which Emergy relies.  *Flatley v. Mauro*, 39 Cal. 4th 299, 322–23 (2006); *see also Intermarketing*

7    *Media, LLC v. Barlow*, No. 820-00889, 2021 WL 5990190, at *5 (C.D. Cal. May 4, 2021).  The

8    court therefore begins by reviewing the litigation privilege.

9         **A.**    **California's Litigation Privilege**

10        California absolutely privileges all communications "(1) made in judicial or quasi-judicial

11   proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of

12   the litigation; and (4) that have some connection or logical relation to the action."  *Silberg*,

13   50 Cal. 3d at 212.  "The requirement that the communication be in furtherance of the objects of

14   the litigation is, in essence, simply part of the requirement that the communication be connected

15   with, or have some logical relation to, the action, i.e., that it not be extraneous to the action."  *Id.*

16   at 219–20.

17        Because "the policy of encouraging free access to the courts was so important," courts

18   have construed this privilege broadly, applying it to all publications "irrespective of their

19   maliciousness."  *Id.* at 215, 216; *see also Oei v. N. Star Cap. Acquisitions, LLC*, 486 F. Supp. 2d

20   1089, 1100 (C.D. Cal. 2006) (citing cases in which threats and coercive communications were

21   privileged when made in connection with litigation).  "Further, it applies to any publication

22   required or permitted by law in the course of a judicial proceeding to achieve the objects of the

23   litigation, even though the publication is made outside the courtroom and no function of the court

24   or its officers is involved."  *Silberg*, 50 Cal. 3d at 212.  "Any doubt as to whether the privilege

25   applies is resolved in favor of applying it."  *Adams v. Superior Court*, 2 Cal. App. 4th 521, 529

26   (1992).

27        The litigation privilege also protects communications related to future litigation

28   "contemplated in good faith and under serious consideration."  *Action Apartment Ass'n, Inc. v.*

6

1   *City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007); *see also Olsen v. Harbison*

2   191 Cal. App. 4th 325, 334–35 (2010).  "It is the contemplation of litigation that must be in good

3   faith, not the merits of the actual litigation itself that animates the litigation privilege." *Visto*

4   *Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1069–70 (N.D. Cal. 2005) (emphasis

5   omitted).  Thus, even a "groundless statement" can be privileged if the speaker anticipated

6   litigation in good faith at the time.  *Fin. Corp. of Am. v. Wilburn*, 189 Cal. App. 3d 764, 777

7   (1987).

8          For the first part of the anti-SLAPP test, California courts have held the relevancy

9   requirements of the litigation privilege—those expressed in parts three and four of the four-part

10  test above—are "analogous to the 'in connection with' standard'" in section 425.16(e)(2) of the

11  anti-SLAPP statute.  *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1266 (2008).  For the second

12  part of the anti-SLAPP test, a reasonable jury cannot find for the plaintiff if the claims arise from

13  a communication protected by the litigation privilege.  *Intermarketing Media, LLC*, 2021 WL

14  5990190, at *5.  The court turns now to the first part of the anti-SLAPP test.

15         **B.**     **Protected Activity**

16         Emergy has established the disputed letter and email were protected activity under the

17  anti-SLAPP statute and were "'reasonably relevant' to . . . contemplated litigation" for purposes

18  of the litigation privilege.  *Neville*, 160 Cal. App. 4th at 1268 (emphasis omitted) (quoting

19  *Silberg*, 50 Cal. 3d at 220).

20         The months-long history of communications between the parties shows Emergy was

21  contemplating a lawsuit in good faith when the letter and email were sent.  Emergy began

22  communicating with Better Meat in July 2021, when it accused Better Meat of using Emergy's

23  propriety information and engaging in trade secret misappropriation.  July 16, 2021 Letters,

24  Sahlsten Decl. Exs. 9–10, ECF No. 33-9 & -10.  In early December, after discovering Better Meat

25  had begun fundraising, Emergy "determined that a lawsuit would be necessary to resolve this

26  dispute."  Interrogatory Response at 9.  Emergy authorized a complaint against Better Meat on

27  December 14, one day before it sent the contested letter and email.  *Id.*  Emergy's privilege logs

1   also show its counsel had begun drafting a complaint against Better Meat on December 15.

2   Privilege Log row 280.

3        Better Meat advances several counterarguments, but none are persuasive.  Its primary

4   argument portrays the letter and email as empty threats of litigation intended to scare away Better

5   Meat's potential investors.  *See* Supp. Opp'n at 7–9.  To support this theory, Better Meat points to

6   Dr. Huggins's deposition testimony that he "did not want [Better Meat] to have continued

7   business progress."  Huggins Dep. at 150:1–5.  However, Huggins also testified he authorized the

8   letter to inform Better Meat of the impending litigation.  Huggins Dep. at 192:11–19.  Alternative

9   motivations are irrelevant so long as "one purpose" of the communication falls under the

10  privilege.  *Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal. App. 4th 1,

11  39 Cal. Rptr. 3d 547 (2006).  A defendant's malicious "motivation for filing the compliant" is

12  irrelevant because "the litigation privilege is absolute." *Cargill Inc. v. Progressive Dairy Sols.,*

13  *Inc.*, No. 07-0349, 2008 WL 2235354, at *6 (E.D. Cal. May 29, 2008).  "The 'furtherance'

14  requirement" for assertions of the litigation privilege "was never intended as a test of a

15  participant's motives, morals, ethics or intent."  *Silberg*, 50 Cal.3d at 220.

16       Better Meat argues similarly that Emergy's preparation of "a press release relating to its

17  action against BMC . . . cuts against an inference of 'good faith' intent to litigate."  Supp. Opp'n

18  at 14; *see also* Press Release at 2–3.  Although Emergy employees suggested a press release could

19  offer leverage "if needed," they also noted the press release needed to undergo "legal review" and

20  cautioned the press release could affect the "patent case."  Press Release at 2–3.  In other words,

21  although a jury could infer Emergy had some malicious intentions, the record shows Emergy was

22  indeed contemplating litigation, so it may invoke the privilege.  *See Flatley v. Mauro*, 39 Cal. 4th

23  at 324 ("Applying the litigation privilege to some forms of unlawful litigation-related activity

24  may advance those broad goals notwithstanding the 'occasional unfair result' in an individual

25  case.").

26       Better Meat also argues the "13 days between [Emergy's] supposed authorization of

27  litigation" and actual filing of a complaint "shows that [Emergy] lacked any good faith intention

28  to bring 'imminent' litigation."  Supp. Opp'n at 15.  But the word "imminent" does not refer to

8

1  delays in filing; it distinguishes an "actual threat of impending litigation" from what might occur.

2  *Edwards v. Centex Real Est. Corp.*, 53 Cal. App. 4th 15, 35 (1997) (emphasis omitted).  Courts

3  have permitted defendants to invoke the litigation privilege over communications going back as

4  five years before litigation.  *See generally id.*; *see also Neville*, 160 Cal. App. 4th at 1268–69

5  (finding communication made four months before litigation began was covered under litigation

6  privilege).  In fact, Emergy's decision to file a case only 13 days after sending the

7  communications weighs in favor of a finding it was contemplating litigation in good faith at the

8  time of the disputed letter and email.  *See Bylin Heating Sys., Inc. v. M & M Gutters, LLC*, No.

9  07-00505, 2008 WL 744706, at *5 n.4 (E.D. Cal. Mar. 18, 2008).

10         Finally, Better Meat argues Emergy cannot both invoke the attorney client privilege and

11  rely on the allegedly privileged communications to show it was contemplating litigation.  Supp.

12  Opp'n at 11.  The court disagrees for the reasons in the magistrate judge's prior order, and this

13  court's order affirming it.  *See* MJ Order (July 28, 2022), ECF No. 80; Prior Order (Apr. 14,

14  2023).  In short, "Emergy's assertion of a good faith intention to sue . . . does not depend on the

15  content of its attorney–client privileged communications."  MJ Order at 6.

16         Not only has Emergy shown it was contemplating litigation in good faith at the time it

17  sent the disputed letter and email; it also has shown the letter and email were "reasonably related"

18  to that anticipated litigation.  *Silberg*, 50 Cal. 3d at 219.  Emergy's letter to Better Meat informed

19  Better Meat it had "decided to move forward with legal action and would be filing a complaint

20  against Better Meat Co. and Mr. Pattillo in the immediate future."  Dec. 15, 2021 Letter at 3.

21  This kind of communication informing a party of impending litigation or threatening litigation are

22  covered by the litigation privilege.  *I & U, Inc. v. Publishers Sols. Int'l*, No. 1300018,

23  2014 WL 12665121, at *5 (C.D. Cal. Aug. 7, 2014).  The email also was related to the litigation.

24  Mr. Vronsky sent the email to Better Meat's lead investor, who had a clear economic tie to Better

25  Meat and could have been affected by impending litigation.  Pre-litigation communications to

26  third parties are protected by the litigation privilege when that third party has a "substantial

27  interest' in the litigation.  *E.D.C. Techs., Inc.*, 225 F. Supp. 3d at 1067 (quoting *GetFugu, Inc. v.*

28  *Patton Boggs LLP*, 220 Cal.App.4th 141, 153 (2d Dist. 2013)).  Economic relationships meet this

9

1  requirement.  *See generally Costa v. Superior Court*, 157 Cal. App. 3d 673 (1984) (third party

2  members of local hospital community had substantial interest in potential litigation because they

3  had economic relationship with hospital and could be affected by litigation); *Tri-Star Electronics*

4  *International, Inc. v. Preci-Dip Durtal SA*, No. 08-4226, 2011 WL 13176071 (C.D. Cal. May 27,

5  2011) (finding plaintiff's letters to defendant's customers were covered by litigation privilege, as

6  letters informed customers of plaintiff's alleged patent infringement and customers would be

7  substantially interested in litigation of the claims).

8           Better Meat argues the email did not further the anticipated litigation because Emergy's

9  CEO testified in his deposition he was "pursuing [his] own path of working with [his] legal

10  counsel to draft a complaint."  Huggins Dep. at 206:10–17.  The CEO also agreed the email "was

11  not part of the path that [he] was pursuing."  *Id.*  As explained above, however, "a participant's

12  motives, morals, ethics, or intent" are not part of the privilege test; the communication must

13  simply have "some logical relation" to the action.  *Silberg*, 50 Cal. 3d at 219–20.

14           In sum, it might be that Emergy wanted to stop Better Meat from raising funds and scare

15  away potential investors.  It might also be true that Emergy was relatively unconcerned about

16  Better Meat's actions until Better Meat began posing a serious competitive threat.  However, the

17  evidence shows beyond dispute that when Emergy sent the contested letter and email, Emergy

18  was in fact contemplating litigation against Better Meat, and the letter and email were related to

19  that litigation.  Emergy has met its burden to show the letter and email were sent "in connection

20  with an issue under consideration or review by a . . . judicial body" under subsection 425.16(e)(2)

21  of the anti-SLAPP statute.

22           **C.      Better Meat's Probability of Prevailing**

23           Emergy argues Better Meat cannot show it has a probability of prevailing on its tortious

24  interference and unfair competition claims based on the disputed letter and email because those

25  communications are protected by the litigation privilege.  Supp. Brief at 7.  As reviewed above,

26  the litigation privilege protects communications "(1) made in judicial or quasi-judicial

27  proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of

28  the litigation; and (4) that have some connection or logical relation to the action."  *Silberg*,

1  50 Cal. 3d at 212.  The record shows beyond dispute Emergy may invoke the litigation privilege

2  with respect to the letter and email:

3       •     They were sent in anticipation of litigation;

4       •     The letter was sent by Emergy, a litigant, and the email was sent by an interested

5             party protected under the privilege.  *Action Apartment*, 41 Cal. 4th at 1247–48

6             ("The litigation privilege is meant to protect more than the parties to a lawsuit

7             from derivative suits . . .").

8       •     As explained above, the letter and email furthered the objects of the anticipated

9             litigation and were logically related to it under the third and fourth prongs of the

10            privilege test, respectively.

11      Because the litigation privilege applies, the letter and email are privileged and Better Meat

12 cannot show a probability of prevailing on the merits of its claims for tortious interference and

13 unfair competition.  *Intermarketing Media, LLC*, 2021 WL 5990190, at *5.

14 **IV.    CONCLUSION**

15      The court **strikes** Better Meat's first and second claims for tortious interference and unfair

16 competition, respectively, under California's anti-SLAPP statute with prejudice.  The third claim

17 for declaratory judgment of inventorship remains pending.  The court also **denies** as moot

18 defendants' motions to dismiss, ECF Nos. 27 and 29.

19      This order does not preclude a motion for leave to amend the complaint to assert claims

20 not barred by the litigation privilege.  Any motion for leave to amend must be heard by June 30,

21 2023.

22      This order resolves ECF Nos. 27, 29 and 31.

23      IT IS SO ORDERED.

24 DATED:  April 14, 2023.

25 _____

26       CHIEF UNITED STATES DISTRICT JUDGE

11