1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   The Better Meat Co.,                          No. 2:21-cv-02338-KJM-CKD

12                     Plaintiff,                   ORDER

13          v.

14   Emergy, Inc., et al.,

15                     Defendants.

16

17          Emergy, Inc., the defendant in this action, asserts several counterclaims against The Better

18   Meat Co. and Augustus Pattillo.  Better Meat and Pattillo seek summary judgment.  The

19   counterclaims fall into two broad groups: patents and trade secrets.  As explained in this order,

20   Emergy has not cited "particular parts of materials in the record" to support an essential part of its

21   patent claims.  Fed. R. Civ. P. 56(c)(1)(A).  Emergy instead offers generic references to its

22   records and allegations.  Although Emergy argues it needs more time to conduct discovery, it has

23   explained neither why it could not have conducted that discovery sooner nor what in particular it

24   hopes to obtain.  Better Meat and Pattillo are entitled to summary judgment of the four patent

25   claims.  For the trade secret claims, however, Emergy has identified genuine disputes of material

26   fact within the record.  The court thus **grants** Better Meat's motion **in part**.

1

1    **I.     BACKGROUND**

2          The party opposing summary judgment is entitled to the assumption that any disputes

3    about the evidence will be resolved in its favor, and the evidence is viewed in the light most

4    favorable to that party's claims. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

5    587–88 (1986).  For the dispute between Better Meat and Emergy, this rule largely means the

6    court accepts the accounts of Emergy's two cofounders, Tyler Huggins and Justin Whiteley, as

7    told in the declarations they each have filed. *See generally* Huggins Decl., ECF No. 171-13;

8    Whiteley Decl., ECF No. 171-14.

9          Huggins and Whiteley founded Emergy in 2015.  Huggins Decl. ¶ 4; Whiteley Decl. ¶ 2.

10   At the time, they were studying mycelia—the fibrous, root-like subsurface structure of

11   mushrooms and other fungi—in graduate school at the University of Colorado Boulder.  Huggins

12   Decl. ¶ 2.  About two years later, they were awarded a grant to continue their research at the U.S.

13   Department of Energy's Argonne National Laboratory in Chicago. *Id.* ¶ 5.  They discovered a

14   way to maintain the mycelial structure during its cultivation, which allowed them to produce

15   organic masses with a density and firmness of their choice, from "soft and fluffy" to "hard and

16   brittle." *Id.* ¶ 8.  As early as December 2017, Huggins and Whiteley believed there would be a

17   variety of real-world uses for their discovery, from treating water to storing energy and, most

18   importantly for this case, in some ways related to foods and drinks. *See id.* ¶¶ 10, 17.  They

19   began experimenting. *See id.* ¶ 10.  Eventually, some of their experiments produced mycelia that

20   had a texture and structure that resembled animal meat. *Id.*  They later rebranded Emergy as

21   "Meati Foods" and began selling mycelia in grocery stores as a meat alternative. *Id.* ¶ 11.

22         While Huggins and Whiteley were working on their experiments at Argonne, Augustus

23   Pattillo contacted Huggins to ask if their company was hiring. *Id.* ¶ 14.  He was a graduate of the

24   University of Colorado and had built a mycelium-based system for remediating petroleum

25   pollution. *See* Pattillo Decl. ¶ 4, ECF No. 163-4; Theodore Decl. Ex. 13, ECF No. 163-25.

26   Huggins and Whitely eventually hired Pattillo to help with their research as a lab technician

27   through a one-year Department of Energy fellowship hosted by Emergy.  Huggins Decl. ¶¶ 14–

28   16.  Huggins and Whiteley trained him. *Id.* ¶ 16.  He oversaw experiments Huggins and Whiteley

2

1   had designed and learned about their plans for Emergy's future.  *See id.* ¶¶ 16–17.  He had "full

2   access" to Emergy's labs and to its confidential information within the secure government facility

3   where he worked.  *Id.* ¶ 18; Whiteley Decl. ¶ 6.  His work went beyond the lab, too.  He went to

4   the United Kingdom to discuss a potential partnership between Emergy and another company

5   developing meat substitutes with fungal biomass.  Huggins Decl. ¶ 20.  He also taste-tested the

6   mycelia.  *See id.* ¶¶ 22–23.

7        In 2018, Pattillo asked Huggins and Whiteley to make him a co-founder and give him a

8   one-third stake in the company.  *Id.* ¶ 24.  They said no, but they offered him a full-time job and

9   an equity stake.  *Id.*  Pattillo declined and left the company.  *Id.*

10       The experiments and processes Pattillo observed and conducted at Argonne were

11   proprietary and very sensitive from Huggins' and Whiteley's point of view.  Pattillo had signed a

12   nondisclosure agreement when he began working with them.  *Id.* ¶ 14.  Whiteley reminded him

13   about that agreement when he left, and Pattillo reassured both Whiteley and Huggins he would

14   neither take Emergy's technology with him nor work with the specific strain of organism Emergy

15   was using.  Whiteley Decl. ¶ 9.  Though Huggins had concerns about Pattillo based on a vague

16   "gut feeling," Huggins Dep. at 33–34, ECF No. 122-2, he and Whiteley had never seen Pattillo

17   take anything sensitive from the lab, they never noticed anything was missing and as time went

18   on, they saw nothing to substantiate Huggins's concern, *see* Huggins Decl. ¶¶ 18, 25; Whiteley

19   Decl. ¶ 6.  There was nothing suspicious on Pattillo's LinkedIn page, either, and when Huggins

20   and Pattillo later ran into one another at a cultured meat conference, Pattillo told Huggins he had

21   nothing to worry about; according to Pattillo, his current project had nothing to do with what

22   Huggins and Whiteley were working on at Emergy.  Huggins Decl. ¶ 28; *see also* Pattillo Reply

23   Decl. ¶¶ 6–10, ECF No. 173-6.

24       As it turned out, however, Pattillo had started a company that was developing and

25   marketing a meat alternative made from mycelia.  *See* Pattillo Decl. ¶ 9.  His company eventually

26   became Better Meat, and it obtained patents for "shelf-stable protein food ingredients" made from

27   "cultured fungal biomass and a limited amount of water," which listed Pattillo as the sole inventor

28   and Better Meat as assignee.  *See id.* Ex. B, ECF No. 163-6; *see also* Exs. C–E, ECF Nos. 163-7

1   to 163-9.[1]  Pattillo has now left Better Meat for reasons unrelated to the dispute with Emergy,

2   Pattillo Decl. ¶ 12, ECF No. 163-4, but for the sake of simplicity here, the court refers to Better

3   Meat and Pattillo together as "Better Meat."

4          Although a nonprovisional application for one of the Better Meat patents was published in

5   March 2020, Huggins and Whiteley did not begin to suspect Pattillo had taken or misused

6   Emergy's proprietary information until June of the next year, when Better Meat announced a new

7   facility in Sacramento and said it would produce its meat alternative there.  *See* Huggins Decl.

8   ¶ 29.  According to an article published at the time, Pattillo's co-founder said Better Meat had

9   been operating in "stealth mode" for the previous three years.  Elaine Watson, *Introducing Rhiza*,

10  Food Navigator USA (June 8, 2021, 9:14 AM GMT).[2]

11         Huggins and Whiteley did not believe it was possible for Better Meat to have brought a

12  product to the market so quickly on its own unless Pattillo had taken something from Emergy.

13  *See, e.g.*, Huggins Decl. ¶ 30.  Attorneys representing Emergy contacted Pattillo and his

14  co-founder about a month after Better Meat's announcement.  *See* Mroz Letter (July 16, 2021),

15  ECF No. 163-52.  They argued Pattillo had violated his nondisclosure agreement, had

16  misappropriated Emergy's trade secrets and was liable for unfair competition.  *See id.* at 2–4.

17  Better Meat's attorneys denied these claims and any liability.  *See* Theodore Letter (Aug. 5,

18  2021), ECF No. 163-54.  Emergy did not respond until the following December, when it learned

19  Better Meat was seeking investors.  *See* Mroz Letter (Dec. 15, 2021), ECF No. 163-57.  Emergy

20  said then that it had "decided to move forward with a legal action" and would be filing a

21  complaint against Better Meat and Pattillo "in the immediate future."  *Id.* at 2.  But Better Meat

22  won the race to the courthouse by filing this action before Emergy's own complaint was

---

[1] The patents are U.S. Patent No. 11,058,137, U.S. Patent No. 11,432,574, U.S. Patent No. 11,470,871 and U.S. Patent No. 11,478,006.

[2] A copy of this article is available on the docket of this action at ECF No. 33-7 and at https://www.foodnavigator-usa.com/Article/2021/06/08/Introducing-Rhiza-The-Better-Meat-Co-completes-construction-of-substantial-mycoprotein-production-facility-in-Sacramento (visited June 6, 2024).

1    docketed.  *See generally* Compl., ECF No. 1; *see also* Compl., *Emergy, Inc. v. Better Meat Co.*,

2    No. 2:21-2417 (E.D. Cal.), ECF No. 1.

3         This court dismissed Emergy's second-filed action and instructed Emergy to assert its

4    claims as compulsory counterclaims in Better Meat's case.  *See generally* Order (Oct. 12, 2022),

5    ECF No. 108.  The court also granted Emergy's motion to strike some of Better Meat's claims

6    under California's anti-SLAPP statute, but only after the parties had conducted limited discovery

7    about the disputed claims.  *See generally* Order (Apr. 17, 2023), ECF No. 134; Order (May 24,

8    2022), ECF No. 66.  Finally, the court granted Better Meat's motion to dismiss some of Emergy's

9    counterclaims, *see generally* Order (Apr. 26, 2023), ECF No. 135, and resolved disputes about

10   whether the parties could litigate an early appeal and whether Emergy could request attorneys'

11   fees before judgment, *see generally* Order (Aug. 31, 2023), ECF No. 159.

12        After the court issued the orders above, the parties began discussing a potential settlement

13   agreement, including a potential transaction.  *See* Theodore Decl. ¶¶ 48–56, ECF No. 163-12;

14   Huggins Decl. ¶¶ 32–33; Whiteley Decl. ¶¶ 16–17.  When these discussions fizzled, and after the

15   attorneys' efforts to meet and confer revealed fundamental disagreements about the law and

16   evidence, Better Meat and Pattillo filed their current motion for summary judgment.  *See*

17   Theodore Decl. ¶¶ 44–47, 56–57.  Discovery has not yet concluded; in fact, as a result of the early

18   anti-SLAPP discovery the parties conducted and the many early-case motions the parties have

19   filed, the court has not formally set a schedule for this action.  *See* Fed. R. Civ. P. 16(b).

20        Better Meat claims that if the court does not resolve the pending motion now, it will likely

21   "go out of business or into hibernation."  Shapiro Decl. ¶ 12, ECF No. 163-3.  Its motion has

22   three parts.  First, it argues that despite repeated requests for specifics, Emergy has come forward

23   with no evidence to corroborate Huggins's and Whiteley's testimony that they, and not Pattillo,

24   first conceived of the claims listed in Better Meat's patents.  *See* Mot. at 1–2, 9–17, ECF No. 163.

25   In Better Meat's telling, Huggins and Whiteley planned to use mycelia in wastewater treatment

26   and other industrial processes, but not in food, at least not before Pattillo did, and not in the way

27   he did.  *See id.* at 1–2.  Second, Better Meat argues the statute of limitations has expired for

28   Emergy's claims that Pattillo stole Emergy's trade secrets.  *See id.* at 2, 17–19.  And third, Better

1   Meat contends Emergy has not explained what trade secrets it claims Better Meat has actually

2   stolen.  *See id.* at 2, 19–20.  Emergy opposes the motion in total, *see generally* Opp'n, ECF No.

3   171, and briefing is now complete, *see generally* Reply, ECF No. 173.  The court submitted the

4   motion after a hearing on May 17, 2024.  *See* Mins., ECF No. 174.  Jeffrey Theodore appeared

5   for Better Meat, and David Mroz, Deanna Smiley, and Jeffrey Smyth appeared for Emergy.  At

6   the hearing, Emergy's counsel informed the court Emergy had produced thousands of pages of

7   documents the night before the hearing; Better Meat's counsel confirmed receipt of the

8   documents.  Hr'g Tr. at 3, 5, 8, ECF No. 178.  Emergy's counsel asked the court to take this

9   production into account by permitting Emergy to supplement the record with what it had just

10  produced.  *See id.* at 15.  The court denied that request, *see id.*, and denied Emergy's oral request

11  for supplemental briefing, *id.* at 33.

12          The Monday after the Friday hearing, one week after Better Meat filed its reply, Emergy

13  filed objections to that reply and evidence cited within it.  ECF Nos. 177.  Emergy contends

14  Better Meat introduced new evidence unfairly with its reply, asks the court to disregard that

15  evidence, and in the alternative requests permission to file a surreply.  *See id.* at 1; *see also*

16  Surreply Mot., ECF No. 180.  Better Meat contends in response that its reply and the

17  accompanying evidence responded permissibly to Emergy's opposition and added necessary

18  context to the evidentiary record.  *See* Resp. Objs. 3–5, ECF No. 181.  Better Meat also argues

19  "the reply evidence is not necessary to grant summary judgment," and it invites the court to grant

20  summary judgment without relying on the disputed evidence.  *Id.* at 5.  Finally, Better Meat

21  opposes Emergy's request for leave to file a surreply, and in the alternative requests permission to

22  respond to the surreply.  *See* Opp'n Surreply, ECF No. 182; Prop. Rebuttal, ECF No. 181-1.

23          Although a district court should not consider new evidence presented in a reply in support

24  of a motion for summary judgment, *see Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996),

25  that general rule does not apply to evidence that "addresses the same set of facts supplied in

26  the . . . opposition to the motion but provides the full context to the . . . selected recitation of

27  facts." *Flores v. Point Pickup Techs., Inc.*, No. 22-00193, 2023 WL 8295943, at *3 (E.D. Cal.

28  Dec. 1, 2023) (other alterations omitted) (quoting *Terrell v. Contra Costa County*, 232 F. App'x

6

1   626, 629 n.2 (9th Cir. 2007) (unpublished)).  Here, some of the disputed reply evidence properly

2   responds to Emergy's opposition to Better Meat's motion for summary judgment, including by

3   providing necessary context to the evidence Emergy submitted with that opposition.  The court

4   has considered that evidence, which it has cited above, and overrules Emergy's objections in part

5   to that extent.  The court has not considered other evidence submitted with Better Meat's reply,

6   however.  Doing so is not necessary to resolve Better Meat's motion for summary judgment.  To

7   the extent any of the disputed reply evidence is not cited in this order, Emergy's objections are

8   overruled as moot.

9        Emergy's request for leave to file a surreply is denied.  Emergy does not explain why it

10  did not raise the arguments in its proposed surreply within the deadlines provided by this district's

11  local rules.  Nor does Emergy explain why it did not request and could not have requested more

12  time to prepare an opposition before the hearing on Better Meat's motion.[3]

13  **II.   LEGAL STANDARD**

14       Summary judgment is appropriate if "there is no genuine dispute as to any material fact

15  and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is

16  "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

17  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome

18  of the suit under the governing law."  *Id.*  The parties must cite "particular parts of materials in

19  the record."  Fed. R. Civ. P. 56(c)(1).  As noted above, the court then views the record in the light

20  most favorable to the nonmoving party and draws reasonable inferences in that party's favor.

21  *Matsushita*, 475 U.S. at 587–88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

22       The party moving for summary judgment must first carry its initial burden of production.

23  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz*

24  *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If, as in this case, the moving party would not

25  have the burden to prove the disputed claims at trial, then it can carry its initial burden at the

26  summary judgment stage in one two ways: (1) "produce evidence negating an essential element

---

[3] The court denies the request to file documents under seal in connection with Emergy's objections and its proposed surreply (ECF No. 179).

1   of the nonmoving party's claim or defense" or (2) "show that the nonmoving party does not have

2   enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

3   *Nissan Fire*, 210 F.3d at 1102.  If the moving party carries this initial burden, the nonmoving

4   party must produce evidence to support its claims and "establish that there is a genuine issue of

5   material fact."  *Matsushita*, 475 U.S. at 585.  "If the nonmoving party fails to produce enough

6   evidence to create a genuine issue of material fact, the moving party wins the motion for

7   summary judgment."  *Nissan Fire*, 210 F.3d at 1103 (citing *Celotex*, 477 U.S. at 322).

8   **III.   ANALYSIS**

9       **A.      Correction of Inventorship (Counterclaims 3, 4, 5 and 6)**

10          Better Meat first targets Emergy's claims that Huggins and Whiteley were wrongly

11  omitted from the list of inventors on Better Meat's patents.  *See* Mot. at 9–17.  The question is not

12  whether Huggins or Whiteley themselves invented useful ways to cultivate, structure or treat

13  mycelia.  It is not whether Huggins's or Whiteley's research and discoveries could be used to

14  create meat substitutes.  And it is not whether Emergy owns valid patents or could obtain patents.

15  It is whether this court should issue an order under a specific federal statute—35 U.S.C. § 256—

16  modifying each of the four Better Meat patents to add Huggins's and Whiteley's names, to

17  remove Pattillo's name, or both.  *See* Countercl. ¶¶ 139, 147, 155, 163.

18          In disputes like this one, courts presume the inventors identified on a patent are correct.

19  *See* 35 U.S.C. § 282(a); *Blue Gentian, LLC v. Tristar Prod., Inc.*, 70 F.4th 1351, 1357 (Fed. Cir.

20  2023).  If a party contends the inventors are incorrect, it is that party's burden to prove its case by

21  clear and convincing evidence.  *Id.*  The question is "who actually invented the subject matter

22  claimed in a patent."  *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed.

23  Cir. 2001) (quoting *Sewall v. Walters*, 21 F.3d 411, 417 (Fed. Cir. 1994)).  The "touchstone" is

24  "conception."  *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed.

25  Cir. 2019) (quoting *Acromed*, 253 F.3d at 1379).  Conception is "the mental part of invention."

26  *Burroughs Wellcome Co. v. Barr Labs. Inc.*, 40 F.3d 1223, 1227–28 (Fed. Cir. 1994).  It occurs

27  when an inventor forms "a definite and permanent idea of the complete and operative invention"

28  as later to be used in practice.  *Id.* (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*,

8

1    802 F.2d 1367, 1376 (Fed. Cir. 1986)).  An idea is "definite and permanent" when it is "specific"

2    and "settled" and is "a particular solution to the problem at hand." *Id.* at 1228.  It is not enough to

3    have "a general goal or research plan." *Id.*  The idea must be "so clearly defined in the inventor's

4    mind that only ordinary skill would be necessary to reduce the invention to practice, without

5    extensive research or experimentation." *Id.*  Two or more people can jointly contribute to the

6    conception.  *See CODA*, 916 F.3d at 1358.  In fact, all inventors must be listed on the patent,

7    "even those who contribute to only one claim or one aspect of one claim." *Vapor Point LLC v.*

8    *Moorhead*, 832 F.3d 1343, 1348–49 (Fed. Cir. 2016) (per curiam).  Inventorship is a question of

9    law.  *Blue Gentian*, 70 F.4th at 1358.

10         Better Meat argues Emergy has not cited and cannot cite adequate evidence to show

11   Huggins or Whiteley "conceived of any claim in the patents." Mot. at 9.  Emergy does, of course,

12   have declarations from Huggins and Whiteley, summarized in the background section above.

13   Both Huggins and Whiteley would testify they conceived of some aspects of the disputed claims.

14   *See* Huggins Decl. ¶¶ 4–11; Whiteley Decl. ¶ 4.  But "[t]hroughout the history of the

15   determination of patent rights, oral testimony by an alleged inventor asserting priority over a

16   patentee's rights is regarded with skepticism." *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir.

17   1993).  Those who claim their names were wrongfully omitted "might be tempted to describe

18   [their] actions in an unjustifiably self-serving manner." *Shu-Hui Chen v. Bouchard*, 347 F.3d

19   1299, 1309 (Fed. Cir. 2003).  For that reason, "[a]n alleged joint inventor's testimony standing

20   alone is insufficient to establish inventorship by clear and convincing evidence." *Blue Gentian*,

21   70 F.4th at 1357.  Those who claim to be inventors must corroborate their testimony with some

22   other evidence.  *See id.*

23         Courts use the "rule of reason" to decide whether evidence corroborates an alleged

24   inventor's testimony.  *Shu-Hui Chen*, 347 F.3d at 1309 (quoting *Price*, 988 F.2d at 1194).  It is

25   not a complex rule: the court examines "all pertinent evidence" to decide "whether the inventor's

26   story is credible." *Blue Gentian*, 70 F.4th at 1357 (quoting *Sandt Tech., Ltd. v. Resco Metal &*

27   *Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001)).  Some types of evidence are more

28   compelling than others.  Documents and physical evidence created at the time of the "inventive

process" are the "most reliable proof." *Sandt Tech., Ltd.*, 264 F.3d at 1350–51. This type of evidence may on its own suffice to corroborate the alleged inventor's testimony. *See id.* "Circumstantial evidence about the inventive process" may also be enough. *Id.* at 1351. Another person's testimony can also play a role, but as a rule, testimony "is more suspect." *Id.* The second person, like the alleged inventor, may be motivated by the litigation. *Id.*

Better Meat argues Emergy has no corroborating evidence, citing interrogatories it sent to Emergy requesting any corroborating evidence, and Emergy's responses to those interrogatories, which cite no specific documents. *See* Mot. at 10–15. By citing specific interrogatories and Emergy's responses, Better Meat has carried its initial burden to show Emergy "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102; *see also Celotex*, 477 U.S. at 322 (confirming a moving party may prevail at summary judgment by showing how faults in a party's discovery responses demonstrate that party could not carry its ultimate burden at trial). So, in response, Emergy's must "establish that there is a genuine issue of material fact." *Matsushita*, 475 U.S. at 585.

Emergy cites three categories of evidence that, in its assessment, would corroborate Huggins's and Whiteley's testimony at a trial. First, it cites a "narrative" in its response to one of Better Meat's interrogatories. *See* Opp'n at 6–7 (citing Emergy's Resp. Interrog. Set Two at 3–4, ECF No. 163-13). In the interrogatory, Better Meat asked Emergy what it contends were Huggins's and Whiteley's "contributions to the conception of the subject matter" of the disputed patents "and when and how each such contribution was made and/or communicated to Mr. Pattillo, including whether and how it was done in collaboration with Mr. Pattillo." Emergy's Resp. Interrog. Set Two at 2. After objecting, Emergy responded that the patents "cover the same selection, cultivation, harvesting, and treatment methods and mycelium-based food products that Mr. Pattillo learned from Drs. Huggins and Whiteley during his time conducting research for Emergy." *Id.* at 3. According to Emergy, Pattillo "had full access to the small laboratory room where Emergy was conducting its confidential research." *Id.* He could have read and taken information from experiments, samples, diagrams, a lab notebook, and funding proposals, among other sources. *Id.* at 3–4. Emergy also claimed the "specifications and

1   claims of the BMC Patents describe specific trade secret, confidential, and proprietary

2   information" in an electronic lab notebook created during Huggins's and Whiteley's research at

3   Argonne. *Id.*

4          Second, Emergy cites "its claims charts describing and showing photographic evidence,

5   descriptions of experiments, and notes and results of experiments corroborating its conception of

6   illustrative claims." Opp'n at 7–8 (citing Emergy's Resp. Interrog. Set Two Ex. 1–2). These

7   claims charts—two tables originally attached to Emergy's counterclaim—pair some of the claims

8   within the disputed patents with information from Emergy's own records of experiments at the

9   lab in Chicago. The tables also attach some dates to the cited records.

10         Although these tables illustrate potential overlaps between the claims in Better Meat's

11  patents and Emergy's own records, they raise more questions than they answer. An example

12  illustrates the problem. The tables refer to a claim in the disputed patents that describes how to

13  harvest biomass, remove water from it, shape it into a "slab," shred it and dry it at temperatures

14  between 50 degrees Celsius and 85 degrees Celsius *See id.* Ex. 1 at 3–5. The table compares this

15  claim to photos and excerpts from a lab notebook that, according to the table, were created "no

16  later than" 2017. *See id.* One picture shows a beige substance that could potentially be mycelium

17  before and after the removal of water. *See id.* at 3. Another picture shows the same substance cut

18  and shaped into smaller pieces that could be described as patties, cubes, discs or, perhaps, "slabs."

19  *See id.* at 4. A third photo shows smaller and darker pieces of something else on a sheet in an

20  oven. *See id.* at 5. The table also includes what appear to be screenshots from an electronic lab

21  notebook, showing checklists with some items checked off, as if to show completed tasks. *See id.*

22  at 3–4. These ostensibly completed tasks include brief statements about dewatering and drying

23  biomass and pressing it into patties. *See id.* The table also quotes an instruction in a lab notebook

24  to dry biomass in an oven at 70 degrees Celsius. *See id.* at 5.

25         Although the table includes these photos and screenshots, it omits almost all the relevant

26  context and citations to the record properly before the court. It does not explain, for example,

27  who took the photos, when, where, why, or what experiments the photos depict, what the goals of

28  those experiments were, whether they were successful and who was involved. It does not explain

who created the lab notebook, who checked the boxes or what the checks mean.  It could be the pictures and other records were all connected to an effort to discover and produce a meat substitute.  But they could also have been part of an effort to discover new ways to process wastewater.  As Better Meat points out, one of the pictures previously appeared in a document about wastewater treatment, not food.  *See* Mot. at 1–2.

It is possible the information cited in the two tables could be admitted at trial.  But it is equally possible that information "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  In the face of Better Meat's objections, Emergy bears the burden to prove the evidence it cites could be presented in an admissible form at trial.  *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  It must direct the court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).  It has not done so.

Reviewing the record carefully, as a whole, the first two categories of evidence Emergy cites as corroborating in its opposition are not actually corroborating evidence, but rather (1) a narrative written by attorneys and (2) the tables originally attached to Emergy's counterclaim, which Emergy has not shown could be presented in an admissible form to prove its allegations.  In short, the interrogatory responses and tables repackage Emergy's pleadings.  A party's pleadings and its attorneys' statements "are insufficient to defeat a summary judgment motion."  *Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008).  Emergy "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256 (alterations omitted) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  It must "pierce the pleadings" and offer the photos, the lab notebooks and the other records themselves: "the proof."  *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56 advisory committee note on 1963 amendments); *see also Weaver v. Houchin*, 467 F. App'x 878, 880–81 (Fed. Cir. 2012) (per curiam) (unpublished) (affirming summary judgment in similar circumstances).

1          What remains, then, is the third category of evidence, which Emergy describes as

2   "technical documents supporting its conception."  Opp'n at 8.  In a supplemental interrogatory

3   response, Emergy cited several thousand pages of documents it had produced during discovery.

4   *See id.* 7 (citing Emergy First Suppl. Interrog. Resp., Set Two, at 3, 5, ECF No. 163-14).

5   Although Emergy cited those page ranges, it did not describe what it was citing in its

6   supplemental response.  *See* Emergy Suppl. Interrog. Set Two Resp. at 3, 5.  Nor did it explain

7   how or why those documents would corroborate Huggins's or Whiteley's testimony.  *See id.*

8   According to Better Meat, the documents prove nothing about meat substitutes and the claims in

9   the four disputed patents.  *See* Mot. at 14–15.  It puts the cited discovery materials in six

10  categories: (1) pages from an electronic lab notebook that appear to memorialize research for

11  industrial uses, not food; (2) plans for a wastewater treatment technology; (3) an application for a

12  federal grant that mentions food only in connection with wastewater treatment; (4) a "concept

13  paper" about "carbon scaffolds" for "high-performance energy storage and conversion device

14  electrodes"; (5) documents about the creation of "carbon materials"; and (6) materials that post-

15  date Pattillo's departure.  *See id.*

16         Emergy's opposition offers no effective rebuttal.  Its primary argument is the unelaborated

17  assertion that the documents "create a dispute of material fact as to conception to defeat BMC's

18  motion for summary judgment on inventorship."  *Id.* at 8.  If corroborating evidence is to be

19  found within the pages Emergy produced, its failure to offer citations and make those citations the

20  centerpiece of its opposition is inexplicable.  A party opposing a motion for summary judgment

21  must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  As the Ninth

22  Circuit often has said, litigants cannot rely on the district court to "comb the record to find some

23  reason to deny a motion for summary judgment."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d

24  1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418

25  (9th Cir. 1988)).  Emergy also dismisses Better Meat's arguments about the contents of Emergy's

26  records as the "unsupported" assertions of attorneys.  Opp'n at 8.  If Better Meat's arguments

27  misperceived or misrepresented Emergy's files, then Emergy could have explained why a

1  particular piece of evidence actually supports its position, and it could have offered an expert's

2  interpretation.

3         This is not to say Emergy's opposition cites no evidence at all.  There is evidence

4  regarding the broad circumstances of Better Meat's creation, following a few years on the heels

5  of Pattillo's departure from the Emergy lab.  Emergy disputes Better Meat's claim that Huggins

6  and Whiteley did not plan to market mycelia as a food until after Pattillo left, and Emergy

7  supports its position with a page from a business presentation and with references to Pattillo's trip

8  to the United Kingdom.  *See* Opp'n at 12.[4]  But the key question at this stage of the case is not

9  about whether Huggins and Whiteley thought or hoped to use mycelia in food products or

10  whether the broader circumstances are consistent with Emergy's theory of the case.  It is whether

11  Huggins and Whiteley conceived of the specific subject matter listed in the claims in Better

12  Meat's patents.

13         The court also considers Emergy's responses to Better Meat's interrogatories which are

14  properly before the court, and finds they fall short of Emergy's discovery obligations.  Federal

15  courts have held that "contention interrogatories"—such as Better Meat's request that Emergy

16  explain what evidence will support its inventorship claims—demand more than a citation of Rule

17  33(d) and of a discovery record writ large.  *See, e.g.*, *United States ex rel. Landis v. Tailwind*

18  *Sports Corp.*, 317 F.R.D. 592, 594 (D.D.C. 2016); *Fleming v. Escort, Inc.*, No. 09-105,

19  2011 WL 573599, at *2 (D. Idaho Feb. 13, 2011).  A contention interrogatory is a request for an

20  explanation or a statement of what facts support a claim.  Empty citations to discovery are

21  unresponsive to such a request.  *See Landis*, 317 F.R.D. at 594.  As Better Meat points out,

22  district courts have barred a party from relying on its own discovery responses at summary

23  judgment if that party cited Rule 33(d) without actually identifying where responsive information

24  could be found.  *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. 05-2200,

---

[4] The court has reviewed Exhibit 8 to the declaration of Sonja Sahlsten, which Emergy requests to file under seal to protect sensitive proprietary information.  *See* Sahlsten Decl. ¶ 8, ECF No. 171-3; Notice Req. Seal, ECF No. 170.  For the reasons explained in the separate section below, the request to seal this document is granted on a provisional basis.

1    2008 WL 11334030, at *8 (C.D. Cal. Mar. 17, 2008); *Cambridge Elecs. Corp. v. MGA Elecs.,*

2    *Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004).

3         Emergy does not contend otherwise.  It instead faults Better Meat for seeking summary

4    judgment rather than to compel further discovery responses.  *See* Opp'n at 13–14.  To be sure, a

5    party cannot "use a summary judgment motion as a substitute for discovery."  *Nissan Fire*,

6    210 F.3d at 1105.  But a litigant may prevail at summary judgment by demonstrating an opposing

7    party's discovery responses reveal it cannot carry its ultimate burden at trial.  *See Celotex*,

8    477 U.S. at 322.  In *Celotex*, a defendant cited the plaintiff's failure to respond to an interrogatory

9    with the names of any witnesses who could corroborate the plaintiff's claims of asbestos

10   exposure.  *See* 477 U.S. at 319–20.  The district court granted the motion because "there was no

11   showing that the plaintiff was exposed."  *Id.* at 320 (alterations omitted).  The court of appeals

12   reversed, but the Supreme Court agreed with the district court: "the burden on the moving party

13   may be discharged," it wrote, "by 'showing'—that is, pointing out to the district court—that there

14   is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  As was true of the

15   plaintiff in *Celotex*, Emergy has not carried its burden.  Other courts have reached the same

16   conclusion in similar disputes involving similarly lacking citations.  *See, e.g.*, *Weaver v. Houchin*,

17   467 F. App'x at 880–81; *Advanced Thermal Scis. Corp. v. Applied Materials, Inc.*, No. 07-1384,

18   2009 WL 10670556, at *5–7 (C.D. Cal. Aug. 12, 2009).

19        Emergy also argues Better Meat's summary judgment motion is premature.  It asks for

20   more time to supplement its interrogatory responses and to gather evidence, such as through

21   Pattillo's own deposition testimony and any other evidence Better Meat or Pattillo might have,

22   and it hypothesizes this evidence could corroborate Huggins's and Whiteley's testimony.  *See*

23   Opp'n at 10–11 & n.4.  Emergy also argues the parties' experts should weigh in, noting expert

24   discovery has not yet concluded.  *See id.* at 8–9.  Expert opinions would probably provide

25   important evidence in support of Emergy's counterclaims if they proceeded to trial.  After all,

26   "the test for conception is whether the inventor had an idea that was definite and permanent

27   enough that one skilled in the art could understand the invention," not whether lawyers—or

28   judges, for that matter—can make sense of it.  *Burroughs*, 40 F.3d at 1228.  But Emergy does not

1   explain why it did not offer the opinions of any experts in opposition to Better Meat's motion, or

2   say what an expert might have opined, or what evidence an expert would have interpreted.  Nor

3   has Emergy explained how expert testimony about any evidence would create a genuine dispute

4   of material fact.  Emergy also does not argue the absence of a formal Rule 16 scheduling order

5   has hampered its efforts to collect or obtain discovery.

6          Although Emergy disclaims any intent to make a request under Rule 56(d), that is the rule

7   that actually governs the request it now makes: "If a nonmovant shows by affidavit or declaration

8   that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

9   (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to

10  take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  "To prevail on a

11  request for additional discovery under Rule 56(d), a party must show that: '(1) it has set forth in

12  affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist;

13  and (3) the sought-after facts are essential to oppose summary judgment.'"  *InteliClear, LLC v.*

14  *ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) (quoting *Midbrook Flowerbulbs*

15  *Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 619–20 (9th Cir. 2017)).  Emergy

16  has not filed an affidavit explaining what evidence it lacks and what evidence it intends to obtain.

17  Nor is it clear from Emergy's filings that more time is actually necessary.  Emergy already

18  possesses the "technical documents" cited in its opposition.  It produced them.  Emergy also had

19  time to look through those records for helpful evidence.  It prepared the table attached to its

20  counterclaim and interrogatory response.  Although Emergy hypothesizes Pattillo and Better

21  Meat could later produce relevant evidence, it offers only that speculation and no specifics.  *See*

22  Opp'n at 11 (arguing Pattillo's and Better Meat's "documents may further corroborate

23  Dr. Huggins' and Dr. Whiteley's conception" and "may also confirm Dr. Huggins' and

24  Dr. Whiteley's conception and/or undermine Mr. Pattillo's alleged conception").

25         Courts have repeatedly denied requests for additional time and discovery in like

26  circumstances.  *See, e.g.*, *Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018)

27  (affirming denial of relief under Rule 56(d) because the requesting party did not "identify with

28  specificity facts likely to be discovered," offered "mere speculation," and did not "point out how

16

1  particular evidence not yet discovered was essential" (citations and quotation marks omitted));

2  *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (affirming denial

3  of Rule 56(d) discovery because the supporting declaration did not refer to any specific facts or

4  explain "how a continuance would have allowed [the nonmoving party] to produce evidence

5  creating a factual issue").  Emergy has not demonstrated it is entitled to relief under Rule 56(d).

6         Finally, as noted in the background section above, Emergy's counsel made the surprising

7  announcement at the hearing on Better Meat's motion that it had served Better Meat's counsel

8  with almost three thousand pages of relevant materials the night before the hearing.  Emergy's

9  counsel claimed this evidence supported Huggins's and Whiteley's claims of inventorship.  But

10  Emergy did not cite that evidence in its opposition, let alone explain how that evidence supported

11  its claims or signal that the evidence was coming in a supplemental filing.  Nor did it file the

12  evidence or otherwise provide it to the court before hearing.  Emergy's counsel offered no

13  credible explanation why Emergy could not have produced or cited the evidence sooner.  Counsel

14  instead complained that Better Meat's responses to Emergy's own requests to produce documents

15  were inadequate, and that summary judgment proceedings are premature.  In a case like this

16  one—a case pending for more than two years in which the claimant can reasonably be expected to

17  possess the evidence it would need to prove its claims—that claimant cannot avoid summary

18  judgment through such sandbagging and shenanigans.  Rather than showing there is any genuine

19  dispute of material fact, Emergy's actions lead the court to doubt Emergy is pursuing its claims

20  for a proper purpose in the first place.  *See* Fed. R. Evid. 11(b)(1).

21         In sum  Emergy has not supported its opposition with citations of "particular parts of

22  materials in the record" to corroborate Huggins's and Whiteley's testimony that they are among

23  the inventors—or the sole inventors—who should be listed on the four Better Meat patents.

24  Although Emergy effectively requests more time to conduct discovery, it does not explain why it

25  could not fully oppose Better Meat's motion with the information it has and has had.  For these

26  reasons, Better Meat's motion for summary judgment of Emergy's third, fourth, fifth and sixth

27  counterclaims is granted.

1
2

    **B.**    **Trade Secret Misappropriation (Counterclaims 1 and 2) and Breach of Contract (Counterclaims 7 and 8)**

3           Better Meat contends Emergy filed its counterclaims for trade secret misappropriation and

4  breach of contract after the statute of limitations had expired.  Mot. at 17–19.  The parties agree

5  the limitations period is three years for each claim.  *Compare id.* at 17–18 *with* Opp'n at 15.  The

6  parties also agree the limitations period began to run when Emergy knew or had reason to know

7  of its potential claims.  *Compare* Mot. at 17–18 *with* Opp'n at 15.

8           Emergy has cited evidence a fact-finder could rely on to conclude Emergy did not know

9  and did not have reason to know of a potential claim against Better Meat until March 2020, when

10  a nonprovisional patent application for one of the four Better Meat patents was published.  The

11  evidence, when viewed in the light most favorable to Emergy's counterclaims, could show at

12  trial:

13
14

- Huggins and Whiteley had reminded Pattillo of his obligations under the nondisclosure agreement, Whiteley Decl. ¶ 9;

15
16

- Pattillo had acknowledged his obligations and had reassured them he did not intend to continue work on the same project or particular mycelium strain, *id.*;

17
18
19

- Huggins and Whiteley had no reason to believe Pattillo had taken physical or tangible materials from the lab when he left, *see id.* ¶¶ 6, 10–11; Huggins Decl. ¶ 25;

20
21

- Pattillo's LinkedIn media page did not show he had gone to work on any similar projects, Huggins Decl. ¶ 26;

22
23
24

- Pattillo reassured Huggins at a later cultured meat conference "not to worry about what he was currently working on and that it did not have anything to do with what Emergy was doing," *id.* ¶ 28;

25
26
27

- In the summer of 2021, a member of Better Meat's management told a reporter the company had been operating in "stealth mode" for about three years, *see* Watson, *supra* note 2; and

- Huggins and Whiteley would testify at trial that their concerns did not mature into suspicion until they learned in 2021 that Better Meat was already selling a mycelia-based meat substitute. *See* Huggins Decl. ¶ 30; Whiteley Decl. ¶ 14. They did not believe it was possible for Better Meat to have developed a marketable product so quickly unless it had done so based on Emergy's own trade secrets. *See, e.g.*, Huggins Decl. ¶ 30 ("While I had not previously thought that Mr. Pattillo had stolen Emergy's information, given how long it took Dr. Whiteley and I to develop our structured mycelium invention, I was suspicious of how fast BMC built its business.").

Better Meat tells a different version of the story behind these events in its reply, *see* Reply at 8–10, relying largely on Pattillo's recollections, *see generally* Pattillo Reply Decl., ECF No. 173-6, but at this stage, the court must view the evidence above in the light most favorable to Emergy's claims. Whether a reasonable person in Huggins's or Whiteley's situation would or should have suspected wrongdoing is a question for the trier of fact. *See Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1408 (9th Cir. 1994) (citing *Hills v. Aronsohn*, 152 Cal. App. 3d 753, 759 (1984)).

Better Meat also argues Emergy should have suspected it could pursue a trade secret or contract claim when he did not return any documents on May 17, 2018, the deadline set by his nondisclosure agreement. *See* Mot. at 18 (citing Theodore Decl. Ex. 16 § 4, ECF No. 163-28). It cites two decisions from the Northern District of California: *Wang v. Palo Alto Networks, Inc.*, No. 12-05579, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) and *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-00404, 2019 WL 1924992 (N.D. Cal. Apr. 30, 2019). In *Wang*, the defendant had signed a nondisclosure agreement that required him to return documents containing the alleged trade secrets. *See* 2014 WL 1410346, at *7. He did not return any documents by the deadline, he did not ask for any relief from his duty to return the documents and the plaintiff knew he had gone to work in the same field. *See id.* This put the plaintiff on notice of a potential claim. *See id.* In *Alta Devices*, the story was the same: (1) the defendant had not returned confidential information by the deadline set in the non-disclosure agreement, (2) the plaintiff knew the defendant was working in the same field and (3) the defendant did not ask for relief from his

1   obligations under the nondisclosure agreement.  *See* 2019 WL 1924992, at *13.  This case differs

2   from both *Wang* and *Alta Devices*: Emergy has cited evidence to support its claim that Higgins

3   and Whiteley did not have reason to believe Pattillo had gone to work in the same field at the time

4   he failed to return any documents.  As noted above, a fact-finder also could decide Higgins and

5   Whiteley were reasonable in believing Pattillo had nothing to return.

6          Finally, Better Meat argues Emergy "has not come forward with evidence that it

7   developed or otherwise possessed any of the supposed combination trade secrets it asserts."  Mot.

8   at 19.  To be clear, Better Meat does not currently contest the seventy-nine individual trade

9   secrets identified in Emergy's disclosure; it takes issue with Emergy's claim that "any

10  combination of two or more of the [individual] trade secrets is also protectable."  *Id.* (quoting

11  Theodore Decl. Ex. 12 at 11 (filed provisionally under seal)).

12         There is no question that "a plaintiff who seeks relief for misappropriation of trade secrets

13  must identify the trade secrets and carry the burden of showing that they exist."  *MAI Sys. Corp.*

14  *v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993).  Nor is there any dispute that "[w]hen a

15  party fails to identify its trade secrets with particularity, summary judgment is appropriate."  *W.L.*

16  *Gore & Assocs., Inc. v. GI Dynamics, Inc.*, 872 F. Supp. 2d 883, 899 (D. Ariz. 2012).  But Better

17  Meat cites no case in which a court has accepted the argument it makes now: that if a party has

18  identified two trade secrets with particularity, then it cannot also assert claims based on a

19  combination of those trade secrets.

20         The case Better Meat relies on to support its position was not about combinations of trade

21  secrets, but rather about an "overly vague and overly inclusive" disclosure of almost 500

22  individual trade secrets.  *See Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, No. 13-2856,

23  2016 WL 5719819, at *9–12 (S.D. Cal. Sept. 30, 2016), *aff'd*, 729 F. App'x 590 (9th Cir. 2018).

24  The individual alleged trade secrets were "not reasonably particular" in their own right.  *Id.* at 11.

25  The district court offered an example of one vaguely defined trade secret: "Emphasizing volatility

26  (including 60-month trailing volatility) in constructing, using and marketing a broad-market set of

27  market-weighted stock indexes in a style framework."  *Id.*  The word "emphasizing" was

28  hopelessly vague; the plaintiff might as well have disclosed a secret recipe "for chocolate cake

1  'emphasizing chocolate.'" *Id.* As the Ninth Circuit wrote when it affirmed the district court's

2  order, the plaintiff had "pointed to no evidence showing that any of the information in its 492-

3  paragraph trade secret identification document . . . [was] not generally known to the public."

4  719 F. App'x at 591 (citation and quotation marks omitted). Better Meat has not shown this is a

5  case of similarly vague or overly inclusive disclosures.

6       Better Meat's motion suggests Emergy's disclosures are "designed to make completing

7  trade secret discovery in this case a practical impossibility." Mot. at 19. If Emergy does not

8  complete discovery efficiently and in good faith, Better Meat may seek relief from the assigned

9  Magistrate Judge and from this court. *See, e.g.*, Fed. R. Civ. P. 37(a) (offering avenues to

10  obtaining discovery and allowing awards of reasonable expenses and fees); 28 U.S.C. § 1927

11  (permitting awards of costs and fees caused by unreasonable and vexatious actions).

12      For these reasons, Better Meat's motion for summary judgment of the trade secret claims

13  is denied.

14  **IV.   REQUESTS TO FILE UNDER SEAL**

15      The parties have requested leave to file several exhibits cited in the parties' legal

16  memoranda under seal. *See* First Emergy Notice Req. Seal, ECF No. 161; Better Meat Notice

17  Req. Seal, ECF No. 165; Second Emergy Notice Req. Seal, ECF No. 170. Although Better Meat

18  filed one of the requests, all three filings relate to Emergy's information and its interests in

19  nondisclosure. The court granted two of the three requests provisionally given the short

20  timeframe in which the court was asked to review and seal these documents. Order (Apr. 12,

21  2024), ECF No. 162; Order (Apr. 23, 2024), ECF No. 168. The court now grants the third request

22  on the same provisional basis and for the same reasons. Exhibit 8 to the declaration of Sonya

23  Sahlsten will be filed under seal and will not be available to the public pending further order of

24  this court.

25      This court reviewed the legal standard for requests to seal in a previous order. *See* Order

26  (Jan. 19, 2023), ECF No. 121. It is not necessary to repeat that standard fully now. When

27  documents are filed with motions "more than tangentially related to the merits of a case," *Ctr. for*

28  *Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016), such as alongside a

1    motion for summary judgment, a party who asks to keep them secret "must meet the high

2    threshold of showing that 'compelling reasons'" support its request, *Kamakana v. City of*

3    *Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*,

4    331 F.3d 1122, 1136 (9th Cir. 2003)).  To decide whether the party requesting sealing has carried

5    its burden, the court balances the requesting party's reasons for secrecy with the public's interest

6    in disclosure.  *See Kamakana*, 447 F.3d at 1179.  If a court decides to grant a request to seal, it

7    must explain its reasons and may not rely on "hypothesis or conjecture."  *Id.* (quoting *Hagestad v.*

8    *Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

9         It is unclear from the parties' requests and the documents' contents how heavily Emergy's

10    interests in secrecy weigh in comparison to the public's interest in disclosure.  The parties'

11    requests offer only generic justifications without references to any specific pages or information

12    and no clear explanations of the likely consequences of disclosure.

13         If Emergy seeks continued sealing or redaction, it must do so again within fourteen days

14    of the filed date of this order.  Any further requests to seal must include (1) clear identification of

15    the name of the documents covered by the request to seal; (2) the specific portion(s) of any

16    document sought to be filed under seal, preferably identified by pin cites and highlighting for

17    maximum clarity; and (3) specific reasons for seeking sealing of the material, along with citations

18    to the relevant declarations and supporting legal authority.  The reasons provided must be specific

19    and tailored to each portion(s) of the document sought to be sealed.  Emergy also should address

20    whether redaction is sufficient, and if so explain what portions it believes should be redacted and

21    why.  If Emergy chooses not to renew its request to seal and wishes to rely on the documents

22    covered by its sealing request, those documents must be filed on the public docket.  Emergy may,

23    alternatively, withdraw its reliance on any document and give notice of that election.

24    **V.    CONCLUSION**

25         The motion for leave to file a surreply (ECF No. 180) is **denied**.

26         The motion for summary judgment (ECF No. 163) is **granted in part as to claims 3, 4, 5**

27    **and 6 and otherwise denied**.

1        The request to file under seal (ECF No. 170) is **granted on a provisional basis only**.

2  Exhibit 8 to the declaration of Sonya Sahlsten will be filed under seal and will not be available to

3  the public pending further order of this court.

4        The request to file under seal (ECF No. 179) is **denied as moot**.

5        Any renewed request to file documents under seal must be filed by the party asserting a

6  right to nondisclosure, **must be filed within fourteen days** and must meet the more specific

7  requirements outlined above.

8        **Within fourteen days**, the parties shall meet and confer and file a joint status report

9  proposing a schedule for discovery and dispositive motions. The court will issue a scheduling

10  order based on the joint status report.

11        This order resolves ECF Nos. 163, 170, 179, and 180.

12        IT IS SO ORDERED.

13  DATED:  June 7, 2024.

14

CHIEF UNITED STATES DISTRICT JUDGE